Anthony J. Viola
Andre K. Cizmarik
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Defendant Quality King Distributors, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------- X

INNOVATION VENTURES, LLC and LIVING      :
ESSENTIALS, INC.,                         :     Civil Action No.: 12 Civ. 5354 (KAM)
                                          :
                         Plaintiffs,      :
                                          :
        -against-                         :
                                          :
ULTIMATE ONE DISTRIBUTING CORP.;          :     **QUALITY KING DISTRIBUTORS,**
GULAM NAJIMI, a.k.a. GHULAMALI ALI        :     **INC.'S FIRST SET OF**
NAJIMI; WALLY NAJIMI, a.k.a. AHMED        :     **DOCUMENT REQUESTS**
WALLY NAJIMI; EXCEL WHOLESALE             :     **DIRECTED TO PLAINTIFFS**
DISTRIBUTORS, INC.; FARID                 :
TURSONZADAH, a.k.a. FARID TURSON;         :
CORE-MARK INTERNATIONAL, INC.;            :
RICHMOND WHOLESALE COMPANY, INC.;         :
SAQUIB KHAN; CVS CAREMARK CORP.; 7-       :
ELEVEN, INC.; 7-ELEVEN STORE # 11152; 7-  :
ELEVEN STORE # 25449C-2422; 7-ELEVEN      :
STORE # 11168F-2422; 7-ELEVEN STORE #     :
11181; 7-ELEVEN STORE # 32760; 7-ELEVEN   :
STORE # 23407; PRESTIGE MOBIL; KAIVAL     :
DELI & CATERING; HEIGHTS DELI AND         :
COMPANY; VALERO RETAIL HOLDINGS,          :
INC.; NEW ISLAND DELI; NEVINS             :
GOURMET; DELTA DISTRIBUTION               :
SERVICES CORP.; SULAIMAN S. AAMJR;        :
BROTHERS TRADING CO., INC. D/B/A          :
VICTORY WHOLESALE GROCERS;                :
QUALITY KING DISTRIBUTORS, INC.;          :
BASELINE DISTRIBUTION, INC.; DAVID        :
FLOOD; and JOHN DOES 1-10,                :
                                          :
                         Defendants.      :

------------------------------------------- X

AM 175947420.2

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Civil Rules, Quality King Distributors, Inc. ("QKD") requests that plaintiffs Innovation Ventures, LLC and Living Essentials, Inc. (collectively, "plaintiffs") produce the below indicated documents in their possession or custody for inspection and copying at the offices of Edwards Wildman Palmer LLP, 750 Lexington Avenue, New York, New York 10022, within seven (7) days of service hereof.  If requested documents are within plaintiffs' possession, custody or control (meaning that they are in the possession of an agent or can otherwise be obtain on request), they must be produced.  If the requested documents are not within plaintiffs' possession, custody or control, please so state.  In such event, plaintiffs are hereby requested to furnish same as soon as such documents come into plaintiffs' possession, custody or control.

## DEFINITIONS

1.      The Uniform Definitions in Discovery Requests, contained in Local Civil Rule 26.3 (for the Southern and Eastern Districts of New York) are hereby incorporated by reference and shall apply to all of the document requests set forth below.  Additionally the following definitions shall apply.

2.      "Plaintiffs" refers to Innovation Ventures, LLC and Living Essentials, Inc. and either or both of them, including their officers, directors, and employees.

3.      "Complaint" refers to the Third Amended Complaint, dated November 6, 2012.

4.      "First Amended Complaint" refers to the First Amended Complaint, filed on or about October 25, 2012.

5.      If any document is within the scope of any request for production but is not being produced pursuant to any claim of privilege or confidentiality, please:  (a) identify the subject matter, type (e.g., letter or memorandum), date and author of the privileged communication or

information, all persons who prepared or sent it, and all recipients or addressees; (b) identify each person to whom the contents of each such communication or item of information have heretofore been disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon which the privilege is claimed.

6.     This is a continuing request for production of documents and information.  If, after making your initial response, you obtain or become aware of any further document(s) or information responsive to this discovery demand, you are required to produce such additional document(s) or information.

7.     Unless otherwise indicated, all Requests shall apply to the time period of November 1, 2010 through the present.

**REQUESTS**

1.     All documents plaintiffs produced to defendants in this case.

2.     All documents concerning communications between or among QKD and any other defendants in this case.

3.     All documents concerning QKD that relate to 5 Hour Energy® products.

4.     Any deposition transcript, statement, discovery response or summary of information provided by any defendant in this case that refers to or concerns QKD.

