**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

INNOVATION VENTURES, LLC and LIVING
ESSENTIALS, LLC,

          -against-

                        12 Civ. 5354 (KAM) (RLM)

ULTIMATE ONE DISTRIBUTING CORP., ET AL;

---

## DEFENDANTS WALID AND RAID JAMIL'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS

        Defendants Walid and Raid Jamil submit the following for their Memorandum of Law in

Opposition to Plaintiffs' Motion for Contempt Sanctions.

                    Respectfully Submitted,

                    PAESANO AKKASHIAN, PC

                    By: */s/Brian M. Akkashian*

                    Brian M. Akkashian (P55544)
                    Anthony R. Paesano (P60173)
                    Richard M. Apkarian Jr. (P66206)
                    132 N. Old Woodward Avenue
                    Birmingham, MI  48009
                    248-792-6886

                    *Counsel for Defendants Walid Jamil, Raid*
                    *Jamil, Midwest Wholesale Distributors, Justin*
                    *Shayota, JT Wholesale and Trimexico*

Dated:  April 26, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

I.     INTRODUCTION AND PERTINENT FACTS................................................1

II.    LEGAL ANALYSIS...........................................................................3

       A.    The Jamils Misunderstood the Scope of the Asset Freeze.....................3

       B.    The Court Does Not Have Authority to Grant Plaintiffs' Requested Relief.........5

       C.    The Jamils Request a Modification of the Preliminary Injunctions.................6

III.   CONCLUSION......................................................................................7

## TABLE OF AUTHORITIES

CASES

*Motorola, Inc. v. Abeckaser*, No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833
(E.D.N.Y. 2009)…...……………………………………………………………………………4

*Dunn v. N.Y. State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir.1995)……………………………5

*Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996)……………………………………………….5

*Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990)………..5

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir.1989)……………5

*New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)………….5

*In re Walmar Screen Printing Co.*, 184 F.Supp. 858, 861 (E.D.N.Y.1960)………………….5-6

*King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995)…………………………………6

*Theatre Confections, Inc. v. Sunstar Theatres Coral Springs, LLC*, 03-CV-6006 (CJS),

2003 WL 21730694 at *1 (W.D.N.Y. June 6, 2003)……………………………………………6


STATUTES

15 U.S.C.§1116……………………………………………………………………………………5

## I.   INTRODUCTION AND PERTINENT FACTS

Walid Jamil got involved with 5 Hour Energy at the request of Joseph Shayota, the owner of Baja Exporting, LLC ("Baja"), an authorized distributor of 5 Hour Energy, and Robert McCormack, a high ranking employee of Living Essentials, the maker of 5 Hour Energy. **(Exhibit 1**, Jamil Deposition, pg. 14; see also, Midwest Parties' First Amended Counterclaim). In a conference call between Walid, Joseph and Robert in the summer of 2011, Walid was informed that Baja couldn't sell its 5 Hour Energy in Mexico, it was moving the product to the United States to be sold, it wanted Walid to change the labels from Spanish language to English language, and Walid was authorized to do so by Living Essentials. **(Ex. 1**, pp. 18-21). Walid agreed and he proceeded to "put labels on the bottles," nothing more. **(Ex. 1**, pg. 17). He did not manufacture, or tamper with, any liquid. **(Ex. 1**, pg. 133). In exchange for his re-labeling operations, Walid received "approximately about $100,000." **(Ex. 1**, pg. 37).

Plaintiffs have never denied that this conference call occurred or the substance of the representations made on the call, and they have never alleged, much less proven, that Walid did anything but re-label the product and earn about $100,000. Despite this, Plaintiffs are calling Walid the "kingpin" of a multimillion dollar counterfeiting conspiracy.

Raid Jamil is Walid's younger brother. He had no involvement with Walid's re-labeling of 5 Hour Energy. **(Ex. 1**, pg. 44). In fact, he had no involvement with 5 Hour Energy whatsoever. He was merely a signatory on the bank account for Midwest Wholesale Distributors, Inc. ("Midwest"), which owns a warehouse in California where Walid's re-labeling operations took place, and he made certain payments for Walid's re-labeling operations, but solely at Walid's direction.

Throughout this case, Plaintiffs have never denied Raid's innocence, and they do not have a shred of evidence to the contrary. But, for some reason, perhaps his relationship to Walid, they label him as a criminal conspirator.

Late last year, Plaintiffs rushed into Court with hundreds of pages of legal papers, obtained *ex parte* TROs and seizure orders, and executed an all-out attack on Walid, Raid and others. Walid and Raid stipulated to preliminary injunctions, which focused primarily on cessation of any 5 Hour-related operations and/or the use of Plaintiffs' marks. Walid and Raid have fully complied with these prohibitions, and Plaintiffs do not allege otherwise. However, the preliminary injunctions also include a freeze on the Jamils' assets and now Plaintiffs want to hold them in contempt of court for gambling at a Detroit casino.

