**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

April 30, 2013

**By ECF**

Geoffrey Potter
Partner
(212) 336-2050
gpotter@pbwt.com

Hon. Kiyo Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: **Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al. (12 Civ. 5354)**

Dear Judge Matsumoto:

Pursuant to Rule IV.B.1 of this Court's Chambers Practices, I write on behalf of third-party defendant Robert McCormack ("McCormack") to request a pre-motion conference in connection with a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims asserted against McCormack in the First Amended Answer (Dkt. No. 499) of Defendants Midwest Wholesale Distributors, Inc. ("Midwest"), Walid Jamil ("Walid"), and Justin Shayota (collectively, the "Midwest Defendants").[1]

The Midwest Defendants allege that "[a]t some point between May and July of 2011, [Walid] participated in a telephone conference" with McCormack and Joseph Shayota ("Joseph"), the owner of defendants Baja Exporting, LLC and Tradeway International, Inc. d/b/a Baja Exporting (collectively, "Baja"). (First Am. Ans. ¶ 12.) At the time, Baja was "an authorized distributor of 5 Hour Energy product" (*Id.* ¶ 14), which is manufactured by McCormack's employer, Plaintiff Innovation Ventures, LLC. During that telephone conference, Joseph "communicated to McCormack that it was difficult to sell 5 Hour in Mexico." (*Id.* ¶ 15.) In response, McCormack allegedly "directed [Joseph] to arrange for transportation of [Baja's excess] 5 Hour from Mexico to the United States and to engage a company to re-label and re-package [it] from Spanish/Mexican labels to English/United States labels . . . ." (*Id.* ¶ 16.) Baja subsequently "hired Midwest for this purpose." (*Id.* ¶ 16.) The Midwest Defendants then engaged Leslie Roman to print English-language 5-hour ENERGY® boxes and labels and began re-labeling and re-packaging Baja's Spanish-language 5-hour ENERGY®. (*Id.* ¶¶ 17-23.)

In "late 2011 or early 2012," Joseph informed Walid that Baja had lost its distributorship rights to 5-hour ENERGY®. (*Id.* ¶ 24.) Joseph therefore "directed Midwest to find . . . someone that could manufacture or make the 5 Hour product" from scratch. (*Id.* ¶ 24.) The Midwest Defendants obliged Joseph and hired defendant Juan Romero, who began "delivering [putative] 5 Hour product to Midwest in unmarked bottles." (*Id.* ¶ 26.) Through October or early

---

[1] On April 19, 2013, Plaintiffs Innovation Ventures, LLC, Living Essentials, LLC, and International IP Holdings, LLC (collectively, "Living Essentials") filed a similar letter (Dkt. No. 524). The undersigned counsel represents both Living Essentials and McCormack.

1

Hon. Kiyo A. Matsumoto
April 30, 2013

November 2012, Midwest labeled and packaged the counterfeit 5-hour ENERGY® and sold it to Baja and Dan-Dee Company, Inc., a defendant in the related California action. (*Id.* ¶¶ 27-30.)

Based on the above allegations, the Midwest Defendants assert against McCormack claims of fraudulent misrepresentation, "innocent misrepresentation," "silent fraud" (i.e., fraudulent concealment), indemnification, and contribution. (*Id.* at pp. 47-49.) These allegations fail to state a claim as a matter of law. Indeed, the Midwest Defendants have already "agree[d]" that the First Amended Answer fails to state a claim for innocent misrepresentation. (Midwest Defendants' letter to the Court dated April 10, 2013 (Dkt. No. 533) ("Midwest Response") at 3.)

First, the Midwest Defendants fail to allege any false statements *of fact* made by McCormack—let alone with the particularity required by Rule 9(b). *See Higgins v. Lawrence*, 309 N.W.2d 194, 197 (Mich. Ct. App. 1981) (action for misrepresentation "must be predicated on a statement relating to *a past or an existing fact*" (emphasis added)). The only utterance by McCormack concretely alleged in the First Amended Answer is that "McCormack directed [Joseph] to arrange for transportation of the 5 Hour from Mexico to the United States and to engage a company to re-label and re-package [it] . . . ." (First Am. Ans. ¶ 16.) This is a request or a command, not a statement of fact capable of truth or falsity. *Cf. United States v. Briggs*, 939 F.2d 222, 226 (5th Cir. 1991) ("The bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation").[2]

Second, the Midwest Defendants fail to allege the "when" and "where" of the alleged "conference call" with particularity. The "where" is completely unspecified, and the "when" is given as a vague three-month period "[b]etween May and July of 2011." *See Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159, 161 (S.D.N.Y. 1989) (allegation that "statements were made some time during a two month period" insufficient under Rule 9(b)). Indeed, in their April 10, 2013 letter to the Court, the Midwest Defendants admit that this alleged call did not take place during this three-month time period *at all*. (Midwest Response at 3.)[3]

Third, the Midwest Defendants fail to allege facts plausibly establishing *reasonable*

---

[2] In their April 10, 2013 letter, the Midwest Defendants suggest that the First Amended Answer *also* alleges that McCormack "represented that Midwest *was authorized* to change the labels." (Midwest Response at 1-2 (citing First. Am. Ans. ¶ 35) (emphasis added).) But to the extent Paragraph 35 of the First Amended Answer (which appears in its causes-of-action section) alleges *any* express statements, it appears to attribute them to "Baja," not McCormack. Indeed, the facts section of the First Amended Answer does not suggest that McCormack said *anything* to or about the Midwest Defendants, and confirms that it was "Baja" who "hired Midwest" to perform the relabeling. (*Id.* ¶ 16.)

