# PAESANO | AKKASHIAN

ATTORNEYS & COUNSELORS

132 North Old Woodward Avenue
Birmingham, Michigan 48009
P 248.792.6886
F 248.792.6885
www.paesanoakkashian.com

Anthony R. Paesano
Brian M. Akkashian
Richard M. Apkarian Jr.

Daniel S. Hoops
Of Counsel
Also Licensed in Florida

May 3, 2013

**VIA ECF**
Honorable Kiyo A. Matsumoto
Eastern District of New York
Chambers: Room S905
Courtroom: N6G
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   *Innovation Ventures, LLC et al. v Walid Jamil et al.*, Docket No: 12 Civ. 05354

Dear Judge Matsumoto:

The undersigned counsel represents Defendants Walid Jamil, Raid Jamil, Justin Shayota, Midwest Wholesale Distributors, Inc., JT Wholesale, Inc. and Trimexico, Inc. (collectively, the "Midwest Defendants") in the referenced case. This letter is being sent pursuant to Rule (IV)(B)(1) of the Court's Chamber Practices to respond to Third-Party Defendant Robert McCormack's request for a pre-motion conference in connection with his planned motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Third-Party Complaint filed by Walid Jamil, Justin Shayota and Midwest Wholesale Distributors, Inc. (collectively, "Third-Party Plaintiffs"). The Court should not consider McCormack's planned motion for the following reasons:

First, Third-Party Plaintiffs have alleged sufficient statements *of fact* to support a valid claim for fraudulent misrepresentation against McCormack. McCormack asserts that the "only utterance by McCormack concretely alleged in the First Amended Answer is that 'McCormack directed [Joseph] [Shayota] to arrange for transportation of the 5 Hour from Mexico to the United States and to engage a company to re-label and re-package [it] . . .'" This is false. Third-Party Plaintiffs also alleged that:

> 11.   McCormack intentionally made false representations of material facts to the Midwest Parties. **Specifically, he represented that Midwest was authorized to change the labels on 5 Hour product from Mexico for re-sale in the United States.** (First Amended Third-Party Complaint, ¶11) (emphasis added).

This statement is sufficiently based in fact – McCormack represented that Midwest was authorized to change the labels on the 5 Hour Product from Mexico. Now, Living Essentials, McCormack's employer, is alleging exactly the opposite – that Midwest's conduct of changing labels violated Living Essentials' trademarks and resulted in the counterfeit sale of their product. Thus, according to his own employer, McCormack's statements were false, and he is personally liable for his own torts. See *Baranowski v. Strating*, 72 Mich. App. 548, 559-

560; 250 N.W.2d 744 (1976) (agents or employees may be held individually liable for the torts that they commit while acting on behalf of the corporation).

Next, McCormack argues that Third-Party Plaintiffs "fail to allege the 'when' and 'where' of the alleged 'conference call'" between himself, Walid Jamil and Joe Shayota, when the misrepresentations were made. In other words, McCormack argues that the fraud claim is not alleged with sufficient particularity. To plead fraud with sufficient particularity, a complaint "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996). The purpose of the rule is, among other things, to "provide a defendant with fair notice of plaintiff's claim." *Harsco*, 91 F.3d at 347 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995)).

Notwithstanding the Second Circuit's use of the word "must" in *Harsco*, it is well established that "there is no bright line rule for deciding whether a complaint has satisfied Rule 9(b)." *I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92 Civ. 1843(MBM), 1993 WL 88209, at *2 (S.D.N.Y. Mar. 25, 1993). Indeed, in analyzing the sufficiency of a pleading under Rule 9(b), a district court must balance the rule with both Fed.R.Civ.P. 8(a), which requires only a "short and plain statement" of the claims for relief, and Fed.R.Civ.P. 8(f), which provides that "all pleadings shall be so construed as to do substantial justice." See *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); see also *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989) (stating that, in deciding a Rule 9(b) motion, "a court must read the complaint generously, and draw all inferences in favor of the pleader"); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984) ("[I]n applying Rule 9(b), focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."). Thus, a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint "gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Spear, Leeds & Kellogg v. Public Serv. Co.*, 700 F.Supp. 791, 793 (S.D.N.Y.1988); see 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03[1][b], at 9–18 (3d ed. 1999) ("[P]laintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts, provided they use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").

