**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

INNOVATION VENTURES, LLC and
LIVING ESSENTIALS, LLC,

            Plaintiffs,

    v.

ULTIMATE ONE DISTRIBUTING CORP,
ET AL.,

          Defendants.

Case No. 1:12-cv-05354 (KAM-RLM)

**JOSEPH SHAYOTA, ADRIANA
SHAYOTA AND TRADEWAY INT'L INC.
DBA BAJA EXPORTING'S REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL
JURISDICTION AND IMPROPER
VENUE**

Gregory A. Vega
David M. Greeley
David L. Lichtenstein
Brian M. Ragen
Seltzer Caplan McMahon Vitek
750 B Street, Suite 2100
San Diego, California 92101
greeley@scmv.com
T: (619) 685-3003 / F: (619) 685-3100

*Attorneys for defendants and cross-defendants
Joseph Shayota, Adriana Shayota and Tradeway
Int'l, Inc. dba Baja Exporting*

TABLE OF CONTENTS

Page

I.      SUMMARY OF WHY THE MOTION SHOULD BE GRANTED ...................................1

II.     PLAINTIFFS   HAVE   FAILED   TO   MEET   THEIR   BURDEN   OF
        ESTABLISHING   PERSONAL   JURISDICTION   UNDER   NEW   YORK'S
        LONG-ARM STATUTE ...........................................................................................2

        A.      Plaintiffs Have Failed to Establish that the Baja Defendants Contracted To
                Supply Goods in New York. ......................................................................... 2

                1.      Only the Baja Defendants' Contacts with New York That Arise
                        Out of the Transactions at Issue in the Litigation Are Relevant.................. 2

                2.      Baja Did Not Contract to Sell 5-Hour Energy to Quality King. ................. 2

                3.      Plaintiffs Fail to Establish that Baja Contracted with FDI With the
                        Intention to Supply Goods to New York. .................................................... 3

                4.      Under the *Ulster* Factors, the Baja Defendants Do Not Fall Within
                        the "Contracts Anywhere" Prong of Section 302(a)(1). ............................. 4

                5.      *Chloe* and Plaintiffs' Other Cases Are Distinguishable............................. 5

                6.      Plaintiffs Cannot Establish Jurisdiction Under Section 302(a)(1)
                        through the Acts of an Agent. ..................................................................... 6

                7.      No Jurisdiction Exists for the Unjust Enrichment Claim............................ 6

        B.      No Jurisdiction Exists under Section 302(a)(3) Because Plaintiffs Fail to
                Establish that the Baja Defendants Caused Injury Within the State...................... 6

III.    VENUE IS IMPROPER .........................................................................................8

        A.      Plaintiffs' New Venue Argument Fails......................................................... 8

        B.      Venue is Improper under Section 1391(b)(2), Because a Substantial Part
                of the Events Giving Rise to the Claim Did Not Occur in this District................. 9

        C.      The Baja Defendants Have Not Waived Venue under 28 U.S.C. § 1404.............. 9

IV.     CONCLUSION.....................................................................................................10

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

Federal Cases

*A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*
828 F.Supp.2d 557 (E.D.N.Y. 2011) ...................................................................... 7

*Alan Lupton Assoc. Inc. v. Northern Plastics, Inc.*
482 N.Y.S.2d 647 (4th Dep't 1984) ......................................................................... 5

*Anderson Development Corp. v. Isoreg Corp.*
546 N.Y.S.2d 720 (3d Dep't. 1989) ......................................................................... 5

*Arma v. Buyseasons, Inc.*
591 F.Supp.2d 637 (S.D.N.Y. 2008) ...................................................................... 9

*Barton Group, Inc. v. NCR Corp.*
758 F.Supp.2d 205 (S.D.N.Y. 2010) ...................................................................... 3

*Cavalier Label Co. v. Polytam, Ltd.*
687 F. Supp. 872 (S.D.N.Y. 1988) ......................................................................... 6

*Chloe v. Queen Bee of Beverly Hills LLC*
616 F.3d 158 (2nd Cir. 2010) .................................................................................. 5

*En Vogue v. UK Optical*
843 F. Supp. 838 (E.D.N.Y. 1994) ......................................................................... 6

