# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

January 13, 2014

**By ECF**

Hon. Kiyo Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Geoffrey Potter
Partner
(212) 336-2050
gpotter@pbwt.com

Re:    **Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al. (13-cv-6397);**
       **Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al. (12-cv-5354)**

Dear Judge Matsumoto:

Pursuant to Rule IV.B.1 of this Court's Chambers Practices, I write on behalf of plaintiffs in the above-captioned matters (collectively, "Living Essentials") to request that the Court *sua sponte* consolidate these two cases for all purposes pursuant to Fed. R. Civ. P. 42, or in the alternative, that the Court schedule a pre-motion conference in connection with Living Essentials' intended motion for such relief.

**Factual Background**

On October 25, 2012, Living Essentials filed the action captioned *Innovation Ventures et al. v. Ultimate One Distributing Corp. et al.* (12-cv-5354), in this district (the "*Ultimate* Action"). In its initial complaint, Living Essentials sued 24 different defendants who had sold counterfeit 5-hour ENERGY®, including many individuals and businesses based in New York, and several large, nationwide companies with sufficient presence in New York to be sued there.

The next day, Living Essentials filed the action captured *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al.* (C-12-5523), in the Northern District of California (the "*Pittsburg* Action"). In its initial complaint, Living Essentials sued a smaller number of individuals and businesses who had sold counterfeit 5-hour ENERGY®—16 in total—all of whom were small-to-medium-sized businesses based in California. One of those businesses— Dan-Dee Company, Inc. ("Dan-Dee")—turned out to be the principal nationwide distributor of the counterfeits, but at the time, Living Essentials was unaware of that fact.

After the two suits were filed, through *ex parte* seizure orders and expedited discovery, Living Essentials traced the counterfeits up the chain of distribution to their source. Living Essentials then sued the alleged kingpins of the conspiracy in in the larger *Ultimate* Action. The *Ultimate* Action grew to include 69 defendants throughout all parts of the country, including those who manufactured the counterfeits and vendors at all levels of the distribution pyramid.

A number of defendants in the *Ultimate* Action impleaded Dan-Dee and its principals

1

Hon. Kiyo A. Matsumoto
January 13, 2014

(the "Dan-Dee Defendants")—who were direct defendants in the *Pittsburg* Action—as third-party defendants in the *Ultimate* Action.  In turn, the Dan-Dee Defendants impleaded a number of defendants in the *Ultimate* Action (*i.e.*, the so-called Midwest Defendants, Leslie Roman Defendants, MCR Defendants, Juan Romero Defendants, and Baja Defendants) as third-party defendants in the *Pittsburg* Action.

Meanwhile, in April 2013, Capital Sales Company, a defendant in the *Ultimate* Action and a customer of Dan-Dee, filed a separate suit against the Dan-Dee Defendants in Michigan. The Michigan court transferred venue to this Court, finding that "[i]t [was] in the interests of justice" for "one tribunal" to "assess the ultimate[] liability of *all* the parties involved" in the conspiracy to counterfeit and sell 5-hour ENERGY®.  (Order Granting Mot. to Change Venue at 4, No. 13-cv-11600 (E.D. Mich.), Dkt. 17.)  Subsequently, this Court consolidated Capital Sales' lawsuit with the *Ultimate* Action.  (Order Granting Mot. to Consolidate Cases, No. 13-cv-3542 (E.D.N.Y.), Dkt. 27-28.)

By November 2013, Living Essentials had settled with all direct defendants in the *Pittsburg* Action, other than the Dan-Dee Defendants.  The only remaining claims in the *Pittsburg* Action were, and remain: (1) Living Essentials' direct claims against the Dan-Dee Defendants, who are also third-party defendants in the *Ultimate* Action; (2) the Dan-Dee Defendants' third-party claims against the Midwest Defendants, Leslie Roman Defendants, MCR Defendants, Juan Romero Defendants, and Baja Defendants, all of whom are direct defendants in the *Ultimate* Action; and (3) certain cross-claims among those third-party defendants.  In other words, the parties and issues in the *Pittsburg* Action now form a proper subset of those in the *Ultimate* Action.

