# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

January 17, 2014

Geoffrey Potter
Partner
(212) 336-2050
gpotter@pbwt.com

**By ECF**

Hon. Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: **Innovation Ventures, LLC v. Ultimate One Distributing Corp., et al., No. 12-CV-5354**

Dear Judge Mann:

I write on behalf of Plaintiffs in this matter (collectively, "Living Essentials") concerning a discovery dispute with Defendant Quality King Distributors, Inc. ("QKD") and several defendants that have joined QKD in its efforts to reopen the deposition of Living Essentials pursuant to Fed. R. Civ. P. 30(b)(6). Living Essentials seeks a protective order pursuant to Fed. R. Civ. P. 26(c) with respect to this deposition.

**Overview Of The Two 5-hour ENERGY® Actions**

In this action, Living Essentials alleges that, in 2011 and 2012, dozens of defendants manufactured and/or sold counterfeits of Living Essentials' liquid energy shot, 5-hour ENERGY®, in violation of federal and state law. One of those defendants was QKD, a serial dealer in counterfeit goods. QKD indisputably trafficked in counterfeit 5-hour ENERGY®; the only questions remaining are QKD's *mens rea* and Living Essentials' damages.

The day after it filed this lawsuit, Living Essentials filed a similar lawsuit in the Northern District of California against another set of defendants. It quickly became clear that the counterfeits in both actions originated from the same source. Before long, many defendants in the New York action impleaded parties in the California action, and *vice versa*. In November 2013, the California action was transferred to this district, and Living Essentials has since requested that the two actions be consolidated. (*See* Dkt. 654.)

**Background To This Discovery Dispute**

In May 2013, pursuant to Fed. R. Civ. P. 30(b)(6), QKD served a Notice of Deposition on Living Essentials containing 24 separate topics of inquiry. (**Ex. A.**) In September 2013, QKD served an Amended Notice of Deposition increasing the number of topics to 26, and demanding that Living Essentials produce its witness on November 1, 2013. (**Ex. B.**)

On October 15, 2013, Living Essentials responded to QKD, copying all counsel in both actions. (**Ex. C.**) Living Essentials noted that it would be producing a Rule 30(b)(6) witness on October 31, 2013 in response to a demand by another defendant, who was a party to both actions. (*Id.* at 1.) Living Essentials noted the "significant overlap in [the likely] questioning between all of the defendants," and advised QKD and its co-defendants to "coordinate their questioning to prevent repetition…and…a waste of the witness's time." (*Id.* at 1, 4.) Living Essentials also

[Handwritten annotation across top of letter:]
Any defendant seeking to reopen the Rule 30(b)(6) deposition of Living Essentials shall file its letter-response to this motion by close of business on January 21, 2014. (Living Essentials shall deliver to Chambers by that same deadline a courtesy hard copy of its motion and attachments).

**SO ORDERED:**
/s/
Roanne L. Mann
U.S. Magistrate Judge
Dated: 1/17/14

objected to a number of topics in QKD's Amended Notice of Deposition as irrelevant and/or outside Living Essentials' corporate knowledge. Thereafter, in an email dated October 23, on which QKD's counsel was copied, Living Essentials again requested that the defendants in both actions "confer with [one another] and organize [their] questioning." (**Ex. D.**)

On October 31, 2013, Living Essentials produced its Chief Financial Officer, Matthew Dolmage, for a deposition pursuant to Rule 30(b)(6). That deposition was noticed in *both* the New York *and* the California actions. (**Ex. E** at 1-2.) (Living Essentials thus acknowledges that the deposition may be used by the defendants in either action.) The deposition was attended by counsel for parties in both actions, including QKD. (*Id.* at 7.) It lasted for over seven hours, and its transcript runs to 348 pages. Despite Living Essentials' requests, QKD apparently did not confer with its co-defendants in advance, and its counsel asked no questions. Nonetheless, many of the 26 topics in QKD's Amended Notice of Deposition were covered at length.

Following that deposition, Living Essentials, QKD, and several other defendants engaged in collective meet-and-confer discussions regarding QKD's Amended Notice of Deposition. In a letter dated November 13, 2013, Living Essentials noted the extensive testimony that had already been given, and "request[ed] that the Defendants provide an explanation as to what testimony they will seek from the company that is not [already] available." (**Ex. F.**) The defendants refused this request, and on December 17, QKD filed a motion to compel. (Dkt. 646.)

**The December 17, 2013 Hearing**

On December 17, 2013, the Court held a telephonic hearing on QKD's motion. The Court ruled that the defendants would be permitted to reopen the 30(b)(6) deposition of Living Essentials. However, the Court warned that the defendants must "coordinat[e] and consolidat[e]" their topics and questions to avoid examination that is "either duplicative [going forward] or duplicative of what's already taken place." (**Ex. G** at 13:20-14:8, 15:21-25.)

