

ATTORNEYS & COUNSELORS

Richard M. Apkarian Jr.
7457 Franklin Rd., Suite 200
Bloomfield Hills, Michigan  48301
P 248.792.6886
F 248.792.6885
rapkarian@paesanoakkashian.com
www.paesanoakkashian.com

January 21, 2014

Honorable Roanne L. Mann
United States District Court
Eastern District of New York
c/o Clerk of the Court
Courtroom: 13C-S
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    *Innovation Ventures, LLC et al. v Walid Jamil et al.,* **Docket No: 12 Civ. 05354**

Dear Judge Mann:

This firm is counsel for Defendants Midwest Wholesale Distributors, Inc., Walid Jamil a/k/a Wally Jamil, Raid Jamil a/k/a Brian Jamil, Justin Shayota, JT Wholesale, Inc. and Trimexico, Inc. (collectively, the "Midwest Defendants"). This letter is being sent in response to the January 17, 2014 letter from Geoffrey Potter, counsel for Plaintiffs, seeking a protective order preventing any further deposition of Plaintiffs' 30(b)(6) representatives, and the Court's directive that any Defendant wishing to reopen the deposition file a response.

The individuals that comprise the Midwest Defendants have all submitted to deposition, including two full days by Justin Shayota and three full days by Walid Jamil. It is only fair and appropriate that Plaintiffs are obligated to comply with their discovery obligations, including the submission of one or more corporate representatives to answer questions on various topics pursuant to Rule 30(b)(6). Plaintiffs claim that they are the "victim" in this case, but they filed this action and, ultimately, the defendants must be given the right to defend themselves, including the right to take depositions.

Several defendants have issued deposition notices to Plaintiffs with detailed topics for testimony. Although Plaintiffs did produce their CFO for 7 hours, Plaintiffs admit that he only addressed "his professional background, his job with Living Essentials, Living Essentials' various costs, the prices at which it sells 5-hour ENERGY®, any knowledge of 'diversion' related to 5-hour ENERGY® the company possesses, and the company's investigation in the Defendants' counterfeit operation." (**Exhibit A**, Letter dated November 13, 2013 from Mr. Potter). There are several important topics that still must be addressed, including the "purchase, sale, manufacture, and origin" of 5-hour energy, customer complaints, alleged "indicia of counterfeit or non-genuineness," and agreements between Plaintiffs and its manufacturers and distributors. (**Exhibit B**, Quality King's Amended Notice, nos. 1, 5, 8 and 20). It is unlikely that Plaintiffs' CFO even has knowledge on these topics, thus the alleged burden is lessoned if other corporate representatives are produced.

Ultimately, the Midwest Defendants desire to re-open the deposition of Plaintiffs' corporate representative(s) and ask questions on the above topics, or follow-up questions depending on the witnesses' testimony. The Midwest Defendants therefore request that Plaintiffs' motion for protective order be denied and, further, that Plaintiffs are ordered to produce its witnesses for deposition.

Very truly yours,

**PAESANO AKKASHIAN, PC**

Richard M. Apkarian Jr.

cc:   All counsel of record (via ECF)

# EXHIBIT A

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

November 13, 2013

Geoffrey Potter
Partner
(212) 336-2050
gpotter@pbwt.com

**By E-Mail Attachment**

Mr. Andre K. Cizmarik, Esq.
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, NY 10022

Re: **Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al. 12 Civ. 5354 (EDNY) (KAM) (RLM)**

Dear Andre:

On behalf of Plaintiffs Living Essentials, LLC, Innovation Ventures, LLC, and International IP Holdings, LLC (collectively, "Living Essentials"), I write in response to your request for an additional deposition of Living Essentials' 30(b)(6) designee.[1] For several reasons, your request is premature and Living Essentials is unwilling to grant your request at this time.

