```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
INNOVATION VENTURES, et al.,

                    Plaintiffs,

    -against-                            MEMORANDUM & ORDER

ULTIMATE ONE DISTRIBUTING                12-cv-5354(KAM)(RLM)
CORP., et al.,
                    Defendants.
------------------------------------X
INNOVATION VENTURES, et al.,

                    Plaintiffs,
                                         13-cv-6397 (KAM)(RLM)
    -against-

PITTSBURG WHOLESALE GROCERS INC., et al.,

                    Defendants.
------------------------------------X
```

**MATSUMOTO**, United States District Judge:

Pending before the court is a joint request that the court *sua sponte* consolidate the above-captioned actions, *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al.*, No. 13-cv-6397, and *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.*, No. 12-cv-5354.  On January 13, 2014, plaintiffs Innovation Ventures, LLC, Living Essentials, LLC, and International IP Holdings, LLC (collectively, "Living Essentials" or "plaintiffs"), filed their request that the court *sua sponte* consolidate these two matters for all purposes pursuant to Federal Rule of Civil Procedure 42.

1

(Docket 12-cv-5354, ECF No. 654, Ltr. Requesting Consolidation filed 1/13/14; Docket 13-cv-6397, ECF No. 543 (same).) On February 14, 2014, defendants Dan-Dee Company, Inc., Kevin Attiq, and Fadi Attiq (collectively, the "Dan-Dee defendants"), joined in plaintiffs' request that the court *sua sponte* consolidate the two cases. (Docket 12-cv-5354, ECF No. 673, Ltr. from Dan-Dee Defs. filed 2/14/14; Docket 13-cv-6397, ECF No. 548 (same).) On February 19, 2014, the court ordered all parties in both matters to file any opposition to the joint request for *sua sponte* consolidation by February 24, 2014. (*See* Order dated 2/19/14.) To date, no parties have objected to the joint request for consolidation.

For the following reasons, the court *sua sponte* consolidates the actions captioned *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.* (Docket 12-cv-5354) and *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers, Inc., et al.* (Docket 13-cv-6397), pursuant to Federal Rule of Civil Procedure 42.

## BACKGROUND

### I. Procedural History and Factual Background

On October 25, 2012, Living Essentials commenced this action, captioned *Innovation Ventures, et al. v. Ultimate One*

*Distributing Corp., et al.* ("*Ultimate* Action")[1], in this court. In its initial complaint, plaintiffs, the owner of 5-hour ENERGY, alleged that more than twenty defendants had sold counterfeit 5-hour ENERGY in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, the Copyright Act of 1976, 17 U.S.C. § 106, New York state law and common law. (*See* U.A. No. 1, Compl. filed 10/25/12.)

On October 26, 2012, plaintiffs filed the action captioned *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al.* ("*Pittsburg* Action")[2], in the Northern District of California. In its initial complaint in the *Pittsburg* Action, plaintiffs alleged substantially the same claims as in the *Ultimate* Action against sixteen defendants based in California. (*See* P.A. No. 1, Compl. filed 10/26/12.)

As plaintiffs traced the counterfeits up the chain of distribution, the *Ultimate* Action grew to include sixty-nine defendants. (*See* U.A. No. 291, Seventh Am. Compl. filed 12/28/12.) In their Seventh Amended Complaint, plaintiffs alleged that Dan-Dee Company, Inc. ("Dan-Dee"), a defendant in the related *Pittsburg* Action, was the principal nationwide "distribution hub" for counterfeit 5-hour ENERGY. (Seventh Am. Compl. at 5.) A number of defendants in the *Ultimate* Action

---

[1] The *Ultimate* Action docket, No. 12-cv-5354, is hereinafter referred to as "U.A."
[2] The *Pittsburg* Action docket, No. 13-cv-6397, is hereinafter referred to as "P.A."

3

then impleaded Dan-Dee and its principals ("Dan-Dee Defendants") as third-party defendants in the *Ultimate* Action. (*See* U.A. Nos. 390, 473, 535, 580.) In turn, Dan-Dee Defendants impleaded a number of defendants from the *Ultimate* Action as third-party defendants in the *Pittsburg* Action.[3] (*See* P.A. No. 162, Am. Third-Party Compl. filed 1/23/12.)

In April 2013, Capital Sales Company, a defendant in the *Ultimate* Action and a customer of Dan-Dee, filed suit against the Dan-Dee Defendants in the Eastern District of Michigan. The Eastern District of Michigan transferred venue to this court, and this court consolidated Capital Sales Company's suit with the *Ultimate* Action. (Docket 13-cv-3542, No. 28, Order to Consolidate Cases dated 7/31/12.)

On November 12, 2013, plaintiffs moved to transfer venue in the *Pittsburg* Action from the Northern District of California to this district, on the grounds that all remaining parties in the *Pittsburg* Action are also parties to the larger, first-filed *Ultimate* Action, and the issues remaining to be

---

[3] Specifically, Dan-Dee Defendants impleaded as third-party defendants the so-called "Midwest Defendants" (Midwest Wholesale Distributors, Inc., Walid Jamil, and Justin Shayota), "Leslie Roman Defendants," "MCR Defendants" (Mario Ramirez, Camilo Ramirez, MCR Innovations and Packaging, Inc., MCR Printing & Packaging Corp., and Naftaunited.com), "Juan Romero Defendants," and "Baja Defendants" (Baja Exporting, LLC, Tradeway International, Inc. d/b/a Baja Exporting, Joseph Shayota, and Adrianna Shayota). The Clerk of Court of the Northern District of California entered default against the Juan Romero Defendants on May 1, 2013. (P.A. No. 326, Entry of Default dated 5/1/13.) The Leslie Roman Defendants declared bankruptcy in July 2013. (P.A. No. 430, Notice of Bankruptcy Filing dated 7/24/13.) The Juan Romero Defendants and the Leslie Roman Defendants neither joined nor opposed plaintiffs' motion to transfer venue.

