

EDWARDS WILDMAN PALMER LLP
750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main +1 212 308 4844 fax
edwardswildman.com

Anthony J. Viola
+1 212 912 2827
*fax* +1 888 325 9175
aviola@edwardswildman.com

March 24, 2014

**VIA ECF**

Magistrate Judge Roanne L. Mann
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 12 Civ. 5354 (KAM) (RLM)

Dear Judge Mann:

We represent defendant Quality King Distributors, Inc. ("QKD") and submit this letter in opposition to Plaintiffs' impermissible four-page[1] letter motion to: (i) quash certain topics noticed for Plaintiffs' 30(b)(6) deposition and (ii) limit Plaintiffs' 30(b)(6) deposition to one day. QKD responds only for itself and not on behalf of what Plaintiffs characterize as the "QKD Group."[2] Tellingly, Plaintiffs do not point to a single specific 30(b)(6) topic propounded by QKD that it deems objectionable. Instead, it rests its entire motion on general, and often inapplicable, discovery principles.

Duration of Examination: Notably, this Court has already ruled (twice) that Plaintiffs must produce a 30(b)(6) designee for examination by these defendants and, in the second ruling, specified a two-day deposition. Plaintiffs' only excuse for seeking to revisit that issue again, and seeking to shorten the deposition to one day, is because Plaintiffs have supposedly "settled-in-principle" with Universal. But that still leaves at least seven defendants who will be questioning Plaintiffs' 30(b)(6) witness – defendants who, up until now, have had no opportunity, whatsoever, to do so. Furthermore, settlement with Universal has little bearing on the amount of time the other defendants need for the deposition since, of the over 4 million bottles at issue, Universal was alleged to have sold fewer than 70,000. Time and again, QKD and the other defendants have stated their good faith intention to ask only non-duplicative, relevant questions of Plaintiffs' witness. There is no reason why they should not be taken at their word and be allowed to depose Plaintiffs' representative for as long as is reasonably necessary within those two days, given the amount of defendants Plaintiffs chose to sue.

Claimed Compliance Issues: Plaintiffs attempt to make much of the fact that, after the February 3, 2014 hearing, QKD increased its 30(b)(6) topics from twenty-six to thirty-three. They view

[1] In reality, Plaintiffs' motion is forty pages if one counts the thirty-six-page letter annexed as Exhibit J, which letter serves as the actual basis for the relief sought in Plaintiffs' motion.

[2] Plaintiffs describe the "QKD Group" as a "coalition of defendants," "led by [QKD]," who "manufactured and/or sold counterfeit 5-hour ENERGY®." They are wrong on all three counts. There is no "coalition" of defendants, and certainly none that QKD purports to lead. In any event, and more importantly, there is not a scintilla of evidence that QKD ever "manufactured" any counterfeit product. Indeed, all of the evidence shows that QKD was nothing more than an innocent downstream purchaser.






this as being sufficient to show that QKD disregarded this Court's directive to narrow its 30(b)(6) topics. Quite the opposite, it shows that QKD complied with this Court's instructions by eliminating more generalized topics in favor of more narrowly tailored topics that, while although more numerous, are far more specific. Just by way of example, one of QKD's initial 30(b)(6) topics concerned alleged indicia of counterfeit or non-genuineness with respect to 5 Hour Energy®, in general. QKD's amended 30(b)(6) topic seeks only "[i]ndicia of alleged counterfeit of the Subject 5 Hour Energy® used to determine that any product distributed by any defendant, including QKD was counterfeit, and whether those indicia were made known to the public, including QKD and QKD Customers." Another example: one of QKD's initial 30(b)(6) topics concerned overhead and other costs incurred by Plaintiffs in connection with the manufacture and distribution of 5 Hour Energy®. In its amended notice, QKD's topic is "[o]verhead and other costs incurred by Plaintiffs in connection with the manufacture, distribution, or promotion of 5 Hour Energy®, which costs are not memorialized on any of [certain, specific documents produced by Plaintiffs] . . . ." Thus, Plaintiff's pointing simply to the number of topics in QKD's amended notice is disingenuous.

In any event, after a meet and confer with Plaintiffs, QKD agreed in good faith to withdraw seven of its thirty-three topics and narrow five others. (See Pls.' Ex. L.) There are actually only twenty-two topics now in dispute. Id.