5.     All documents, notes, memoranda, surveillance, photographs or reports concerning any investigation of QKD related to 5 Hour Energy®.

6.     All documents concerning CVS Caremark Corp. ("CVS"), Brothers Trading Co., Inc. d/b/a/ Victory Wholesale Groceries ("Victory"), Food Distributors International, Inc. ("Food Distributors"), Scott Tilbrook ("Tilbrook"), Universal Wholesale, Inc. ("Universal Wholesale"), Joseph Sevany ("Sevany"), or Joe Zaitouna ("Zaitouna") that relate to 5 Hour Energy® products.

AM 175594720.2

7.      All documents produced by, or subpoenaed, received or seized from CVS, Victory, Food Distributors, Tilbrook, Universal Wholesale, Sevany or Zaitouna that relate to 5 Hour Energy® products, including any products obtained from these entities.

8.      All settlement agreements and documents concerning the terms of any settlements reached in this case, including the settlement agreements themselves.

9.      Copies of all document requests served in this case upon plaintiffs, together with copies of all objections served by plaintiffs, including subsequent correspondence concerning any negotiations or limitations of said requests or objections as well as any Orders from the Court compelling or limiting production.

10.     Copies of all interrogatories served in this case on plaintiffs, together with copies of all responses and objections served by plaintiffs, including subsequent correspondence concerning any negotiations or limitations of said interrogatories or objections as well as any Orders from the Court compelling or limiting production.

11.     All non-party subpoenas served in this case, together with copies of all objections served by non-parties, including subsequent correspondence concerning any negotiations or limitations of said requests or objections, as well as all documents produced by non-parties in this case.

12.     All documents concerning customer complaints as alleged in ¶ 3 of the Complaint.

13.     All documents concerning laboratory analysis of 5 Hour Energy® products, as alleged in ¶ 3 of the Complaint, including the results of any such testing and analysis.

14.     All documents concerning the identity of the actual counterfeiters, i.e., the persons who manufactured the alleged counterfeit liquid, bottles and packaging.

15.     All documents concerning the seizure at six warehouses in California as alleged in ¶ 8 of the First Amended Complaint.

16.     Documents sufficient to identify "[o]ne of those sources" of counterfeit 5 Hour Energy® products as alleged in ¶ 8 of the First amended Complaint.

17.     All documents concerning the diversion of Spanish-language 5 Hour Energy® by Baja Exporting LLC ("Baja"), as alleged in ¶ 6 and ¶ 99 of the Complaint.

18.     All agreements between plaintiffs and Baja covering the period from January 1, 2006 to the present.

19.     All documents concerning QKD's purported "long and well documented history of distributing counterfeit products" as alleged in ¶ 42 of the Complaint.

20.     Documents sufficient to identify the address of the two factories located in Wabash, Indiana as alleged in ¶ 65 of the Complaint.

21.     All contracts or agreements between or among Innovation Ventures, LLC ("Innovation Ventures"), Living Essentials LLC ("Living Essentials) and International IP Holdings LLC ("IP Holdings") concerning the assignment or licensing of trademarks, copyrights and trade dress for 5 Hour Energy® products.

22.     All contracts or agreements between or among Innovation Ventures, Living Essentials and IP Holdings concerning the sale and/or distribution of 5 Hour Energy® products.

23.     Documents sufficient to show that plaintiffs have spent more than $500 million in the past five years on advertising and promoting 5 Hour Energy® as alleged in ¶ 76 of the Complaint.

24.     All documents concerning the allegations in ¶ 79 of the Complaint.

25.     All documents concerning the allegations in ¶ 80 of the Complaint.

AM 17594720.2

26.    All documents concerning the allegations in ¶ 81 of the Complaint.

27.    All documents concerning the September 2012 communication between plaintiffs and its salesman concerning suspected diverted 5 Hour Energy® products as alleged in ¶ 82 of the Complaint.

28.    All documents concerning the results of the examination of bottles by Plaintiffs as alleged in ¶ 82 of the Complaint.

29.    Documents sufficient to show the actual height in millimeters of all authentic 5 Hour Energy® bottles manufactured and/or sold by or on behalf of plaintiffs from January 1, 2006 to the present.