Walid and Raid respectfully request that the Court deny Plaintiffs' motion for contempt for two very important reasons.

First, Walid and Raid misunderstood the scope of the asset freeze. They thought it was limited to the transfer of 5 Hour revenue or profits, or the fraudulent transfer of personal assets to avoid potential collection, not a total asset freeze. This is an eminently reasonable belief, since the purpose of a pre-judgment Lanham Act restriction is to preserve ***ill-gotten gains***, not to financially paralyze Defendants against whom no judgment has been rendered. Based on their misunderstanding, Walid and Raid respectfully request the Court to exercise its discretion by excusing all prior gambling, with their assurance that it will not happen again, while the preliminary injunctions remain in effect.

Second, the Court should not grant the specific types of relief that Plaintiffs have requested. Plaintiffs have asked for a default judgment in the amount of $224,000, an order requiring the Jamils to put $5,000,000 in escrow (money that they do not have and which is well

in excess of the $100,000 that Walid earned from his re-labeling operations), and an order compelling the Jamils to account for all income and expenses since December 2012. Plaintiffs have cited no court rule, case or statute that would justify any of these extreme forms of relief. Plaintiffs only cite to legal authority that discusses fines or imprisonment, neither of which has been requested, and neither of which would be appropriate under the circumstances.

In addition to denying Plaintiffs' Motion, Walid and Raid also request the Court to modify the total asset freeze in the Preliminary Injunctions to only prevent the transfer of revenue and profits related to 5 Hour Energy business, to the extent any exist, and to also prevent the fraudulent transfer of personal assets to avoid potential collection. Alternatively, if the orders remain as written, Walid and Raid request the Court to approve monthly living expenses of $2,760 for Walid and $4,150 for Raid.

## II.    LEGAL ANALYSIS

### A.    The Jamils Misunderstood the Scope of the Asset Freeze

Walid and Brian Jamil *stipulated* to the Court's Preliminary Injunctions. The underlying purpose of those orders was to prevent them from selling or distributing 5 Hour Energy, or using Plaintiffs' protected marks, and Walid and Raid have fully abided by these requirements. In fact, Walid immediately shut down his re-labeling operations when the authenticity of the product was called into question in the Fall of 2012. Raid was not involved with 5 Hour Energy or Walid's re-labeling operations whatsoever.

The Preliminary Injunctions restrict Walid and Raid from "transferring or conveying any assets." Having themselves reviewed the preliminary injunctions more carefully, they concede that a strict reading of the preliminary injunctions would include gambling. (**Exhibits 2**, Declaration of Walid Jamil, ¶3; **Exhibit 3**, Declaration of Raid Jamil, ¶3). However, Walid and

3

Raid had always interpreted the asset freeze as prohibiting the transfer of revenue or profits from

5 Hour Energy business, to the extent any existed, and as also prohibiting the *fraudulent* transfer

of personal assets to avoid potential collection. (**Ex. 2**, ¶4; **Ex. 3**, ¶4). The Jamils did not realize

that Plaintiffs intended to prevent them from spending any money whatsoever, including income

completely unrelated to 5 Hour Energy. (**Ex. 2**, ¶6; **Ex. 3**, ¶6). If they did, Walid and Raid

would not have stipulated to the preliminary injunctions.

The Jamils' interpretation, or perhaps misinterpretation, of the scope of the asset freeze is

understandable, as pre-judgment *total* asset freeze is inappropriate. See *Motorola, Inc. v.*

*Abeckaser*, No. 07-CV-3963 (CPS) (SMG), 2009 WL 1362833 (E.D.N.Y. 2009) ("The Lanham

Act authorizes the seizure of counterfeit products, see 15 U.S.C. §1116, but does not specifically

authorize the restraint of assets of a defendant in an action arising under the Act. However,

because the Lanham Act does give courts the authority to order equitable relief in the form of an

accounting of the seller's **profits**, this Court has the authority to order injunctive relief freezing

assets in order to ensure availability of final equitable relief.") (emphasis added); McCarthy on

Trademarks and Unfair Competition § 30:40 (4th ed.) (Purpose of freezing assets is to preserve

"security for plaintiff's future recovery on an accounting of the counterfeiter's **profits**")

(emphasis added).

Based on their misunderstanding of the scope of the asset freeze, Walid and Raid

respectfully request the Court to exercise its discretion by excusing all prior gambling, with their

assurance that it will not happen again (while the Preliminary Injunctions remain in effect). (**Ex.**

**2**, ¶7; **Ex. 3**, ¶7).

**B.      The Court Does Not Have Authority to Grant Plaintiffs' Requested Relief**

Even if the Court does not excuse Walid and Raid's gambling, the Court should not grant the relief requested by Plaintiffs.[1]  Plaintiffs are requesting: (1) a default judgment in the amount of $224,000, (2) an order requiring Walid and Raid to put $5,000,000 in escrow, and (3) an order compelling the Jamils to account for all income and expenses since December 2012.  But Plaintiffs have not set forth any legal authority that would even permit the Court to grant any of these extreme forms of relief.