[3] The Midwest Defendants deem it "[n]otabl[e]" that Living Essentials "d[id] not deny the existence of the conference call" or "the substance of [McCormack's] misrepresentations" in its April 19, 2013 letter to the Court. (Midwest Response at 3.) This is wrong: Living Essentials pointed out that the First Amended Answer's factual allegations are "directly contradict[ed]" by Walid's "sworn deposition testimony" in the *Green Health* case. (Living Essentials' April 19, 2013 Letter to the Court (Dkt. No. 524) at 2 n.2.) In any event, because Living Essentials' letter was in connection with a *motion to dismiss pursuant to Rule 12(b)(6)*, the factual falsity of the Midwest Defendants' allegations was beside the point.

Hon. Kiyo A. Matsumoto
April 30, 2013

reliance, an element of any misrepresentation-based claim. *See Bergen v. Baker*, 691 N.W.2d 770, 778 (Mich. Ct. App. 2004) ("a person who unreasonably relies on false statements is not entitled to damages for misrepresentation"); *LeRoy Constr. Co. v. McCann*, 96 N.W.2d 757, 760 (Mich. 1959) (plaintiff must have "relied upon the representations and exercised reasonable prudence"). As a matter of law, a reasonably prudent, law-abiding businessman would not blithely follow an employee's request to counterfeit his employer's own product—spending tens of thousands of dollars on manufacturing equipment in the process (First Am. Ans. ¶ 20)—without further investigation, a contract, or even any written documentation of the request.[4]

Fourth, a misrepresentation claim lies only if the defendant "made [the representation] with the intention that it should be acted upon by plaintiff." *Smith v. Taber*, 107 N.W.2d 761, 762 (Mich. 1961). The Midwest Defendants do not allege facts suggesting that McCormack knew Walid was on the line during the alleged phone call (or even that Walid existed). Therefore, there can be no inference that McCormack *intended for Walid to rely* on his statements—let alone the other Midwest Defendants.[5]

Fifth, the "silent fraud" claim against McCormack fails because McCormack lacked any duty to speak. Silent fraud requires "an affirmative duty to disclose" by virtue of a "fiduciary" or confidential relationship. The Midwest Defendants do not allege that McCormack was their fiduciary, and any such allegation would be absurd. *Bradley v. Gleason Works*, 175 Mich. App. 459, 463-65 (1989); see also *Transcontinental Trade & Fin. Corp. v. Besser Co.*, 2009 U.S. Dist. LEXIS 9771, at *11-12 (E.D. Mich. Feb. 10, 2009) (dismissing silent fraud claim where no fiduciary duty existed); *Ram v. Lehman Bros. Bank, FSB*, 2011 U.S. Dist. LEXIS 122674, at *9-10 (E.D. Mich. Oct. 24, 2011) (same).

Finally, the Midwest Defendants' contribution and indemnification claims against McCormack fail because they have not stated an underlying substantive claim against him. *See Cliffs Forest Prods. Co. v. Al Disdero Lumber Co.*, 375 N.W.2d 397, 402 (Mich. Ct. App. 1985).

The Midwest Defendants' third-party claims against McCormack should be dismissed on these and other related grounds. We respectfully request that this motion be considered at the May 28 pre-motion conference the Court scheduled to discuss Living Essentials' proposed motion to dismiss (Dkt. No. 524), and that the parties brief both motions on the same schedule.

---

[4] In their April 10, 2013 letter, the Midwest Defendants point out that the First Amended Answer alleges that they "*reasonably believed* that Living Essentials approved the re-labeling." (Midwest Response at 3 (citing First Am. Ans. ¶¶ 32) (emphasis added).) But such conclusory phrases are not entitled to a presumption of truth: "The proper inquiry [under *Iqbal*] is not whether the Complaint contains the phrase, 'reasonable reliance,' but whether the pleadings plausibly allege facts from which it can be inferred that the plaintiff reasonably relied on the defendant's representations." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 U.S. Dist. LEXIS 38768, at *24 (S.D.N.Y. Mar. 5, 2013).

[5] In their April 10, 2013 letter, the Midwest Defendants point out that the First Amended Answer contains the words "Living Essentials intended that Counter-Plaintiffs rely on the representations." (Midwest Response at 3 (citing First Am. Ans. ¶ 38).) This, too, is a conclusory recitation; under *Iqbal*, it is entitled to no weight absent supporting factual detail plausibly suggesting it to be true.

Hon. Kiyo A. Matsumoto
April 30, 2013

                                              Respectfully submitted,

                                              Geoffrey Potter

cc:      Anthony Paesano (via E-mail and ECF)
          Brian Akkashian (via E-mail and ECF)