Applying these principals, Judge Michael Mukasey of this Court ruled in the case of *International Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611 (MBM), 1999 WL 619633, at *4 (S.D.N.Y. 1999), that a fraud counterclaim was sufficiently pled even though it did not identify precisely where the alleged misrepresentations and omissions occurred, and specified only that they occurred "[i]n an approximate 60–day period during April–June 1997." Judge Mukasey stated that Rule 9(b) "does not require that a complaint plead fraud with the detail of a desk calendar or a street map," (citing *Gelles v. TDA Indus., Inc.*, No. 90 Civ. 5133(MBM), 1991 WL 39673, at *6 (S.D.N.Y. Mar. 18, 1991), "[n]or does it require . . . the pleading of detailed evidentiary matter." (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979)). He went on to state that "Rule 9(b) requires only that a complaint provide 'adequate information' to allow the defendants "to frame a response." (citing *Ross, supra*, at 557–58).

Like the *International Motor Sports* case, Third-Party Plaintiffs have alleged "adequate information" to allow McCormack "to frame a response." Notably, McCormack does not deny the existence of the conference call between Jamil, Joe Shayota and himself, nor does he deny the substance of the misrepresentations – that he directed and authorized the label changing process.

If, notwithstanding the foregoing, the Court finds that Third-Party Plaintiffs have not alleged sufficient factual detail regarding the exact nature of the representations, or the when and where of said representations, Third-Party Plaintiffs request leave to amend their pleading. Although Walid Jamil does not recall the exact

date of the conference call, he does recall that it occurred approximately 3-4 weeks before the first night football game at the University of Michigan (the game occurred on September 10, 2011, vs. Notre Dame), meaning that the conference call actually took place in early to mid-August 2011 (not in the May to July 2011 time frame, as initially alleged). Walid also recalls that he and Joe Shayota were at Baja's office in California when the conference call with McCormack took place. Walid believes McCormack was on his cell phone during the call, but he does not know for certain, nor does he know where McCormack was located at the time. Federal Rule of Civil Procedure 15(a) authorizes the Court to freely grant leave to amend when there is no "undue delay, bad faith, or dilatory motive on the part of the movant." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Indeed, leave would be appropriate in this case. By comparison, Living Essentials have amended their complaint seven times.

McCormack's remaining arguments on the fraud count, which relate to intention to cause reliance and actual reasonable reliance, are not Rule 12(b)(6) arguments; they are Rule 56 summary judgment arguments, which require discovery, and this Court already ruled that Third-Party Plaintiffs are entitled to take discovery before a Rule 56 motion would be considered. Nevertheless, Third-Party Plaintiffs have alleged sufficient facts on these elements, including that they "reasonably believed that Living Essentials approved the re-labeling and re-packaging of the Mexican 5 Hour for distribution and sale in the United States," they "relied on McCormack's false representations by engaging in the business transactions referenced above," and the misrepresentations resulted in Third-Party Plaintiffs' "negotiation and formation of contracts between Midwest, Baja, Roman, One Stop Label and various other persons and entities." (First Amended Counterclaim, ¶ 32; First Amended Third-Party Complaint, ¶¶15, 18). Third-Party Plaintiffs also alleged that "McCormack intended that Third-Party Plaintiffs rely on the representations." (*Id.*, ¶14). See, *e.g.*, *PI, Inc. v. Ogle*, 932 F.Supp. 80, 84 (S.D.N.Y.1996) (Rule 9(b) permits a plaintiff to allege fraudulent intent generally).

Next, McCormack argues that Third-Party Plaintiffs' claim for silent fraud fails because he was not a fiduciary. However, the law is clear that "even without a fiduciary relationship, a party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff. Such half-truths or nondisclosures are considered to be concealment of facts and, therefore, misrepresentations." *Great American Ins Co v Dunn Corp*, 580 F Supp 1287, 1289 (WD Mich 1984) (quoting *Strand v Librascope, Inc*, 197 F Supp 743, 753 (ED Mich 1961)). Clearly, McCormack's statements on the conference call gave Walid the impression that his actions were authorized by Living Essentials. If he was not so authorized, McCormack had a duty to fully disclose Living Essentials' directives.

Lastly, Third-Party Plaintiffs have alleged valid claims for indemnity and contribution. Indemnity and contribution have their origin in equity and rests upon the principle of a right to restitution. *Dale v Whiteman*, 388 Mich 698, 202 NW2d 797 (1972); *Pontious v EW Bliss Co*, 102 Mich App 718, 302 NW2d 293 (1981); *Caldwell v Fox*, 394 Mich 401, 231 NW2d 46 (1975). Ultimately, the only reason that Walid, Justin and Midwest did any 5 Hour business at all was because of the representations and directives of Joe Shayota of Baja, a then-authorized 5 Hour distributor, and McCormack, a high ranking Living Essentials' employee. If the Midwest Parties are held liable on Plaintiffs' claims, they should be permitted to shift the blame to McCormack.

Based on the foregoing, the Court should not consider any Rule 12(b)(6) motion by McCormack.

Very truly yours,

PAESANO AKKASHIAN, P.C.

Brian M. Akkashian

cc:     Geoffrey Potter