*Energy Brands Inc. v. Spiritual Brands, Inc.*
571 F.Supp. 2d 458 (S.D.N.Y. 2008) ...................................................................... 7

*GB Mktg. USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*
782 F.Supp. 763 (W.D.N.Y. 1991) ......................................................................... 6

*Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebbs-GmbH*
58 F. Supp. 47 (W.D.N.Y. 1999) ............................................................................ 6

*Gucci America, Inc. v. Frontline Processing Corp.*
721 F.Supp.2d 228 (S.D.N.Y. 2010) ...................................................................... 7

*Hubbell, Inc. v. Pass & Seymour*
883 F. Supp. 955 (S.D.N.Y. 1995) ......................................................................... 5

*Laumann Mfg. Corp. v. Castings USA*
913 F. Supp. 712 (E.D.N.Y. 1996) ......................................................................... 6

*Lennco Racing Co., Inc. v. Arctco, Inc.*
953 F.Supp. 69 (W.D.N.Y. 1997) ........................................................................... 9

*Mirman v. Feiner*
900 F.Supp.2d 305 (E.D.N.Y. 2012) ...................................................................... 7

*Sea Tow Services Int'l, Inc. v. Pontin*
    472 F.Supp.2d 349 (E.D.N.Y. 2007) ........................................................................... 8

*Solow Building Co., LLC v. ATC Associates, Inc.*
    175 F.Supp.2d 465 (E.D.N.Y. 2001) ........................................................................... 9

*Troma Entertainment, Inc. v. Centennial Pictures, Inc.*
    2013 WL 4766854 (2nd Cir., Sept. 6, 2013) ............................................................. 8

*Ulster Scientific, Inc. v. Guest Elchrom Scientific AG*
    181 F.Supp.2d 95 (N.D.N.Y. 2001) ............................................................. 2, 4, 5, 6

*V Cars, LLC v. Israel Corp.*
    902 F.Supp.2d 349 (S.D.N.Y. 2012) ........................................................................ 10

**Statutues**

28 U.S.C. § 1391(b)(2) ...................................................................................... 1, 2, 9

28 U.S.C. § 1400(a) ................................................................................................. 8

28 U.S.C. § 1404 ..................................................................................................... 9

28 U.S.C. § 1406 ..................................................................................................... 9

28 U.S.C.A. § 1400 .................................................................................................. 8

N.Y.C.P.L.R. § 302(a)(1) ............................................................................. 1, 2, 4, 5, 6

N.Y.C.P.L.R. § 302(a)(2) .......................................................................................... 5

N.Y.C.P.L.R. § 302(a)(3) ................................................................................... 1, 6, 7

## I.     SUMMARY OF WHY THE MOTION SHOULD BE GRANTED

On November 15, 2012, Plaintiffs' agents descended upon the Baja Defendants' offices in San Diego and personally served the Baja Defendants with a complaint naming them as defendants in an action pending some 3,000 miles away in New York.  Plaintiffs chose to name the Baja Defendants in this New York action even though the Plaintiffs were pursuing identical claims in an action pending in the Northern District of California against an alleged co-conspirator (Dan-Dee Company) who also resides in San Diego.  By agreement of the parties, this issue is being addressed now, as Plaintiffs requested, and were permitted, to conduct jurisdictional discovery. This Court should dismiss the action because Plaintiffs have failed to meet their burden of establishing personal jurisdiction over the Baja Defendants.  Plaintiffs argue that the Court may assert specific jurisdiction over the Baja Defendants under two provisions of New York's long-arm statute—the "contracts anywhere" prong of N.Y.C.P.L.R. § 302(a)(1) and the portion of N.Y.C.P.L.R. § 302(a)(3) providing for jurisdiction where a tort is committed outside of New York but causes injury within New York.  Both arguments fail.  The Baja Defendants did not contract to supply goods in New York; Baja Exporting ("Baja") contracted with Florida-based Food Distributors International ("FDI") for the sale of alleged counterfeit 5-Hour Energy; FDI then sold the product to Quality King Distributors, a New York company.  In an effort to argue that Baja contracted with Quality King, Plaintiffs characterize FDI as a "broker," however, as a matter of law, FDI is not a broker.  As to Section 302(a)(3), under the Second Circuit's "situs of the injury" test, the Baja Defendants caused injury in California, where the alleged counterfeit product was created and where Baja sold the product to FDI.  Plaintiffs in essence ask the Court to ignore the "situs of the injury" test.