On November 12, 2013, Living Essentials moved to transfer venue in the *Pittsburg* Action from the Northern District of California to this District.  (*See* Mot. for Change of Venue, *Pittsburg* Action Dkt. 508.)  Living Essentials argued that transfer would allow subsequent consolidation of the two actions, thereby "prevent[ing] the waste of time, energy and money." (*Id.* at 7 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).)  No party opposed the motion.  All actively litigating parties signed a stipulation consenting to the relief requested, and indicating that the parties desired "consolidation" of the two actions.  (Stipulation, *Pittsburg* Action Dkt. 509 ¶ 1.)[1]  On November 15, 2013, the California court transferred the *Pittsburg* Action to this district.

## Legal Basis For Relief

Fed. R. Civ. P. 42(a) provides that "[i]f actions before the court involve a common question of law or fact," the court may "join for hearing or trial any or all matters at issue in the actions" or "consolidate the actions" outright.  A court "may consolidate actions under Rule 42(a) *sua sponte*."  *Roberts v. DeMarco*, 2013 U.S. Dist. LEXIS 156311, at *4 (E.D.N.Y. Oct. 18, 2013) (citing *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999))).

---

[1] The Juan Romero Defendants, who were in default, and the Leslie Roman Defendants, who were in bankruptcy, neither joined in nor opposed Living Essentials' motion.

Hon. Kiyo A. Matsumoto
January 13, 2014

The standard for consolidation is "an expansive one," intended to "obviat[e] the need for multiple lawsuits and trials." 8-42 MOORE'S FEDERAL PRACTICE – CIVIL § 42.10[1][a]; *see also Roberts*, 2013 U.S. Dist. LEXIS 156311, at *4 ("Rule 42 should be prudently employed 'to expedite trial and eliminate unnecessary repetition and confusion.'" (quoting *Devlin*, 175 F.3d at 130)). "Common questions of law and fact do not have to predominate. All that is required is that the district court find they exist and that consolidation will be beneficial." 8-42 MOORE'S FEDERAL PRACTICE – CIVIL § 42.10[1][a]. As the Second Circuit has noted, "[c]onsolidation of tort actions sharing common questions of law and fact is commonplace." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

The two 5-hour ENERGY® actions are ripe for consolidation. As described above, all of the parties remaining in the *Pittsburg* Action are also parties in the larger *Ultimate* Action. And the legal and factual issues involved in the two actions are the same: who manufactured and sold counterfeit 5-hour ENERGY®; whose actions were willful and whose were not; and how much damage each defendant's actions caused to Living Essentials and to its co-defendants. It would be a colossal waste of time, energy and money—of the parties, the witnesses, the Court, and the taxpaying public—to try these same issues twice. In addition, absent consolidation, there is a serious risk of inconsistent and conflicting outcomes, both as to overall liability, and as to subsidiary issues such as willfulness and apportionment of fault and damages.

Under these circumstances, there is no realistic chance that consolidation would prejudice any party. Those parties that are involved in both suits would benefit from the avoidance of duplicative proceedings—and all parties actively litigating in both suits have already recognized as much. (*See* Stipulation, *Pittsburg* Action Dkt. 509 ¶ 1.) At the same time, the parties that are only involved in the *Ultimate* Action would not have to grapple with any new parties or issues as a result of consolidation. Even if some hypothetical prejudice existed, it is clearly "overborne by the risk of inconsistent adjudications . . . [and] the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits." *Johnson*, 899 F.2d at 1285.

Consolidation is therefore plainly appropriate, and Living Essentials cannot imagine any legitimate grounds on which any party would argue otherwise. Living Essentials requests that the Court consolidate the *Ultimate* and *Pittsburg* Actions *sua sponte*, or in the alternative, that the Court schedule a pre-motion conference on the subject of consolidation.

Respectfully submitted,

Geoffrey Potter

cc:    All Counsel (via ECF)

3