The Court advised QKD's counsel to pare down its sprawling 26-item deposition notice to specific "questions about [his] clients," and to avoid "general questions" that "[p]resumably... have already been asked." (*Id.* at 15:21-25.) QKD's counsel responded that "certainly no one is [interested] in having people ask the same questions *or types of questions* over and over again," and agreed to "confer and coordinate with [the other] defense counsel as to how to avoid that." (*Id.* at 14:13-18 (emphasis added).) The Court then ordered QKD to "send[] out an email to all of the defense counsel who are still in the case and come up with a plan and then propose it to [counsel for Living Essentials]." (*Id.* at 16:14-20.)

In closing, the Court observed that "[i]t certainly...would make sense for QKD to serve [contention interrogatories] forthwith before taking a deposition because maybe that will resolve some of the areas that they would otherwise make inquiry about." (*Id.* at 18:22-19:1.)

**Developments Since The December 17, 2013 Hearing**

Notwithstanding the Court's recommendation, QKD did not serve contention interrogatories on Living Essentials. Nor did QKD "come up with a plan and then propose it" to Living Essentials' counsel. Instead, on January 8, 2013, counsel for QKD sent an email to Living Essentials, stating, *in toto*:

> Defense counsel has conferred and our good-faith estimate is that we will need less than 3 full days for the Rule 30(b)(6) deposition of plaintiffs, although we will endeavor to complete the deposition sooner. QKD will take the lead in the deposition.

2

> We have adequate conference space to accommodate everyone at our offices. Please advise who the designee will be and when he will be available to sit for 3 days.

(**Ex. H.**) QKD did not provide a new list of topics to narrow its prior list of 26 topics. Worse still, QKD failed to specify *any* deposition topics on behalf of the other defense counsel on whose behalf QKD purported to act.

In subsequent meet-and-confer correspondence, Living Essentials insisted that QKD and its co-defendants "comply with Judge Mann's order…that there not be duplicative inquiries and that defense counsel coordinate their efforts." (**Ex. I.**) On January 13, 2014, QKD's counsel responded that "[t]here is simply no provision in the Judge's order that requires us to discuss or negotiate topics with you" and that QKD and its co-defendants had satisfied their obligations merely by "t[elling] you we need three days." (**Ex. J.**)

**Relief Requested**

QKD's conduct described above is inappropriate, under both the Federal Rules of Civil Procedure and the Court's explicit instructions.

For starters, a notice of deposition to a corporation must "describe with reasonable particularity the matters for examination," so that the corporation can properly select and prepare its deponent(s). Fed. R. Civ. P. 30(b)(6). The defendants' failure to provide a collective list of topics prevents Living Essentials from identifying and preparing an appropriate witness or witnesses. It also makes it impossible to determine whether the demand for another 3 days of testimony is justifiable, or—as all appearances suggest—an attempt to harass Living Essentials.

QKD, in particular, has refused to pare down its overly broad list of 26 topics, including many subjects already addressed at length at Mr. Dolmage's October 2013 deposition. To the extent QKD maintains that some subjects already covered have not been fully "exhausted" (**Ex. J**), QKD has failed to make any concrete showing as to what further information is necessary (and, for that matter, cannot be obtained via interrogatories). Thus, on this record, any further imposition on Living Essentials—let alone three full days of testimony—is unjustified. *See* Fed. R. Civ. P. 26(c) (court may issue orders to "protect a party…from…undue burden or expense").

It bears noting that, although Living Essentials sued many defendants, it was *the victim of a serious crime of national scope*—one which federal authorities are presently investigating. (Dkt. 558, 561.) Living Essentials did not "choose" to be the victim of a nationwide counterfeiting ring involving millions of fake bottles of its flagship product. Having indisputably sold these counterfeits, QKD and its co-defendants should not be permitted to subject the employees of Living Essentials—which, once again, is *an innocent crime victim*—to repetitious and burdensome examination without first making a concrete showing of need.

Living Essentials therefore moves this Court for a protective order, pursuant to Fed. R. Civ. P. 26(c), relieving it of any obligation to provide further deposition testimony unless and until QKD and its co-defendants fully comply with the Federal Rules and this Court's directions. Living Essentials also requests that, to the extent it is required to provide additional testimony, any such deposition(s) take place in the Detroit area, where Living Essentials is located. Because the defendants have made such a flimsy showing that further 30(b)(6) testimony is required *at all*, it is appropriate to put the onus of travel on the defendants. *See Standard Metals Corp. v. Tomlin*, 1982 U.S. Dist. LEXIS 12241, at *4 (S.D.N.Y. Apr. 14, 1982) ("[T]he location designated for the taking of a deposition is solely within the discretion of the court.").

3

Respectfully submitted,

*/s/ Geoffrey Potter*

Geoffrey Potter

Enclosures

cc: All counsel (via ECF)

4