As an initial matter, Living Essentials has already complied with its obligation pursuant to Federal Rule of Civil Procedure 30(d)(1). Living Essentials' corporate designee was made available and participated in a deposition that lasted the required 1 day of 7 hours. During this time, counsel for the defendants were entitled to ask an assortment of questions on a range of subjects related to this case. Indeed, counsel did exactly that. For example, counsel for third-party defendants Dan-Dee Company, Inc., Fadi Attiq and Kevin Attiq questioned Living Essentials' designee extensively about his professional background, his job with Living Essentials, Living Essentials' various costs, the prices at which it sells 5-hour ENERGY®, any knowledge of "diversion" related to 5-hour ENERGY® the company possesses, and the company's investigation into the Defendants' counterfeit operation. In total, the transcript of Mr. Dolmage's deposition came to approximately 350 pages.

The crux of this litigation is the conduct of the many defendants who participated in the manufacturing and distribution of counterfeit 5-hour ENERGY® across the country, not Living Essentials' conduct. Therefore, before Living Essentials will agree to a second deposition of a 30(b)(6) designee—Mr. Dolmage or anyone else—we request that the Defendants provide an explanation as to what testimony they will seek from the company that is not otherwise

---

[1] In responding to your request, I am also responding to the other parties, including Universal Wholesale, Inc., Core-Mark International, Inc., Food Distributors International, Inc. and Scott Tilbrook, that have made similar requests.

6543910

Mr. Andre K. Cizmarik, Esq.
November 13, 2013
Page 2

available through written discovery, including interrogatories or requests for admission. To the extent that a Defendant needs additional interrogatories beyond those allowed by the Federal Rules of Civil Procedure in order to obtain specific information about your client, Living Essentials would be willing to agree to a modest increase in the number allowed so long as the defendants coordinate their requests.

Our request for additional information as to why a second deposition is necessary is particularly important in light of the Defendants' failure to coordinate discovery of Living Essentials amongst themselves. In March, the Court instructed the parties to coordinate discovery (especially depositions) between the Northern District of California action and the New York action, and to otherwise minimize duplicative discovery. (See Dkt. No. 452). Based on the discovery requests and deposition notices that Living Essentials has received to date, it is clear that the Defendants have not done so. Because of that, Living Essentials believes that a second deposition of a 30(b)(6) designee will only result in duplicative and irrelevant discovery. Unless and until you are able to come forward with new and relevant subjects that Mr. Dolmage has not already been asked about and which are not more appropriate for interrogatories or requests for admission, Living Essentials will not make a 30(b)(6) designee available for a second day of deposition.

We look forward to hearing from you and remain willing to confer on this issue.

Sincerely yours,

Geoffrey Potter

cc:   All counsel

6543910

# EXHIBIT B

Anthony J. Viola
Andre K. Cizmarik
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Defendant Quality King Distributors, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X
INNOVATION VENTURES, LLC, et al.,

              Plaintiffs,

-against-

ULTIMATE ONE DISTRIBUTING CORP., et al.,

              Defendants.
------------------------------------------------------X

Civil Action No.: 12 Civ. 5354 (KAM) (RLM)

**QUALITY KING DISTRIBUTORS, INC.'S AMENDED NOTICE OF DEPOSITION TO PLAINTIFFS PURSUANT TO RULE 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, defendant Quality King Distributors, Inc. ("QKD") will take the deposition upon oral examination of plaintiffs Innovation Ventures, LLC; Living Essentials, LLC; and International IP Holdings, LLC (collectively "Plaintiffs") before a duly qualified court reporter, beginning on November 1, 2013 at 9:30 A.M., at Bienenstock Reporting, 30800 Telegraph Road, Suite 2925, Bingham Farms, Michigan 48025, or such other location as may be mutually convenient. The deposition will continue from day to day until completed, will be recorded by stenographic means, and may be videotaped. You are invited to attend.

Plaintiffs shall designate in writing and produce the officer(s), directors(s), managing agents(s) and/or other persons who will testify on its behalf with respect to each of the topics set forth in **Schedule A** attached hereto.

Dated: New York, NY
September 26, 2013

_____
Anthony L. Viola
Andre K. Cizmarik
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Defendant Quality King Distributors, Inc.

## SCHEDULE A

### INSTRUCTIONS AND DEFINITIONS

1. The definitions and rules of construction set forth in Local Rule 26.3 of the Eastern District of New York are incorporated herein by reference.

2. "Complaint" refers to the Seventh Amended Complaint, filed on or about December 28, 2012.