4

tried are a subset of the issues in the *Ultimate* Action. (P.A. No. 508, Mot. for Change of Venue filed 11/12/13, at 1.) No party opposed the motion, and all parties signed a stipulation requesting that the *Pittsburg* Action "be transferred to the Eastern District of New York for consolidation with" the *Ultimate* Action. (P.A. No. 509, Stip. filed 11/12/13, at 2.)

On November 15, 2013, the Northern District of California transferred the *Pittsburg* Action to this district. (P.A. No. 530, Order Granting Mot. to Change Venue dated 11/15/13.)

Plaintiffs have settled with all direct defendants in the *Pittsburg* Action, except for the Dan-Dee Defendants. The remaining claims in the *Pittsburg* Action are: (1) Plaintiffs' direct claims against Dan-Dee Defendants, who remain third-party defendants in the *Ultimate* Action; (2) Dan-Dee Defendants' third-party claims against the Midwest Defendants, Leslie Roman Defendants, MCR Defendants, Juan Romero Defendants, and Baja Defendants, all of whom are direct defendants in the *Ultimate* Action; and (3) certain cross-claims among the third-party defendants.

## DISCUSSION

### I. Motion to Consolidate

5

Pursuant to Federal Rule of Civil Procedure 42(a), a court can consolidate pending matters where such actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a) ("Rule 42(a)"). A court may consolidate related cases *sua sponte* under Rule 42(a). *Devlin v. Transp. Comm'ns Intern. Union*, 175 F.3d 121, 130 (2d Cir. 1999). Rule 42 "should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Id.* (internal citations and quotation marks omitted). Even when actions involve a common question of law or fact, however, the trial court has broad discretion to determine whether consolidation is appropriate by balancing the economy gained, an interest in avoiding conflicting results, and prejudice to the parties. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) (the court must consider "'[w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'") (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)); *Maggio*

6

*v. Leeward Ventures*, 939 F. Supp. 1020, 1031 (E.D.N.Y. 1996); *Bank of Montreal v. Eagle Assoc.*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) ("One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results."). "Cases may be consolidated even where certain defendants are named in only one of the complaints." *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009).

For the following reasons, the court finds that consolidation of the present case with the *Pittsburg* Action is necessary to promote judicial economy and to avoid conflicting results. Accordingly, the court exercises its discretion and grants the joint request by plaintiffs and Dan-Dee Defendants to consolidate the actions.

### A. Claims and Parties in this Action and *Pittsburg* Action

Here, all parties remaining in the *Pittsburg* Action are also parties in the larger *Ultimate* Action. Specifically, the two cases concern the same plaintiffs, Living Essentials, and all the remaining defendants in the *Pittsburg* Action are also defendants, either direct or third-party, in the *Ultimate* Action. Moreover, both cases involve the same product and the same factual and legal issues: "who manufactured and sold counterfeit 5-hour ENERGY; whose actions were willful and whose were not; and how much damage each defendant's actions caused to

7

[plaintiffs] and to [other] co-defendants." (Ltr. Requesting Consolidation at 3.) Because common questions of law and fact exist in both actions, consolidation would be beneficial to avoid inconsistent outcomes.

### B. Convenience and Judicial Economy

The court further notes that judicial economy would be served by consolidating the *Ultimate* Action and the *Pittsburg* Action. There are no significant legal and factual distinctions between the two actions that would easily lead to confusion of the issues. In addition, discovery in both cases has proceeded along roughly parallel tracks, as document discovery in the *Pittsburg* Action closed on November 1, 2013, and document discovery in the *Ultimate* Action closed on January 17, 2014. (*See* P.A. No. 555, Pls.' Response in Opposition to Mot. to Compel dated 2/25/14, at 2.) Finally, the court can identify no prejudice that would result from consolidation of the two actions, and indeed, no parties have objected to the plaintiffs' and Dan-Dee Defendants' joint request for consolidation. *Endress v. Gentiva Health Services, Inc.*, 278 F.R.D. 78, 82 (E.D.N.Y. 2011) (finding "no prejudice inuring to the Defendants as a result of consolidation" and noting that "[t]his is further bolstered by the fact that there have been no objections to the

8

Plaintiffs' requests for consolidation . . . in any of the cases").

Accordingly, the court finds that the purposes of judicial economy and convenience would be well-served by consolidation of the two cases.

## CONCLUSION

For the foregoing reasons, the court orders the consolidation of the cases, *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.* (Docket No. 12-cv-5354), and *Innovation Ventures, et al., v. Pittsburg Wholesale Grocers Inc., et al.* (Docket No. 13-cv-6397), pursuant to Rule 42(a).

**SO ORDERED.**

Dated: Brooklyn, New York
       March 3, 2014

                                    _____ /s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York

9