Alleged Vagueness and Overbreadth: Plaintiffs seek to impose on QKD a non-existent obligation to designate 30(b)(6) topics with "painstaking specificity." Notwithstanding the fact that Plaintiffs cannot cite a single case in this Circuit applying this purported standard, QKD's allegedly overbroad topics are anything but. For instance, Plaintiffs challenge as overbroad QKD's topic regarding "[t]he contractual relationship between the Plaintiffs, including, but not limited to, any compensation arrangements between them." This is narrowly tailored to understand (i) which of the Plaintiffs have incurred damages, and (ii) any overhead costs incurred by any of the Plaintiffs, which, as QKD (with myriad Second Circuit case law) has explained, are to be deducted a lost profits analysis under the Lanham Act. See, e.g., Harris v. Fairweather, No. 11-cv-2152, 2012 WL 3956801, at *5 (S.D.N.Y. Sept. 10, 2012) ("[T]he accepted method of calculating lost profits is to deduct overhead expenses and costs to calculate net profits.") (quoting Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 262-63 (E.D.N.Y. 2008)); GTFM, Inc. v. Solid Clothing Inc., 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2011) ("Lost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue"). Another example of Plaintiffs' disingenuously claiming overbreadth is with regard to QKD's request that Plaintiffs' 30(b)(6) witness, Matthew Dolmage, be knowledgeable on the bases for allegations he made in his own declarations. Plaintiffs' expressed concern that this could lead to "redundant" testimony is purely speculative and should have been assuaged by QKD's advising them, on multiple occasions, that it had no intention of asking Mr. Dolmage questions designed to invoke duplicative testimony. With what little time it has to examine Plaintiffs' 30(b)(6) witness, QKD has neither incentive nor desire to waste its time. However, defendants cannot be reasonably precluded from questioning the witness about his own declarations.






Facts Alleged to be Solely Within the Knowledge of Counsel and/or Counsel's Investigators: QKD rejects the notion that Plaintiffs are not required to educate a witness regarding knowledge in the possession of Kroll, which Plaintiffs' counsel hired. Multiple times, QKD has directed Plaintiffs to irrefutable case law standing for the proposition that "[t]he relation of agency exists between the principal and authorized sub-agent. Persons employed by an agent to perform the work of a principal are employees of the principal and not employees of the agent." Herrington v. Virilli, 151 F. Supp. 2d 449, 463 (S.D.N.Y. 2001). Thus, Kroll is Plaintiffs' agent, making information held by Kroll necessarily within the "corporation's collective knowledge," and Plaintiffs cannot shroud such information with the cloak of privilege simply because Kroll happened to be hired by counsel. Indeed, Plaintiffs have not, and cannot, point to any part of any of QKD's 30(b)(6) topics seeking privileged information.

Thus, QKD's simple request, for example, that Plaintiffs' 30(b)(6) witness be knowledgeable on "[i]vestigations or surveillance of QKD regarding 5 Hour Energy®, including, but not limited to, the expenses incurred by Plaintiffs in association with those investigations or surveillance," is entirely proper. If Plaintiffs truly wished to ease their designee's burden to educate himself, they had every opportunity to do so by allowing Kroll to respond to those inquiries at Kroll depositions. Instead, they improperly instructed Kroll representatives not to answer, invoking privilege. In short, Plaintiffs are engaged in a shell game – they refuse to permit Kroll to answer, and then they say it is too burdensome for Plaintiffs to educate a witness. However, at the same time they also purport to base certain of their claims on facts allegedly within Kroll's knowledge, and seek recoupment of Kroll's investigatory fees.

It should be noted that Plaintiffs accuse defendants, generally, of asking Plaintiffs to educate a witness with respect to facts that "counsel has learned via discovery." But Plaintiffs have not identified a single topic of QKD's that seeks such information. In fact, none does.

Alleged "Contention" Topics: When QKD sent its revised 30(b)(6) topics to Plaintiffs on February 7, 2014 (45 days ago), it advised specifically that "Plaintiff may treat each topic . . . as an interrogatory" and that "[t]o the extent QKD is provided an adequate answer to a topic (to its satisfaction) in advance of Plaintiffs' deposition," it would consider withdrawing that topic from the notice. (Exh. A.) Plaintiffs ignored this, despite their alleged "offer[] on multiple occasions . . . to provide full responses to contention interrogatories." Thus, it is not that QKD has "continually refused to follow the Court's guidance," but rather, that Plaintiffs have continually refused to respond. For them to now paint QKD as being uncooperative is hypocritical.