30.    All documents concerning or discussing the actual height in millimeters of bottles that plaintiffs claim to be counterfeit.

31.    Documents sufficient to identify all manufacturers of any bottles used by plaintiffs in connection with the manufacture and sale of 5 Hour Energy® from January 1, 2006 to the present.

32.    Documents sufficient to identify all manufacturers of any caps used by plaintiffs in connection with the manufacture and sale of 5 Hour Energy® from January 1, 2006 to the present.

33.    Documents sufficient to identify all manufacturers of any labeling on 5 Hour Energy® bottles from January 1, 2006 to the present.

34.    Documents sufficient to identify all manufacturers of any cartons used to hold 12 bottles of 5 Hour Energy® products from January 1, 2006 to the present.

35.     All documents concerning any instances where Plaintiffs or their subcontractors used a bottle for 5 Hour Energy® that did <u>not</u> have a pimple or dimple on the cap from January 1, 2006 to the present.

36.     All documents concerning testing procedures and test results related to dyes used to print the boxes in which 5 Hour Energy® is sold as alleged in ¶ 83 of the Complaint.

37.     All documents concerning any adverse events or effects experienced by consumers in connection with the use and/or consumption of alleged counterfeit 5 Hour Energy.

38.     All documents concerning customer complaints as alleged in ¶ 85 of the Complaint.

39.     All documents concerning all forensic analyses as alleged in ¶ 86 of the Complaint, including any forensic analysis performed or completed after the Complaint was filed.

40.     Documents sufficient to identify the month and day when plaintiffs first learned of the existence of counterfeit product as alleged in ¶ 88 of the Complaint.

41.     Documents sufficient to identify when plaintiffs first retained counsel as alleged in ¶ 88 of the Complaint.

42.     All documents concerning the "purchases of authentic and counterfeit 5 Hour Energy® in hundreds of locations nationwide" as alleged in ¶ 88 of the Complaint.

43.     All documents concerning plaintiffs' attempts or efforts to notify the public of alleged counterfeit 5 Hour Energy® products in the marketplace, including any notices that were published.

AM 17594720.2

44.     All documents concerning plaintiffs' attempts or efforts to notify any governmental agencies or authorities of suspected counterfeit 5 Hour Energy® products in the marketplace.

45.     All documents concerning any instances of actual or suspected counterfeit 5 Hour Energy® other than the instant lawsuit for the period from January 1, 2006 to the present.

46.     All documents concerning the purchases or seizures that were made as alleged in ¶¶ 90, 92, 102, 104, 107-108, 110-119, 122, 125-127, 129-135, 137-139, 141-142, 151, 157-158, and 165 of the Complaint.

47.     All documents concerning any purported conspiracy by QKD, as alleged in ¶¶ 173, 179, 185-187, 193, 199, 208, 216, 217, 224, 236 and 241 of the Complaint.

48.     All documents showing that QKD willfully infringed any of plaintiffs' rights as alleged in ¶¶ 174, 180, 194, 201, 209, 218, and 225 of the Complaint.

49.     All documents concerning any items that were seized or obtained on October 29, 2012 as alleged in ¶¶ 12 and 13 of the October 31, 2012 Declaration of Geoffrey Potter (the "Potter Declaration").

50.     All documents supplied by Core-Mark's counsel as alleged in ¶ 16 of the Potter Declaration.

51.     All documents concerning plaintiffs' interaction with CVS as alleged in ¶ 18 of the Potter Declaration.

52.     All documents concerning Dolmage's allegation that authentic bottles of 5 Hour Energy® never have a "sprue" or pimple, as alleged in ¶ 5 of the October 25, 2012 Declaration of Matthew S. Dolmage.

AM 17594720.2

53.     All documents concerning all tests and measurements conduced by Erich Speckin on genuine and alleged counterfeit 5 Hour Energy® products as alleged in ¶ 9 of the Declaration of Erich Speckin (the "Speckin Declaration").

54.     All documents concerning all differences between suspected counterfeit and genuine units of 5 Hour Energy® products as alleged in ¶ 10 of the Speckin Declaration.

55.     Documents sufficient to identify the day in October 2012 when Speckin received boxes containing 5 Hour Energy® from plaintiffs as alleged in ¶ 11 of the Speckin Declaration.

56.     Documents sufficient to identify from which defendant the 3 boxes of 5 Hour Energy® (referenced at ¶ 11 of the Speckin Declaration) were obtained by plaintiffs.