In assessing sanctions for civil contempt, the district court "is vested with wide discretion in fashioning a remedy," *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996), though "a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).  Sanctions may not be imposed as a purely punitive measure. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir.1989).

Plaintiffs have not cited a single court rule, statute or case that gives the Court the legal authority to grant a default judgment, an order to escrow an exorbitant sum of money, or an order to account for all income and expenses.  In fact, Plaintiffs' Memorandum only cites to legal authority that discusses fines or imprisonment, but Plaintiffs have not requested such relief, and even if they did, neither form of relief would be appropriate under the circumstances.  For example, when fashioning a fine against a contemptuous party, Plaintiffs must prove actual damages. *See, e.g., New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) ("Compensatory sanctions should reimburse the injured party for its actual damages."); *In*

---

[1] The Second Circuit stated that "[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt." *Dunn v. N.Y. State Dep't of Labor*, 47 F. 3d 485 (2d Cir. 1995). As discussed in Walid and Raid's letter to the Court, Walid did not actually transfer any money to MGM. He gambled and won money. And as to Raid, his Bank of America transactions occurred before he was served with the Complaint and TRO.

*re Walmar Screen Printing Co.*, 184 F.Supp. 858, 861 (E.D.N.Y.1960) ("claim of actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture"); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995) ("some proof of loss must be present to justify [a sanction's] compensatory aspects."); *Theatre Confections, Inc. v. Sunstar Theatres Coral Springs, LLC*, 03-CV-6006 (CJS), 2003 WL 21730694 at *1 (W.D.N.Y. June 6, 2003) ("Compensatory sanctions should reimburse an injured party for its actual damages and may not be imposed absent some proof of actual loss."). Plaintiffs have not suffered any damage as a result of Walid and Raid's gambling.

Because Plaintiffs have not provided the Court with any authority for the specific types of relief that Plaintiffs have requested, not to mention the fact that such relief would not be warranted under the circumstances, Plaintiffs' motion should be denied.[2]

## C.      The Jamils Request a Modification of the Preliminary Injunctions

Based on the reasons stated in Section II (A) above, Walid and Raid Jamil respectfully request the Court to modify the total asset freeze in the Preliminary Injunctions to only prevent the transfer of revenue and profits related to 5 Hour Energy business, to the extent any exist, and to also prevent the fraudulent transfer of assets to avoid potential collection. Such a modification would comport with the law, see *Motorola, supra*, the Jamils' interpretation of the asset freeze, and equitable principals. Otherwise, the Jamils will be financially paralyzed or subjected to virtual house arrest throughout these proceedings, which could go on for years.

---

[2] Additionally, regarding Plaintiffs' request that the Jamils put $5,000,000 into escrow, Plaintiffs claim the Jamils have admitted that they earned over $5,000,000 from the sale of counterfeit 5 Hour Energy. This is false. Counsel for the Jamils provided Plaintiffs' counsel with a list of invoices from Midwest Wholesale, which is very different from an accounting of sales revenue, or money actually received, and revenue is very different from profits earned. The only evidence of profits is Walid's testimony that he received "approximately about $100,000" from his re-labeling operations, while Raid received nothing. (**Ex. 2**, pg. ¶4; **Ex. 3**, pg. ¶4).

Alternatively, if the orders remain as written, Walid and Raid request the Court to approve monthly living expenses of $2,760 for Walid and $4,150 for Raid. (**Ex. 2**, ¶9; **Ex. 3**, ¶9). The amounts are broken down by specific expense in Walid and Raid's attached Declarations. (*Id*.).

### III.   **CONCLUSION**

For the reasons stated herein, Defendants Walid and Raid Jamil respectfully request the Court to deny the relief sought by Plaintiffs and to modify the Preliminary Injunctions as appropriate.

Respectfully Submitted,

PAESANO AKKASHIAN, PC

By: */s/Brian M. Akkashian*
Brian M. Akkashian (P55544)
Anthony R. Paesano (P60173)
Richard M. Apkarian Jr. (P66206)
132 N. Old Woodward Avenue
Birmingham, MI  48009
248-792-6886

*Counsel for Defendants Walid Jamil, Raid
Jamil, Midwest Wholesale Distributors, Justin
Shayota, JT Wholesale and Trimexico*

Dated:  April 26, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all registered ECF counsel.

Respectfully Submitted,

PAESANO AKKASHIAN, PC

*/s/Richard M. Apkarian Jr.*
Brian M. Akkashian (P55544)
Anthony R. Paesano (P60173)
Richard M. Apkarian Jr. (P66206)
132 N. Old Woodward Avenue
Birmingham, MI 48009
248-792-6886

*Counsel for Defendants Walid Jamil, Raid
Jamil, Midwest Wholesale Distributors, Justin
Shayota, JT Wholesale and Trimexico*

8