As to venue, a substantial part of the events that gave rise to the claims did not occur in New York and, therefore, venue is improper under 28 U.S.C. § 1391(b)(2).  Venue for the

1

copyright claim will exist if the Court asserts personal jurisdiction over the Baja Defendants. But pendent venue is not proper for the remaining federal claims, because Plaintiffs' primary claims are the trademark claims and 28 U.S.C. § 1391(b)(2) governs the trademark claims. Accordingly, the Court should grant the Baja Defendants' motion for lack of personal jurisdiction. Alternatively, the Court should find that venue is improper in this district.

II.   **PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE**

A.   **Plaintiffs Have Failed to Establish that the Baja Defendants Contracted To Supply Goods in New York.**

C.P.L.R. § 302(a)(1) provides in relevant part that a court may exercise personal jurisdiction over a defendant who "contracts anywhere to supply goods or services in the state."

1.   **Only the Baja Defendants' Contacts with New York That Arise Out of the Transactions at Issue in the Litigation Are Relevant.**

Only those contacts that arise from the transactions at issue in this litigation have any bearing on whether New York may assert jurisdiction over a foreign defendant under Section 302(a)(1). *Ulster Scientific, Inc. v. Guest Elchrom Scientific AG*, 181 F.Supp.2d 95, 100 (N.D.N.Y. 2001). Even if true, the following facts Plaintiffs assert in their opposition are irrelevant because such facts in no way involved the sale of 5-Hour energy products:

- In 2009, Baja executed a vendor agreement with Quality King and in 2009 and 2010, Baja provided Quality King with certificate of insurances.

- In 2007, Adriana Shayota was looking for a warehouse in New York; in 2009, Adriana Shayota told a Purity employee that two Purity trucks were leaving New York; in 2009, Andres Camberos of Baja stated that Baja was picking up products in New York; and a Purity Wholesale invoice for a little over $17,000 from 2012 shows that Purity picked up some product in New York. (Oppo., p. 8, Ex. 30.)

2.   **Baja Did Not Contract to Sell 5-Hour Energy to Quality King.**

Plaintiffs argue that Baja, using FDI as a broker, contracted with Quality King to sell it hundreds of thousands of bottles of product. (Oppo., p. 5-6.) A broker is someone who earns a

commission by bringing the parties to a transaction together such that he or she is the procuring cause of the deal. *Barton Group, Inc. v. NCR Corp.* 758 F.Supp.2d 205, 209 (S.D.N.Y. 2010). Plaintiffs have presented no evidence (because none exists) that FDI earned a commission on a transaction between Baja and Quality King. FDI was an independent distributor who bought product from Baja and sold it to Quality King. FDI's role as a broker is a fiction that Plaintiffs have created to make Baja's tenuous connections with New York appear to be more than they are. There was no contract between Baja and Quality King.

### 3.    Plaintiffs Fail to Establish that Baja Contracted with FDI With the Intention to Supply Goods to New York.

In their opposition, Plaintiffs submitted invoices showing that Baja made three sales to FDI, which occurred on September 18, October 3, and October 22, 2012. (Potter Decl., Exs. 9-11.)[1] Nowhere on any of this documentation is there any indication that the Baja Defendants are contracting to supply goods **to New York**. (See, *e.g.*, Potter Decl., Exs. 9-11 and 18-20.)

Below is a list of the remaining evidence Plaintiffs offer to argue that jurisdiction exists under the "contract anywhere" prong and a brief explanation as to why such evidence fails:

- Quality King's web site represents that all items ship from its Long Island distribution center. (Oppo., p. 5.) Plaintiffs offer no evidence (a) that Baja was aware of this purported fact; (b) that Baja looked at the site; (c) that the statement is even accurate; or (d) when the web site first included the statement.