3. "Plaintiffs," "You," or "Your" shall include Innovation Ventures, LLC; Living Essentials, LLC; and International IP Holdings, LLC and all of their subsidiaries, affiliates, attorneys, accountants, agents, officers, directors, employees, servants, and any person or entity acting on their behalf.

4. The term "5 Hour Energy®" means the Plaintiffs' 5 Hour Energy® products (i.e., its liquid, bottles, caps, labels, and packaging).

5. The term "Subject 5 Hour Energy®" means the allegedly counterfeit and/or non-genuine 5 Hour Energy® products that any of the defendants are alleged in the Complaint to have bought or sold.

6. The term the "QKD Customers" means those entities that QKD is alleged to have sold the Subject 5 Hour Energy® products, including, but not limited to: CVS Pharmacy, Inc. (incorrectly sued as CVS Caremark Corp); and Steerforth Trading, Inc. a/k/a Steer Forth Trading, Inc.

7. Unless otherwise indicated, all topics shall concern the time period of November 1, 2010 to the present.

### TOPICS FOR RULE 30(b)(6) DEPOSITION

1. The Subject 5 Hour Energy®, including, but not limited to, its purchase, sale, manufacture, and origin.

2. Investigations or surveillance of QKD regarding 5 Hour Energy®.

3. Sales by Plaintiffs of 5 Hour Energy® products to any of the QKD Customers.

4. The purchase and sale of 5 Hour Energy® or the Subject 5 Hour Energy® by QKD and QKD Customers.

5. Customer complaints regarding 5 Hour Energy® or the Subject 5 Hour Energy®.

6. The seizure of Subject 5 Hour Energy® and any documents, information, or paraphernalia related thereto.

7. The manufacture of 5 Hour Energy®, including, but not limited to liquid, bottling, labeling, and packaging.

8. Alleged indicia of counterfeit or non-genuineness with respect to the Subject 5 Hour Energy®.

9. Plaintiffs' total sales of 5 Hour Energy®, in both units and dollars, from January 1, 2010 to the present, on a quarterly and annual basis.

10. The range of prices charged by Plaintiffs for 5 Hour Energy®.

11. Rebates, discounts, and coupons offered by Plaintiffs in connection with the sale of 5 Hour Energy®.

12. 5 Hour Energy® given away for free by Plaintiffs, whether as promotional items or otherwise.

13. Plaintiffs' profits on the sale of 5 Hour Energy®.

14. Overhead and other costs incurred by Plaintiffs in connection with the manufacture and distribution of 5 Hour Energy®, including, but not limited to, advertising and marketing costs and warehousing and manufacturing costs.

15. Any profits Plaintiffs claim QKD generated by selling Subject 5 Hour Energy®.

16. When and how Plaintiffs became aware of the existence of the Subject 5 Hour Energy® in the marketplace.

17. Plaintiffs' notification of, or attempt to notify, the public, including, but not limited to, QKD and QKD Customers, regarding the alleged presence of Subject 5 Hour Energy® in the marketplace.

18. The physical characteristics of 5 Hour Energy®, generally, and particularly, as compared to the Subject 5 Hour Energy®, including, but not limited to, liquid, bottling, labeling, and packaging.

19. Tests and measurements performed on the Subject 5 Hour Energy®.

20. All agreements between Plaintiffs and anyone else regarding the manufacture, sale, or distribution of 5 Hour Energy®.

21. Purchases of 5 Hour Energy® or Subject 5 Hour Energy® from retail stores or outlets by Kroll Associates, Brian Kelcher, Abigail Marean, Andrew Bruml, or Plaintiffs from January 1, 2010 to the present.

22. Plaintiffs' procedure for disposing of 5 Hour Energy® that did not meet manufacturing formulation or specifications.

23. Plaintiffs' policies and procedures in connection with the sale or disposition of 5 Hour Energy® products in packaging that is no longer current.

24. Quality control measures taken by Plaintiffs with respect to the manufacture of 5 Hour Energy®.

25. Risks or dangers associated with the Subject 5 Hour Energy® and any communication thereof to the public, including, but not limited to, QKD or QKD Customers.

26. The basis for Plaintiffs' allegation that QKD willfully infringed in connection with its alleged sale of the Subject 5 Hour Energy®.

AM 24259768.1

4