Since then, Plaintiffs have made clear that contention interrogatories would not be an effective discovery device. Specifically, at the parties' recent meet and confer, Plaintiffs' counsel advised that, to the extent it did answer a propounded contention interrogatory, it would then refuse to produce a witness on that topic, regardless of whether the answer to that interrogatory was acceptable to QKD. To the extent, then, that QKD did issue formal contention interrogatories, it would be at risk of having to accept whatever inadequate answer Plaintiffs deigned to provide. This is a risk QKD cannot afford – certainly not in this case, where Plaintiffs have made it crystal clear that they wish to disclose as little as possible in discovery.






Respectfully submitted,

Anthony J. Viola

cc: To All Counsel of Record (via e-mail)

AM 31752985.1

# EXHIBIT A

**Silverman, Zachary**

**From:** Silverman, Zachary
**Sent:** Friday, February 07, 2014 4:54 PM
**To:** 'Blumenkrantz, Adam (x2781)'; todd@queenslaw.com; craig.adas@weil.com; randi.singer@weil.com; jessica.costa@weil.com; mark.ribaudo@weil.com; mco.ecf@weil.com; wkoster@ckbblaw.com; jlavery@ckbblaw.com; laveryjason@gmail.com; rbates@ckbblaw.com; vnagler@ckbblaw.com; hshire@kenyon.com; nsardesai@kenyon.com; Ajhauptman@aol.com; jacobsh@ballardspahr.com; schindlerwilliamss@ballardspahr.com; Cizmarik, Andre; Viola, Anthony; rschurin@sternschurin.com; apeikes@grr.com; sstern@grr.com; lbrown@grr.com; geraldgordinieratty@gmail.com; apaesano@paesanoakkashian.com; anixon@paesanoakkashian.com; bakkashian@paesanoakkashian.com; rapkarian@paesanoakkashian.com; dmdefilippis@nmmlaw.com; rweston@nmmlaw.com; jkcellistlawyer@gmail.com; johnyohanko@gmail.com; jthome@VGpcLAW.com; tconnaughton@VGpcLAW.com; mprentiss@vgpclaw.com; bkalman@londonfischer.com; gsesq600@aol.com; jcj@cll.com; bac@cll.com; ecf@cll.com; mmcknight@plunkettcooney.com; cmattieson@plunkettcooney.com; sintermaggio@plunkettcooney.com; mbarton@plunkettcooney.com; jbehrik@plunkettcooney.com; bruce.sabados@kattenlaw.com; gregory.johnson@kattenlaw.com; gjohnson@law.gwu.edu; zgoldberg@gcgllp.com; sml@eclipsegrp.com; ecm@eclipsegrp.com; rmeegan@eclipsegrp.com; perfumeshower@yahoo.com; steve@elialaw.com; maria@elialaw.com; mg@mauragriffinlaw.com; ah@bjdpc.com; BrianDavis@bjdpc.com; brianjdavisesq@aol.com; irasiegel@earthlink.net; irasiegel1@gmail.com; griller@gordonrees.com
**Cc:** Potter, Geoffrey (x2050); Yatrakis, Christos G. (x2519); _cg LE Team
**Subject:** RE: Innovation Ventures, LLC et al. v. Ultimate One Distributing Corp. et al., No. 12-civ-5354 (E.D.N.Y.)
**Attachments:** 2014-2-7 QKD's 2d Am. 30(b)(6) Notice.pdf

Attached is QKD's Second Amended 30(b)(6) Notice to Plaintiffs.

We are advising Plaintiffs that they may treat each topic in the notice as an interrogatory. To the extent QKD is provided an adequate answer to a topic (to its satisfaction) in advance of Plaintiffs' deposition, we will consider withdrawing that topic from the notice.

Additionally, the deposition has been noticed for March 6. Plaintiffs' counsel should advise us as soon as possible if Plaintiffs' representative will be available for continued questioning on March 7, and if not, provide alternative dates.

Best,

Zack

**Zachary W. Silverman**
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, NY 10022

Direct dial: 212.912.2759
Main: 212.308.4411
Fax: 866.955.9379