57.     All documents concerning the sealed boxes of 5 Hour Energy® received from plaintiffs as alleged in ¶ 12 of the Speckin Declaration.

58.     All documents concerning all the "samples from local stores" that Speckin obtained, as alleged in ¶ 12 of the Speckin Declaration.

59.     All documents concerning all differences as between genuine and alleged counterfeit 5 Hour Energy® products as alleged in ¶ 13 of the Speckin Declaration.

60.     All documents concerning the dimensions of the bottles, as alleged in ¶ 14 of the Speckin Declaration.

61.     All documents and information supplied to Speckin by plaintiffs concerning the significance of the presence or absence of "pimple" or mold mark on the cap.

62.     All documents concerning Gas Chromatography/Flame Ionization Detector tests, Thin Layer Chromatography tests or any other tests or examinations conducted by plaintiffs and Speckin that are related to this case.

63.     All documents supporting or contradicting the conclusions reached by Speckin as alleged in ¶ 25 of the Speckin Declaration.

64.     Documents sufficient to identify all differences between genuine and alleged counterfeit 5 Hour Energy® products observed by Speckin as alleged in ¶ 26 of the Speckin Declaration.

65.     All documents concerning any purchases of 5 Hour Energy® products made by plaintiffs at CVS or at any other entity that QKD has identified as a customer of 5 Hour Energy®.

66.     All documents concerning purchases of 5 Hour Energy® by Brian Kelcher, Abigail Marean and Andrew Bruml, including the actual 5 Hour Energy® products purchased.

67.     All documents concerning all purchases of 5 Hour Energy® by plaintiffs, Kroll Associates or any other person or entity acting on plaintiffs' behalf from January 1, 2010 to the present.

68.     All documents concerning any alleged purchases and sales by QKD of alleged counterfeit 5 Hour Energy® products.

69.     Documents sufficient to identify plaintiffs' total sales of 5 Hour Energy® products from January 1, 2008 to the present, in both units and dollars.

70.     Documents sufficient to identify all prices (inclusive of discounts and rebates) charged by plaintiffs for 5 Hour Energy® products (both regular and Extra Strength) from November 1, 2010 to the present.

71.     All documents concerning any discounts, rebates or coupons offered by plaintiffs in connection with the sales of 5 Hour Energy® products.

72.     Documents sufficient to identify the number of units and dollar value of 5 Hour Energy® products donated or given away for free as promotional items by plaintiffs.

73.     Documents sufficient to identify how plaintiffs calculate profits from the sales of 5 Hour Energy® products (both regular and Extra Strength), including each item of expense deducted and the amount associated with each item of expense.

74.     Documents sufficient to identify the lowest profit per box realized by plaintiffs from the sale of 5 Hour Energy® products (both regular and Extra Strength) from November 1, 2010 to the present.

75.     All documents concerning any purchases by QKD of 5 Hour Energy® products, including any documents that suggest that such liquids, bottles, caps, labeling or cartons were or were not counterfeit.

76.     All documents concerning Food Distributor's sources of any 5 Hour Energy® products which plaintiffs contend are counterfeit.

77.     All documents concerning Universal Wholesale's sources of any 5 Hour Energy® products which plaintiffs contend are counterfeit.

78.     Documents sufficient to identify plaintiffs' procedures for disposing of 5 Hour Energy® liquid that does not conform to plaintiffs' manufacturing formulation or specifications.

79.     Documents sufficient to identify plaintiffs' procedures for disposing of bottles, caps, labels or cartons that do not conform to plaintiffs' manufacturing formulation or specifications.

80.     All documents concerning the disposition of all 5 Hour Energy® liquid, bottles, caps, labels or cartons that did not conform to plaintiffs' manufacturing formulation or specifications for the period January 1, 2009 to the present.

81.     Examples of each and every version of genuine bottles, caps, labels and cartons from 5 Hour Energy® used by plaintiffs since January 1, 2007.

82.     Five samples from five different lot numbers of 5 Hour Energy® (in each of Orange, Berry and Extra Strength Berry flavors) in original unopened packaging, which plaintiffs contend is genuine.

83.     Documents sufficient to identify all changes over time in bottles, caps, labels and cartons for 5 Hour Energy from January 1, 2007 to the present.