- Quality King made an effort to enter into a direct contractual relationship with Baja. (Oppo., p. 6.) However, whether "an effort" was made is irrelevant since no such relationship ever materialized.

- An e-mail from Scott Tilbrook of FDI to Kevin Attiq of Dan-Dee stated that Tilbrook was moving the product all the way to New York, as requested. (Oppo., p. 5-6.) There is no evidence that anyone from Baja was aware of this purported

---

[1] Dan-Dee also sold product to FDI (Potter Decl., Ex. 13), but such sales are irrelevant to whether jurisdiction over the Baja Defendants exists. FDI's principal testified that Joe Shayota had no involvement in the dealings between FDI and Dan-Dee. (Declaration of David M. Greeley in support of Baja Defendants' Reply Brief ["Greeley Reply Dec."], Ex. A, p. 145:10-14.) Plaintiffs properly sued Dan-Dee in California.

fact. Indeed, no one from Baja is copied on this e-mail. Therefore, this e-mail is irrelevant as to Baja.

- Scott Tilbrook's deposition testimony wherein he supposedly told Joe Shayota that the product was intended for Quality King. (Oppo., p. 6; Potter Decl., Ex. 12 [Tilbrook Depo.], pp. 58, 284, 285.) On page 58, Tilbrook states his unfounded belief that "everyone" knows what Quality King's trucks look like. On pages 284-85 (or anywhere else in his deposition), Tilbrook never testifies that Baja knows the product is destined for New York. Tilbrook testified he did not know if the product picked up at Baja's warehouse went to Quality King's warehouse or elsewhere. (Greeley Reply Decl. [Tilbrook Depo.], Ex. A, p. 99:20-25).

- Someone named Ivana would call Baja to coordinate pickups. (Oppo., p. 7.) However, Plaintiffs do not cite any evidence that Baja knew that Ivana was associated with Quality King or that the products were destined for New York; Baja employee Barragan testifies that she has no idea which part of the country shipper GSN services (Potter Decl., Ex. 3, p. 190:20-22). And Plaintiffs have not rebutted the fact that it is customary for a wholesaler not to reveal to whom he intends to sell the product, for obvious reasons.

- Plaintiffs state that Baja employees loaded the product onto Quality King trucks. (Oppo., p. 1, 7.) Plaintiffs cite to pp. 121, 134 and 225 of Tilbrook's deposition and pp. 82-84 of Joe Shayota's deposition for support. None of the testimony cited states that Baja employees loaded trucks with 5-Hour energy product or that such employees knew where the product was going or that the trucks were Quality King trucks. The testimony merely shows that FDI sold the 5-Hour energy product it purchased from Baja to Quality King, and Quality King directed the shipping company GSN to pick up the product from Baja's warehouse. The testimony is silent as to who loaded the trucks and where the product went.

### 4. Under the *Ulster* Factors, the Baja Defendants Do Not Fall Within the "Contracts Anywhere" Prong of Section 302(a)(1).

Plaintiffs acknowledge (Oppo., p. 11, fn 7.), but fail to distinguish, the Baja Defendants' reliance on *Ulster Scientific v. Guest Elchrom Scientific AG*, 181 F.Supp.2d 95, 101 (N.D.N.Y. 2001).[2]  *Ulster* correctly sets forth factors New York courts interpreting the "contracts anywhere" prong of Section 302(a)(1) consider in determining whether to assert jurisdiction.

---

[2] *Ulster* noted that in analyzing the "contracts anywhere" provision of Section 302(a)(1), courts consider: (1) whether the purchase documents provide for shipment to New York, (2) whether defendant collected New York sales tax in connection with the transaction, (3) whether defendant solicited the contract in New York or entered New York for purposes of performing the contract, and (4) any other factors showing the defendant voluntarily and purposely availed itself of the privilege of transacting business in New York. *Ulster supra,* 181 F.Supp.2d at 101.