84.     All policies and procedures concerning the sale or disposition of 5 Hour Energy® products in packaging which is no longer current packaging, or in packaging which plaintiffs anticipate or contemplate changing.

85.     Documents sufficient to identify any practice or instance of selling or disposing of 5 Hour Energy® products in packaging which is no longer current packaging, or in packaging which plaintiffs anticipate or contemplate changing.

86.     Copies of all agreements which permit any third party to manufacture, distribute or sell any 5 Hour Energy® products.

87.     Documents sufficient to identify any entity or entities that manufactured the bottles, caps, labels and cartons for 5 Hour Energy® from January 1, 2008 to the present.

88.     Documents sufficient to identify the facility or factory where the bottles, caps, labels and cartons for 5 Hour Energy® were manufactured.

89.     Documents sufficient to identify where all of the individual components of 5 Hour Energy® (i.e., liquid, bottle, caps, labels and cartons), are assembled into the finished product that is ultimately sold to the public.

90.    Documents sufficient to identify any quality control measures utilized in the manufacture, packaging, labeling and distribution of 5 Hour Energy®.

91.    All documents concerning any investigations or inquiry undertaken by plaintiffs concerning the manufacture of any unauthorized liquid, bottles, caps, labels or cartons of 5 Hour Energy®.

92.    All documents concerning any customer returns relating to any 5 Hour Energy® that plaintiffs allege is counterfeit.

93.    All chain of custody logs for all 5 Hour Energy® products that were seized, purchased, obtained, tested or examined in connection with this case.

94.    All documents, which contain information about 5 Hour Energy® products that were tested or examined by Erich Speckin in connection with this case.

95.    All photographs taken by plaintiffs of 5 Hour Energy® products that were seized, purchased, obtained, tested or examined in connection with this case.

96.    All pleadings concerning any lawsuits involving plaintiffs concerning alleged counterfeit 5 Hour Energy® products.

97.    Documents sufficient to identify all recalls of 5 Hour Energy® products, including the recall notices themselves.

98.    All policies or procedures which concern the parameters or criteria of conducting a voluntary recall of 5 Hour Energy® products.

99.    All documents, including e-mails, concerning shipments of suspect 5 Hour Energy® that were being sent to Erich Speckin for examination and testing in connection with this case.

AM 17594720.2

100.    All documents that accompanied all 5 Hour Energy® products that were sent to Erich Speckin for testing or examination in connection with this case.

101.    All versions of any customer complaint form or template that is completed by a customer service representative when a customer contacts plaintiffs to lodge a complaint about any 5 Hour Energy® products.

102.    Documents concerning any investigation by any federal, state or local governmental agency or body in connection with alleged counterfeit 5 Hour Energy® products.

103.    All results of quality control tests of genuine 5 Hour Energy® products that were conducted after manufacture of the liquid and prior to the liquid being offered for sale by plaintiffs.

104.    All documents concerning the testing, examination or analysis by or for plaintiffs of any 5 Hour Energy® products sold by, and/or seized from any of the defendants, including the testing protocols and test results.

105.    All documents used or referred to, whether for comparison purposes or otherwise, in making the determination that any of the purchased or seized 5 Hour Energy® products were or were not counterfeit.

106.    All documents reviewed, maintained or created by plaintiffs that were used to determine that the 5 Hour Energy® products seized or purchased from any defendant were or were not authentic.

107.    All documents and communications, including internal memoranda and all communications between plaintiffs and any third-parties concerning (a) this litigation; and/or (b) the subject matter of this litigation.

108.    All policies or procedures regarding whether 5 Hour Energy® products are (or are not) permitted to be sold below regular wholesale price and/or list price, and the terms and conditions of same.

109.    All contracts or agreements between plaintiffs and any entity that manufactures any products bearing a trademark owned by plaintiffs ("Contract Manufacturers").

110.    All documents evidencing any disputes between plaintiffs and any Contract Manufacturer that manufactures liquid, caps, bottles, labels or cartons for 5 Hour Energy®.

111.    All documents concerning any diversion or suspected diversion of 5 Hour Energy® products by Contract Manufacturers or authorized distributors.

112.    Documents sufficient to identify any problems with Contract Manufacturers, including lost, missing, defective, non-conforming or stolen 5 Hour Energy® products (including liquid, bottles, caps, labels or cartons).