Here, none of these factors is present. The purchase documents do not provide for shipment to New York. (Potter Decl., Exs. 9-11 and 18-20.) Baja did not collect sales tax in New York. And Baja did not solicit the contract in New York or enter New York for purposes of performing the contract. Plaintiffs argue these factors are not required; while not required, such factors certainly provide guidance. In the two cases *Ulster* cites and upon which Plaintiffs seek to distinguish *Ulster,* several of these factors are present.[3] One of the cases, *Alan Lupton Assoc.,* notes that "where a contract is performed is more important for purposes of jurisdiction than the place where the contract is executed." *Alan Lupton Assoc., supra,* 482 N.Y.S. 2d at 650. **Here, Baja performed under its contract with FDI in full in San Diego.**

### 5. *Chloe* and Plaintiffs' Other Cases Are Distinguishable.

Plaintiffs rely heavily on *Chloe v. Queen Bee of Beverly Hills LLC*, 616 F.3d 158 (2nd Cir. 2010) for the proposition that the single act of shipping a counterfeit product into New York is a sufficient basis for personal jurisdiction. (Oppo. Brief, p. 1.) However, Plaintiffs' analysis of *Chloe* is misguided. In *Chloe*, it was not the naked act of shipping one bag into New York that established defendant was transacting business in New York; it was that act "combined with the employer's extensive business activity involving New York," that led the Court in *Chloe* to conclude that the defendant was transacting business in New York. *Id*. at 165. Moreover, *Chloe* only analyzed jurisdiction under the "transacts business" prong of Section 302(a)(1).[4] *Id*. at 169.

---

[3] In *Anderson Development Corp. v. Isoreg Corp.*, 546 N.Y.S.2d 720 (3d Dep't 1989), a Massachusetts corporation executed a contract with a New York corporation to supply goods to New York and collected sales tax in connection with the transaction. In *Alan Lupton Assoc. Inc. v. Northern Plastics, Inc.*, 482 N.Y.S.2d 647, 651 (4th Dep't 1984), the defendant entered into a written contract with plaintiff, a New York company, to ship products to New York and shipped 6,000 items to plaintiff in New York. *Id*. at 649.

[4] Plaintiffs also cite to *Hubbell, Inc. v. Pass & Seymour*, 883 F. Supp. 955, 961 (S.D.N.Y. 1995), for the assertion that selling one counterfeit good into New York establishes jurisdiction. (Oppo., p. 10.) However, *Hubbell* states that offering one copy of an infringing work for sale in New York may be a basis for jurisdiction under <u>Section 302(a)(2),</u> which pertains to committing a tort within the state. Plaintiffs do not argue that Section 302(a)(2) applies here.

In the other cases Plaintiffs cite, one if not several of the *Ulster* factors are present.  In *Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebbs-GmbH*, 58 F. Supp. 2d 47, 51 (W.D.N.Y. 1999), defendant made several visits to New York related to the contract in dispute. In *En Vogue v. UK Optical*, 843 F. Supp. 838, 842-843 (E.D.N.Y. 1994), an employee of defendant came to New York to meet with the distributor and execute the contract.  In *Laumann Mfg. Corp. v. Castings USA*, 913 F. Supp. 712, 714, 717 (E.D.N.Y. 1996), defendant contracted with a New York company to deliver goods to New York and the parties' contract was governed by New York law.  In *Cavalier Label Co. v. Polytam, Ltd.*, 687 F. Supp. 872, 875 (S.D.N.Y. 1988), a representative of the Israeli company travelled to New York twice in connection with the parties' contract.  None of these facts is present here.

### 6.      Plaintiffs Cannot Establish Jurisdiction Under Section 302(a)(1) through the Acts of an Agent.

To establish that FDI was Baja's agent, Plaintiffs must show that FDI acted in New York for the benefit of, with the knowledge and consent of, and under some control by, Baja.  *Cavalier Label Co., supra,* 687 F. Supp. at 875.  Plaintiffs make no such showing.  And Scott Tilbrook of FDI testified that he does not represent Baja.  (Greeley Reply Dec., Ex. A, p. 136:14-25.)

### 7.      No Jurisdiction Exists for the Unjust Enrichment Claim.

Pursuant to a case Plaintiffs cite, *GB Mktg. USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 767-68 (W.D.N.Y. 1991), a cause of action for unjust enrichment is not contractual in nature, and therefore jurisdiction may not arise under the "contracts anywhere" prong of Section 302(a)(1) for such a claim.  *Id.* at 769.