113.    All documents concerning lost, missing, defective, non-conforming and/or stolen 5 Hour Energy® products (including liquid, bottles, caps, labels or cartons) which later reappeared for sale by distributors or retailers.

114.    All documents concerning plaintiffs' employees or agents who were suspected of being involved in, or having acquiesced in, diversion or counterfeiting of 5 Hour Energy® products.

115.    All documents concerning any insurance claim(s) filed by plaintiffs in connection with the alleged counterfeit 5 Hour Energy® products in this case.

116.    All documents concerning any tax deduction(s) or write-off(s) that plaintiffs have sought or taken (or intend to take) in connection with the alleged counterfeit 5 Hour Energy® products in this case.

117.    All policies or procedures of offering discounts for 5 Hour Energy® products in connection with the end of a fiscal quarter or fiscal year.

118.    Documents sufficient to identify all practices or instances of offering product discounts for 5 Hour Energy® products in connection with the end of a fiscal quarter or fiscal year.

119.    Documents concerning any sales of 5 Hour Energy® products by non-authorized distributors or retailers, other than the defendants in this case.

120.    All documents concerning any lawsuit(s), but excluding product liability or personal injury lawsuits, filed against you by any distributor, retailer, or customer concerning 5 Hour Energy® products.

121.    Documents concerning any policies or practices of Plaintiffs and/or their authorized distributors concerning any promotional or other allowances, rebates, refunds, reimbursements, credits, chargebacks, incentives and/or discounts to purchasers of 5 Hour Energy® products.

122.    Documents sufficient to show, by product, the sale of 5 Hour Energy® products from Plaintiffs to any authorized distributor, wholesaler or retailer, including the price charged and the net price paid by each for the product, taking into account any rebates, refunds, reimbursements, allowances, credits, chargebacks, incentives and/or discounts, including but not limited to:

      a.    Documents sufficient to show the quantity and the initial price charged per unit;

   b.   Documents sufficient to show the amount of any rebates, refunds, reimbursements, allowances, credits, chargebacks, incentives and/or discounts that effectively lowered the net purchase price per unit.

123.   All contracts or agreements between plaintiffs and any of their authorized distributors relating in any way to 5 Hour Energy® products.

124.   All documents which show that any of the 5 Hour Energy® products seized from, obtained from, or traceable to defendants in this case were counterfeit.

125.   All documents which show that any of the 5 Hour Energy® products seized from, obtained from, or traceable to defendants in this case was determined by plaintiffs to be genuine.

126.   Documents concerning any 5 Hour Energy® products that were seized or obtained by plaintiffs from retail stores (including CVS) where plaintiffs allege that such items had been supplied by QKD.

127.   Documents concerning any 5 Hour Energy®  products that were obtained by plaintiffs from any consumer where plaintiffs allege that such items had been supplied by QKD.

128.   Documents concerning any deaths, personal injury, bodily injury or health problems experienced by any consumer's use of any of the alleged counterfeit 5 Hour Energy® products.

129.   Documents concerning any warnings or notices that plaintiffs made or conveyed to QKD concerning the risks or dangers of counterfeit or non-genuine 5 Hour Energy® products.

130.    Documents evidencing any warnings or notices that QKD received concerning the risks or dangers of counterfeit or non-genuine 5 Hour Energy® products.

AM 17594720.2

131.    For the time period January 1, 2006 to August 31, 2012, documents sufficient to identify every incident or episode where plaintiffs became aware that counterfeit or non-genuine 5 Hour Energy® products were being manufactured, marketed, bought or sold.

132.    For the time period January 1, 2006 to the present, documents sufficient to identify every warning, notice or alert that plaintiffs issued concerning any instance of alleged counterfeit or non-genuine 5 Hour Energy® products.

133.    Any sworn or unsworn statements made in connection with this action, including, but not limited to, deposition transcripts, affidavits, affirmations, or declarations, together with any exhibits thereto.

134.    Any sworn or unsworn statements made in connection with the Living Essentials' California Action (as referenced in ¶ 7 of the First Amended Complaint) including, but not limited to, deposition transcripts, affidavits, affirmations, or declarations, together with any exhibits thereto.

Dated:   New York, New York
         November 21, 2012

Anthony J. Viola
Andre K. Cizmarik
EDWARDS WILDMAN PALMER LLP
Attorneys for Defendant Quality King Distributors, Inc.
750 Lexington Avenue
New York, New York  10022
(212) 308-4411

AM 17594720.2