### B.      No Jurisdiction Exists under Section 302(a)(3) Because Plaintiffs Fail to Establish that the Baja Defendants Caused Injury Within the State.

Under Section 302(a)(3), Plaintiffs must establish that the non-domiciliary, among other things, caused injury within New York.  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571

F.Supp. 2d 458, 468 (S.D.N.Y. 2008).   In determining the place of injury under Section 302(a)(3), the Second Circuit applies the "situs of the injury" test.  (Moving Brief, p. 18.)  "In determining the situs of the injury, **it is therefore important to identify the original events that purportedly caused [plaintiff] harm, and then determine where those events took place.**"  *Mirman v. Feiner*, 900 F.Supp.2d 305, 318 (E.D.N.Y. 2012) (internal quotations and citations omitted; emphasis added). Courts in trademark infringement cases find the "situs of the injury" (i.e., the original event that caused the injury) to be where the "passing off" occurs, that is, where the defendant sells the counterfeit product based on the belief that the product is the plaintiff's.  *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F.Supp.2d 557, 572 (E.D.N.Y. 2011).  Here, the original events the Baja Defendants are alleged to have performed that caused harm to Plaintiffs all occurred in San Diego—where Plaintiffs allege the Baja Defendants conspired with Walid Jamil and the Midwest Defendants, the counterfeit product was assembled, Baja took possession of the counterfeit product, Baja sold it to FDI, and Quality King's shipper, GSN, picked up the product.

Plaintiffs cherry pick language from various cases in an effort to substitute the "situs of the injury" test for a test that only asks whether plaintiff lost business in New York.  (Oppo., pp. 14-15.)   However, this oversimplifies the analysis.  For example, while *Gucci America, Inc. v. Frontline Processing Corp.*, 721 F.Supp.2d 228, (S.D.N.Y. 2010) relies upon lost sales to conclude injury occurred in New York, it also cited to the fact that Gucci was a New York corporation with its principal place of business in New York City.[5]  *Id.* at 241-242.

A recent Second Circuit case provides instructive language on determining where the injury occurred under Section 302(a)(3).   *Troma Entertainment, Inc. v. Centennial Pictures,*

---

[5] *A.W.L.I.* also notes that injury in a trademark infringement case will typically be felt where the trademark owner resides and conducts business because this is where the first effects of the trademark infringement or dilution are typically felt. *A.W.L.I., supra*, 828 F.Supp.2d at 572.

*Inc.,* 2013 WL 4766854 (2nd Cir., Sept. 6, 2013). In *Troma,* plaintiff, a New-York-based movie producer and distributor, authorized defendant to represent it in negotiations for the licensing of distribution rights of several movies to a German distributor. (*Id.* at * 1.) The California defendant, while in Germany, represented that he (as opposed to plaintiff) had the distribution rights, and entered into licensing deals in his own name. The District Court in the Eastern District of New York granted defendants' motion to dismiss and plaintiff appealed. *Troma* held that whether the place of the injury is "California, where [defendants] Robbins and Lauter allegedly hatched their scheme—or Germany—where they put it into effect—we need not say. It is not New York." (*Id* at * 5.) Thus, under *Troma,* the question is: where was the counterfeiting scheme hatched and put into effect? As to the Baja Defendants, the answer is California. Therefore, California is the situs of the injury, not New York.

## III.   <u>VENUE IS IMPROPER</u>

### A.   Plaintiffs' New Venue Argument Fails.

Plaintiffs' lead argument is that venue is proper because Plaintiffs' copyright infringement claims are governed by 28 U.S.C. § 1400(a) and pendent venue exists for the remaining claims. (Oppo., p. 25.) Plaintiffs are correct that if personal jurisdiction exists as to the seventh claim for copyright infringement, then venue exists for that claim.[6] 28 U.S.C.A. § 1400. However, Plaintiffs must establish venue over each party for each cause of action. *Sea Tow Services Int'l, Inc. v. Pontin,* 472 F.Supp.2d 349, 363 (E.D.N.Y. 2007). In deciding whether to assert pendent venue over federal law claims, courts either determine which claim has the more specific venue provision and let that provision control, or determine which claim is

---

[6] As to the copyright claim, the situs of the injury was either Michigan, where Plaintiffs reside and therefore where Plaintiffs maintain the unique bundle of rights associated with one's rights as a copyright holder, or in California, where the counterfeiting scheme was allegedly hatched and executed. *Troma, supra,* 2013 WL 4766584, * 3.

*primary* in the relief plaintiff is seeking and apply the venue statute for the primary claim. *Solow Building Co., LLC v. ATC Associates, Inc.*, 175 F.Supp.2d 465, 469-70 (E.D.N.Y. 2001); *Arma v. Buyseasons, Inc.*, 591 F.Supp.2d 637, 649 (S.D.N.Y. 2008). This district and the Southern District of New York appear to follow the "primary claim" method. *Ibid.* There can be little doubt that the primary claim, as between the federal trademark and copyright claims, is the trademark claim. (See 7th Amended Complaint, [docket # 291], ¶ 1 ["This is an anti-counterfeiting action…."].) It is under the trademark infringement claims that Plaintiffs have sought seizure orders and injunctive relief and upon which Plaintiffs base their damages primarily. (Greeley Reply Decl., Ex. B.) Under the trademark claims, the controlling venue statute is 28 U.S.C. § 1391(b)(2). (See 7th Amended Complaint, ¶ 91.)

     **B.     Venue is Improper under Section 1391(b)(2), Because a Substantial Part of the Events Giving Rise to the Claim Did Not Occur in this District.**

Plaintiffs correctly state that in a trademark infringement case, the significant events occurred, and therefore venue is proper, where the unauthorized "passing off" took place. (Oppo., p. 26.) It is undisputed that the "passing off" as between the Baja Defendants and either FDI or Quality King occurred in San Diego, not New York. Accordingly, venue is improper in this judicial district under 28 U.S.C. § 1391(b)(2).

     **C.     The Baja Defendants Have Not Waived Venue under 28 U.S.C. § 1404.**

Plaintiffs argue that the Baja Defendants have somehow waived the right to transfer venue based on the convenience of the witnesses under 28 U.S.C. § 1404 by challenging venue under 28 U.S.C. § 1406. Plaintiffs are mistaken. A motion to transfer venue under 28 U.S.C. § 1404 may be made at any time, whether or not defendant has challenged venue under § 1406. *Lennco Racing Co., Inc. v. Arctco, Inc.*, 953 F.Supp. 69, 70, fn. 1 (W.D.N.Y. 1997).

## IV.    CONCLUSION

As one court cautioned, "defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact." *V Cars, LLC v. Israel Corp.*, 902 F.Supp.2d 349, 361 (S.D.N.Y. 2012) (internal quotations and ellipses omitted).     The Baja Defendants never visited New York in connection with the transactions at issue in this litigation, have no offices in New York, have no employees in New York, did not contract to sell product in New York, and did not pay any New York sales taxes on any such transactions.  The claims against the Baja Defendants are serious.  The Baja Defendants should not be forced to defend against such claims all the way across the country.  Plaintiffs, on the other hand, are already maintaining an identical action in California against San Diego residents whom Plaintiffs allege participated in the same counterfeiting conspiracy.  Moreover, the Baja Defendants have been named as third party defendants in that action, with the likely result being that the Baja Defendants' liability to Plaintiffs will necessarily be adjudicated in that action as part of the various indemnity claims. Under New York's long-arm statute, and as a matter of fairness, this Court should not exercise jurisdiction over the Baja Defendants.  Alternatively, the Court should conclude that venue is improper, if not as to all claims, then at least as to the federal trademark infringement claims.

Dated: September 12, 2013                     By:  _____/s/  David M. Greeley_____
                                                            David M. Greeley
                                                            Seltzer Caplan McMahon Vitek
                                                            750 B Street, Suite 2100
                                                            San Diego, California  92101
                                                            greeley@scmv.com
                                                            Attorneys for Tradeway Int'l, Inc. dba Baja
                                                            Exporting, Joseph Shayota, and Adriana
                                                            Shayota