UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------- X
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,                                    **MEMORANDUM AND ORDER**

                    Plaintiffs,                      12-CV-5354 (KAM) (RLM)

        -against-

ULTIMATE ONE DISTRIBUTING CORP.,
et al.,

                    Defendants.
---------------------------------

MIDWEST WHOLESALE DISTRIBUTORS,
INC.; WALID JAMIL; and JUSTIN
SHAYOTA,

                    Counter-Plaintiffs,

        -against-

INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; INTERNATIONAL IP
HOLDINGS, LLC; and ROBERT
MCCORMACK

---------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiffs Innovation Ventures, LLC; Living Essentials,

LLC; and International IP Holdings, LLC (collectively,

"plaintiffs" or "Living Essentials") commenced this action

against defendants, various individuals and businesses involved

in the manufacturing and distribution of 5-hour ENERGY, raising

trademark infringement and other claims pursuant to the Lanham

Act, 15 U.S.C. § 1051 *et seq.*, the Copyright Act, 17 U.S.C. §

1

106, as well as New York statutory and common law. (*See generally* ECF No. 291, Seventh Am. Compl. filed 12/28/12 ("Seventh Am. Compl.").) Among the defendants named in the complaint are Midwest Wholesale Distributors, Inc.; Walid Jamil also known as Wally Jamil; and Justin Shayota (collectively, the "Midwest Parties" or "counter-plaintiffs"). In their first amended answer to Living Essentials' seventh amended complaint, the Midwest Parties bring, *inter alia*, (1) counterclaims against Living Essentials, alleging that Living Essentials engaged in fraudulent misrepresentation and innocent misrepresentation in violation of unspecified state law (ECF No. 499, Midwest Parties' First Am. Answer, First Am. Counterclaim against Living Essentials filed 4/5/13 ("Am. Counterclaim"), at 36-41), and (2) a third-party complaint against impleaded third-party defendant Robert McCormack ("McCormack"), a "high-ranking employee of Living Essentials," alleging counts of fraudulent misrepresentation, innocent misrepresentation, silent fraud, indemnification, and contribution. (ECF No. 499, Midwest Parties' First Am. Answer, First Am. Third-Party Complaint filed 4/5/13 ("Third-Party Compl.") at 46-50.)

Pending before the court are Living Essentials' and McCormack's (collectively, the "Living Essentials Parties") motions to dismiss the Midwest Parties' First Amended Counterclaim against Living Essentials and the First Amended

Third-Party Complaint against McCormack pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  (ECF Nos. 608 and 609, Notices of Motions dated 6/28/13; ECF No. 610, Living Essentials' and McCormack's Combined Memorandum of Law in Support of Motions to Dismiss dated 6/28/13 ("LE's Mem.").)

For the following reasons, Living Essentials and McCormack's motions to dismiss are both granted in their entirety.  Accordingly, Midwest's first amended counterclaim against Living Essentials, and Midwest's first amended third-party complaint against McCormack, are dismissed with prejudice.

## BACKGROUND

### I.  Statement of Facts

The following facts from the Midwest Parties' First Amended Answer are assumed to be true for the purposes of Living Essentials' and McCormack's motions to dismiss.

Counter-plaintiff Midwest Wholesale Distributors, Inc. ("Midwest"), is a re-packer and wholesale distributor of daily household products in Michigan and California.  (Am. Answer at 37, ¶ 9.)  Midwest is a Michigan corporation with its principal places of business located in Troy, Michigan, and San Diego, California.  (*Id.* at 36, ¶ 1.)  Counter-plaintiff Justin Shayota is the owner of Midwest, and is the nephew of counter-plaintiff Walid Jamil ("Jamil").  (*Id.* at 36, ¶¶ 10-11.)  Jamil assisted Justin Shayota in "getting Midwest's business off the ground"

and Jamil's personal residence serves as the resident agent office for the company, but Jamil is not an officer, director, or shareholder of Midwest Wholesale. (*Id.* at 37, ¶ 11.)

"At some point between May and July of 2011," Jamil "participated" in a telephone conference with Robert McCormack, a "high-ranking" employee of Living Essentials, and Joseph Shayota, the owner of defendant Baja Exporting, LLC and Tradeway International, Inc., d/b/a Baja Exporting (collectively, "Baja").[1] (*Id.* at 37, ¶ 12.) At the time of the conference call, Baja was an authorized distributor of 5-hour ENERGY with "exclusive rights to distribute and sell [5-hour ENERGY] in Mexico, and non-exclusive rights to distribute and sell [the product] in the United States." (*Id.* at 37, ¶ 14.) During the telephone conference, Joseph Shayota informed McCormack that it was difficult to sell 5-hour ENERGY in Mexico. (*Id.* at 38, ¶ 15.) According to the Midwest Parties, McCormack then directed Joseph Shayota "to arrange for transportation of the 5 Hour from Mexico to the United States and to engage a company to re-label

---

[1] In their opposition to Living Essentials' motions to dismiss, the Midwest Parties clarify that the conference call "actually took place in early to mid-August 2011 (not in the May to July 2011 time frame, as initially alleged." (ECF No. 612, Midwest Opp. filed 8/13/13 ("Midwest Opp."), at 7.) The Midwest Parties have requested leave to amend their First Amended Answer to reflect this corrected time frame in the event that the court finds that the Midwest Parties have failed to meet the pleading requirements under Rule 9(b). (Midwest Opp. at 6-7.) As discussed below, however, granting leave to amend would not help the Midwest Parties survive Living Essentials' motions to dismiss, as there are ample reasons to dismiss on alternative grounds.

and re-package 5 Hour from Spanish/Mexican labels to English/United States labels for sale in the United States." (*Id.* at 38, ¶ 16.)

At an unspecified later date, Baja hired Midwest for the re-labeling and re-packaging work. (Am. Answer at 38, ¶ 16.) Midwest, in turn, hired Leslie Roman ("Roman") to supply 5-Hour labels and boxes. (*Id.* at ¶ 19.) Roman represented to Jamil that Roman was the owner of One Stop Label and that the company made official 5-hour labels and boxes, and Midwest understood Roman to be an authorized supplier of 5-hour labels and boxes. (*Id.* at ¶ 17-18).

In or around October 2011, Roman "directed" Midwest to purchase a printer and other equipment, for a total cost of $50,000, for the purposes of "coding and printing expiration dates." (*Id.* at ¶ 20.) In November and December of 2011, Midwest issued invoices to Baja for $451,500. (*Id.* at ¶¶ 22-23.) In late 2011 or early 2012, Joseph Shayota told Jamil that Baja had lost its exclusive distributorship rights for 5-hour ENERGY in Mexico, and directed Midwest to find a replacement "packer," someone who could manufacture or make the 5-hour product from scratch. (*Id.* at 39, ¶ 24.) Roman represented to Jamil that Roman's partner, Juan Romero ("Romero"), was an authorized 5-hour packer, and Midwest relied on this information to hire Romero. (*Id.* at ¶¶ 25-26.)

Romero began delivering the 5-hour product to Midwest in unmarked bottles, which Midwest labeled and packed using the labels and boxes supplied by One Stop Label and Roman. (*Id.* at ¶¶ 26-27.) Midwest then delivered the 5-hour product to Baja for further distribution. (*Id.* at ¶ 27.)

In May 2012, Midwest was directed by Baja and Joseph Shayota to continue labeling and packaging the 5-hour product manufactured by Romero, but to deliver the product to Baja and to Dan-Dee Company ("Dan-Dee"), a distributor in California. (*Id.* at ¶ 28.) Dan-Dee's owners represented that Dan-Dee was an authorized 5-hour distributor. (*Id.* at ¶ 29.) Midwest continued engaging in its labeling and packaging activities until late October or early November of 2012. (*Id.* at ¶ 30.)

## II. Procedural History

On October 25, 2012, Living Essentials filed a complaint in the Eastern District of New York alleging that various defendants engaged in the manufacture and distribution of 5-hour ENERGY had counterfeited the trademarked product. (*See* ECF No. 1, Compl. filed 10/25/12.) The Midwest Parties were not named in the complaint. On October 29, 2012, Living Essentials executed seizure orders in a similar action that was originally filed in the Northern District of California. (See ECF No. 16, Second Am. Compl. filed 11/1/12.) Through the execution of these seizure orders, Living Essentials learned of

the existence of the Midwest Parties and named Justin Shayota and Midwest as defendants in their Second Amended Complaint in this action. (Second Am. Compl. at 8-9.) Jamil was named as a defendant in Living Essentials' Third Amended Complaint. (ECF No. 26, Third Am. Compl. filed 11/6/12.)

On February 19, 2013, the Midwest Parties filed their first Answer to Living Essentials' Seventh Amended Complaint, bringing counterclaims against Living Essentials as well as a third-party complaint against McCormack. (*See* ECF No. 392, Midwest Answer dated 2/19/13.) In response to Living Essentials' letter requesting a pre-motion conference for a motion to dismiss the counterclaims pursuant to Rule 12(b)(6) and Rule 9(b), the Midwest Parties dismissed a number of frivolous counterclaims and filed the First Amended Answer, First Amended Counterclaim against Living Essentials, and First Amended Third-Party Complaint against McCormack that are at issue in the pending motions. (*See* ECF No. 422, LE's Letter Requesting Pre-Motion Conference dated 2/28/13; Am. Answer.)[2] The Midwest

---

[2] The parties have not disputed subject matter jurisdiction or personal jurisdiction. As to the Midwest Parties' counterclaims against Living Essentials, the court notes that compulsory counterclaims, arising out of the same transaction or occurrence as original claims, fall under the court's supplemental jurisdiction. *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810-11 (2d Cir. 1979). In addition, the court has supplemental jurisdiction over the Midwest Parties' third-party claims against McCormack because the main claims asserted by Living Essentials and the third-party claims "arise from a common nucleus of operative fact," and there is a clear relationship between the main and third-party claims: at issue is who

Parties bring counterclaims of fraudulent misrepresentation and

innocent misrepresentation against Living Essentials, and allege

that McCormack is liable for fraudulent misrepresentation,

innocent misrepresentation, silent fraud, indemnification, and

contribution.[3]  (*See* Am. Answer.)

---

may be held liable for the production and distribution of counterfeit
5-hour ENERGY.  *See Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F.
Supp. 682, 687-89 (E.D.N.Y. 1994).

   The court must have personal jurisdiction over an impleaded
third-party defendant before it may consider a third-party claim.  *See
Myers v. Lennar Corp.*, No. 08-cv-2799, 2010 WL 1992200, at *10
(E.D.N.Y. May 17, 2010).  The Midwest Parties assert that jurisdiction
over their counterclaims and third-party claims is proper.  (*See* Am.
Answer at 37, ¶ 8; 47, ¶ 8 ("Jurisdiction and venue have been
established in this court.").)  McCormack has not contested
jurisdiction.  Failure to assert a personal jurisdiction defense
within a reasonable amount of time may result in forfeiture of the
defense, particularly where a party has had multiple opportunities to
raise the defense.  *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62
(2d Cir. 1999).  Rule 12(h)(1) requires a party to assert a personal
jurisdiction defense at the time a responsive pleading or defensive
motion is submitted, or else waive the defense.  Fed. R. Civ. P.
12(h)(1); *see JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay
Gumenick, P.C.*, No. 08 Civ. 2154, 2011 WL 1796298, at *2-3 (S.D.N.Y.
Apr. 22, 2011).  Because McCormack, the third-party defendant
impleaded by the Midwest Parties, has not contested personal
jurisdiction in his motion to dismiss, the court deems the defense, to
the extent he could have raised one, to be waived.  Consequently, the
court has personal jurisdiction over the parties involved in the
instant motions.

[3]   In their Amended Answer, the Midwest Parties do not identify the
state law under which their counterclaims and third-party claims are
brought.  The Living Essentials Parties note that they rely primarily
on Michigan law for their motions to dismiss, but the court observes
that they cite a mix of Michigan, New York, and other jurisdictions'
laws.  The Living Essentials Parties also note that because the
elements of the Midwest Parties' causes of action appear to be
materially identical under the laws of all potentially relevant states,
they take no formal position on choice-of-law at this time.  (LE's Mem.
at 6.)  The Midwest Parties primarily cite New York law and do not
contest Living Essentials' use of both Michigan and New York law.

## DISCUSSION

### I.    Standard of Review under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

---

(*See generally* ECF No. 612, Midwest Opp. filed 8/13/13 ("Midwest Opp.").)

The court has independently reviewed the causes of action under both New York and Michigan law, and finds that they appear to be materially identical.  The court "need not embark on a choice-of-law analysis in the absence of an actual conflict between the applicable rules of . . . the relevant jurisdictions."  *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 325 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Because the parties apparently concede to the application of New York law, at least for purposes of deciding these motions, the court will apply primarily New York law.  *See Amusement Ind., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) ("Because the parties relied on New York State law in their memoranda of law, however, they have implicitly consented to having New York law apply.").

"accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtmann v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation and internal brackets omitted).

## II. Rule 9(b)'s Heightened Pleading Standard

A party that alleges fraud, as the Midwest Parties do in their counterclaims and third-party claims, must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires the party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

Living Essentials and McCormack argue that the Midwest Parties have failed to plead fraud with sufficient particularity and that their counterclaims and third-party claims should thus be dismissed pursuant to Rule 9(b). (LE's Mem. at 6-9). The court agrees with the Living Essentials Parties that the Midwest Parties have not met the heightened pleading requirement under Rule 9(b), and that even if Rule 9(b) were satisfied, the Midwest Parties cannot survive the motions to dismiss because they do not plead sufficient factual allegations for their claims pursuant to Rule 12(b)(6).

Rule 9(b) requires a complainant alleging fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (holding that fraud and negligent misrepresentation claims were properly dismissed where complaint failed to specify why representations were fraudulent). In addition, the pleading should set forth what the defendants allegedly "'obtained' as a consequence of the fraud." *Stevens v. Equidyne Extractive Indus. 1980*, 694 F. Supp. 1057, 1061 (S.D.N.Y. 1988); *Beck v. Mftrs. Hanover Trust Co.*, 645 F. Supp. 675, 682 (S.D.N.Y. 1986), *aff'd*, 820 F.2d 46 (2d. Cir. 1987); *Joseph Victori Wines, Inc. v. Vina*

*Santa Carolina S.A.*, 933 F. Supp. 347, 356 (S.D.N.Y. 1996);
*Morin v. Trupin*, 823 F. Supp. 201, 205 (S.D.N.Y. 1993).

Rule 9(b)'s particularity requirement serves to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Rombach*, 335 F.3d at 170 (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). Rule 9(b) "must be read together with [R]ule 8(a) which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). However, the complaint "must [still] allege the time, place, speaker, and . . . even the content of the alleged misrepresentation" to survive Rule 9(b)'s greater particularity standard. *Id.* at 81. Thus, when a plaintiff asserts fraud, the "general rule" of Rule 8(a) "is simply applied *in light of* Rule 9(b)'s particularity requirements," and courts must "rigorously enforce [the] salutory purposes of Rule 9(b)." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) (emphasis added).

In their Amended Answer, the Midwest Parties allege that during a conference call that took place "between May and July of 2011," "McCormack directed Joe Shayota to arrange for transportation of the 5 Hour from Mexico to the United States and to engage a company to re-label and re-package 5 Hour from

Spanish/Mexican labels to English/United States labels for sale in the United States." (Am. Answer at 37, ¶ 12; *Id.* at 38, ¶ 16.) In addition, although not stated in the factual allegations portion of the Amended Answer, the Midwest Parties allege that Living Essentials and McCormack "represented that Midwest was authorized to change the labels on 5 Hour product from Mexico for re-sale in the United States." (*Id.* at 40, ¶ 35; *Id.* at 47, ¶ 11.)

In their motions to dismiss pursuant to Rule 9(b), the Living Essentials Parties argue that the Midwest Parties have failed to allege with particularity the content of the allegedly fraudulent statements, the identity of the speakers, where and when the alleged fraudulent statements were made, why the alleged statements were fraudulent, and what the Living Essentials parties allegedly obtained as a result of engaging in fraud. (LE's Mem. at 6-9.) Upon review of the factual assertions made in the Amended Answer, the court finds that the Midwest Parties fail to meet Rule 9(b) with respect to where and when the alleged fraudulent statements occurred, why the alleged statements were fraudulent, and what the Living Essentials parties obtained as a result of the alleged fraud.[4]

---

[4]     The court disagrees that the Midwest Parties failed to allege adequately the content of the fraudulent statements and the identity of the speakers. Although the Living Essentials Parties suggest that Rule 9(b) requires actual quotations of fraudulent statements, they

First, regarding the location and time of the
fraudulent statements made by Living Essentials and McCormack,
the Amended Answer alleged that the telephone conference call
occurred "at some point between May and June of 2011." (Am.
Answer at 37, ¶ 12.) Alleging that fraudulent statements were
made within a time range of several months is insufficient to
plead fraud with particularity. *Sendar Co., Inc. v. Megaware
Inc.*, 705 F. Supp. 159, 162 (S.D.N.Y. 1989) (dismissing amended
complaint where it alleged that defendant made fraudulent
statements some time during a two-month period at plaintiff's
place of business); *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*,
876 F. Supp. 41, 44 (S.D.N.Y. 1995), *abrogation recognized on*

---

offer no case law, and the court cannot find any, to support their
argument. (*See* LE's Mem. at 7.) Here, the Amended Answer alleges
with sufficient particularity the content of the statements made by
McCormack during the telephone conference call: that McCormack
"directed Joe Shayota to arrange for transportation of the 5 Hour from
Mexico to the United States and to engage a company to re-label and
re-package 5 Hour from Spanish/Mexican labels to English/United States
labels," (Am. Answer at 38, ¶ 16), and that the Living Essentials
Parties "represented that Midwest was authorized" to change labels on
the Mexican product (Am. Answer at 40, ¶ 35).

Moreover, while the Living Essentials Parties contend that the
Amended Answer fails to convey who allegedly made specific fraudulent
statements by "lumping together" McCormack, Living Essentials, Joseph
Shayota, and Baja (LE's Mem. at 7-8), the court notes that Rule 9(b)
only requires that where multiple defendants are alleged to have
engaged in fraud, the complaint "should inform each defendant of the
nature of his alleged participation in the fraud." *DiVittorio v.
Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).
Here, the Amended Answer meets this standard by naming the speakers of
the allegedly fraudulent statements. *See, e.g.*, *Naughright v. Weiss*,
826 F. Supp. 2d 676, 694 (S.D.N.Y. 2011) (dismissing complaint that
alleged that "defendants, each of them and all of them collectively
and individually communicated . . . untrue statements to plaintiff").

*other grounds by Sirius Am. Ins. Co. v. SCPIE Indem. Co.*, 461 F. Supp. 2d 155 (S.D.N.Y. 1996) (holding that "vague reference to a period of several months does not sufficiently apprise Defendant of when the allegedly fraudulent statement was made"); *accord In re Newbridge Networks Sec. Litig.*, 962 F. Supp. 166, 172 (D.D.C. 1997) (holding that alleging time frame of several months is insufficient to satisfy Rule 9(b)).  In addition, the Midwest Parties implicitly concede that they failed to sufficiently apprise the Living Essentials Parties of when the allegedly fraudulent statements were made, because they acknowledge that the time period alleged in the Amended Answer is incorrect.[5] Furthermore, the court agrees with the Living Essentials Parties that the authority cited by the Midwest Parties in an effort to apply a more lenient Rule 9(b) pleading standard is not persuasive or binding on this court. (*See* Midwest Opp. at 4; LE's Reply at 2-4.)  Thus, the Midwest Parties' Amended Answer

---

[5]     In their opposition brief, the Midwest Parties clarify that the conference call actually occurred later in the year, "in early to mid-August 2011,"  and offer additional factual allegations about the locations of the parties involved in the call.  (Midwest Opp. at 7.) These factual allegations are not a part of their Amended Answer, and the court cannot consider them in ruling on a 12(b)(6) motion to dismiss.  *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).  The Midwest Parties do not explain why they failed to plead these facts in their Amended Answer, and, for the reasons discussed below, the court is not inclined to grant their request to amend their answer a second time.

fails Rule 9(b) on the grounds of alleging the time and place of the alleged fraud with particularity.

Second, the Midwest Parties fail to allege with sufficient particularity how the statements allegedly made by Living Essentials through their employee McCormack were fraudulent. To state a claim for fraud, the pleading must allege that the defendant "made an omission, misrepresentation, or false statement of material fact." *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 94 (S.D.N.Y. 1995) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992)). McCormack allegedly "directed *Joe Shayota* . . . to engage a company to *re-label and re-package*" 5-hour ENERGY from the Mexican market to the United States market, and in turn, "*Baja hired Midwest* for this purpose." (Am. Answer at 38, ¶ 16 (emphasis added).) McCormack's directive to Joseph Shayota, if made as alleged, contains no statement directed to Midwest and no authorization for the Midwest Parties to engage in the activities it ultimately engaged in and which are at issue in the main counterfeiting action: finding a replacement packer to manufacture 5-hour ENERGY at Baja's behest after Baja lost its exclusive distributorship rights in Mexico and ran out of Mexican-labeled product, purchasing a commercial printer to print expiration dates at Baja's direction, and labeling *blank* bottles (not simply re-labeling bottles) received from the

replacement packer. (*See* Am. Answer at 38-39.) Accordingly, to the extent that the Midwest Parties claim that McCormack's statements authorized the activities the Midwest Parties undertook at Baja's direction, the court finds that the Midwest Parties have not alleged with sufficient particularity how the alleged statements made by the Living Essentials Parties were fraudulent.

Finally, district courts within this circuit have also required a complainant alleging fraud to plead with particularity what a defendant allegedly obtained as a result of the fraud. *E.g.*, *Stevens*, 694 F. Supp. at 1061; *Beck*, 645 F. Supp. at 682; *Joseph Victori Wines*, 933 F. Supp. at 356. Here, the Midwest Parties have not alleged any facts explaining what the Living Essentials Parties allegedly obtained as a result of their misstatements, and accordingly, their Amended Answer fails to meet Rule 9(b).

Because the Midwest Parties' Amended Answer fails to meet Rule 9(b)'s heightened pleading requirements, their counterclaims and third-party claims are dismissed. In addition, the court denies the Midwest Parties' request for leave to amend their answer an additional time. (*See* Midwest Opp. at 6-7.) As discussed below, there exist alternative grounds on which to grant the Living Essentials Parties' motions to dismiss, and amendment would prove futile to surviving dismissal. *Cuoco v.*

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to re-plead where "[t]he problem with [plaintiff's] causes of action is substantive; better pleading will not cure it"); *Lastra v. Barnes & Noble Bookstore*, No. 11 Civ. 2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (same).

## II. Fraudulent Misrepresentation against the Living Essentials Parties

Even if the Midwest Parties could meet Rule 9(b)'s pleading requirements, their counterclaims and third-party claims alleging fraudulent misrepresentation, negligent misrepresentation, and silent fraud would still fail under Rule 12(b)(6).

The Midwest Parties allege that Living Essentials and McCormack engaged in fraudulent misrepresentation when they "intentionally made false representations of material facts to the Midwest Parties. Specifically, they represented that Midwest was authorized to change the labels on 5 Hour product from Mexico for re-sale in the United States." (Am. Answer at 40, ¶ 35; *Id.* at 47, ¶ 11.) To maintain an action based on fraudulent misrepresentation, a plaintiff must allege a "[1] misrepresentation or material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material

omission, and [4] injury." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151 N.E.2d 833, 835 (N.Y. 1958) (internal citation and quotation marks omitted); *accord Roberts v. Saffell*, 760 N.W.2d 715, 719 (Mich. Ct. App. 2008) (listing same elements for fraudulent representation under Michigan state law).

Here, the Midwest Parties fail to allege facts plausibly establishing the Living Essentials Parties' fraudulent intent and their own justifiable reliance on the alleged misrepresentations. With respect to claims of fraudulent misrepresentation and fraudulent concealment, Rule 9(b) requires a plaintiff to "allege facts that give rise to a strong inference of fraudulent intent." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 120 (E.D.N.Y. 2011) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). This may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). The plaintiff must supply an "ample factual basis" to sufficiently plead fraudulent intent;

speculation and conclusory allegations cannot survive Rule 9(b)'s pleading requirements. *O'Brien*, 936 F.2d at 676.

Here, the Midwest Parties allege in a conclusory fashion that Living Essentials and McCormack "knew that their representations were false when they were made or they made them recklessly, without knowing whether they were true," and "intended that [Midwest] rely on the representations." (Am. Answer at 40-41, ¶¶ 37-38; *Id.* at 47, ¶¶ 13-14.) Thus, they fail to allege with any particularity, or indeed with any facts at all, that the Living Essentials Parties possessed any fraudulent intent in making the alleged misrepresentations. For this reason, their counterclaim against Living Essentials and third-party claim against McCormack alleging fraudulent misrepresentation must fail.

In addition, the Midwest Parties have failed to plausibly allege that they reasonably relied on the Living Essentials Parties' alleged misrepresentations. A plaintiff must allege facts from which it could be concluded that he reasonably relied on a defendant's misrepresentations. *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2013 WL 791462, at *8 (S.D.N.Y. Mar. 5, 2013) ("The proper inquiry here is not whether the Complaint contains the phrase, 'reasonable reliance,' but whether the pleadings plausible allege facts from which it can be inferred that the plaintiff

reasonable relied on the defendant's representations."); *accord Issa v. Provident Funding Grp., Inc.*, No 09-12595, 2010 WL 538298, at *5 (E.D. Mich. Feb. 10, 2010).  At the pleading stage, the court assesses whether a plaintiff has adequately established reasonable reliance by engaging in a fact-specific inquiry that considers the "entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (affirming dismissal where complaint failed to allege facts to establish reasonable reliance).  Where "[c]ircumstances may be so suspicious as to suggest to a reasonably prudent plaintiff that the defendants' representations may be false," the plaintiff "cannot reasonably rely on those representations" absent some "additional inquiry to determine their accuracy." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

The Midwest Parties allege that they "reasonably believed that Living Essentials approved the re-labeling and re-packaging of the Mexican 5 Hour for distribution and sale in the United States" based on the alleged telephone conference call, the representations from Roman, Baja, and Dan-Dee that they were authorized 5-hour ENERGY suppliers and distributors, and the "fact that the product crossed from Mexico into the United

States without incident." (Am. Answer at 40, ¶ 32.) These factual allegations do not plausibly establish that the Midwest Parties reasonably relied on the Living Essentials Parties' alleged representations and directives to a third party. Indeed, the court is hard-pressed to understand, based on the Midwest Parties' allegations, how a reasonable business actor, after participating in a single telephone conference call where nothing was recorded or reduced to writing, could assume that the Living Essentials Parties authorized the hiring of a replacement packer after Baja lost its exclusive distribution rights in Mexico several months after the lone telephone call, and would engage in at least a year of re-labeling and re-packaging operations without *any* follow-up communications with the Living Essentials Parties.

Furthermore, even though Roman, Baja, and Dan-Dee made "representations" about their "authorized" distributor and supplier statuses, the Midwest Parties do not allege that the Living Essentials Parties were aware of, made, or ratified such representations, or that the Midwest Parties ever asked for or saw any evidence of their authorized statuses. In a field where such representations are apparently significant, a reasonable business actor in a similar position would likely have sought to confirm them. If the party claiming fraudulent misrepresentation "has the means of knowing, by the exercise of

ordinary intelligence, the truth, or the real quality of the subject of the representations, he must make use of those means, or he will not be heard to complain that" he reasonably relied on the misrepresentations. *Schlaifer Nance*, 119 F.3d at 98. Additionally, "'[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.'" *Id.* (citing *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984)).

Here, the Midwest Parties engaged in a year-long business operation generating invoices worth hundreds of thousands of dollars based merely on a single, undocumented telephone call and unspecified "representations" made by other actors, and without making any additional inquiries to determine the alleged representations' accuracy. Such reliance cannot be said to have been reasonable or justifiable. Accordingly, the Midwest Parties' fraudulent misrepresentation counterclaim against Living Essentials and third-party claim against McCormack are dismissed under Rule 12(b)(6) for failing to plausibly allege that the Living Essentials Parties had fraudulent intent and that the Midwest Parties reasonably relied on the Living Essentials Parties' alleged misrepresentations.

**III. Negligent Misrepresentation against the Living Essentials Parties**

Under New York common law, a negligent misrepresentation claim requires the plaintiff to plead sufficient facts demonstrating "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007); *accord Nat'l City Bank v. Syatt Realty Grp., Inc.*, 497 F. App'x 465, 470 (6th Cir. 2012) (quoting *Roberts*, 760 N.W.2d at 720) (to prove innocent misrepresentation under Michigan law, a party must have "detrimentally relie[d] on a false representation in such a manner that the injury inures to the benefit of the party making the representation," and "there must be privity of contract between the party making the representation and the party claiming to have detrimentally relied on it"). Unlike fraudulent misrepresentation and silent fraud, also known as fraudulent concealment, a claim of innocent misrepresentation does not require proof of the defendant's fraudulent intent. *J.A.O. Acquisition Corp.*, 863 N.E.2d at 587; *Roberts*, 760 N.W.2d at 720.

Under both New York and Michigan common law, a negligent or innocent misrepresentation claim requires privity

of contract between the parties. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) ("With few exceptions, New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract' between the parties or a relationship so close as to approach that of privity."); *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 686 (S.D.N.Y. 1990); *U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 85 (Mich. 1981) (noting that "the rule of innocent misrepresentation only applies to parties in privity of contract"). Here, the Midwest Parties have not made a single factual allegation to support the existence of privity of contract between them and the Living Essentials Parties.[6]  In addition, the Midwest Parties do not oppose the Living Essentials Parties' motions to dismiss their innocent misrepresentation claims on any grounds. (*See generally* Midwest Opp.)  A plaintiff "effectively concedes a defendant's arguments by his failure to respond to them." *Felske v. Hirschmann*, No. 10 Civ. 8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see also Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 n.2 (2d

---

[6]     The Midwest Parties merely allege, under their cause of action alleging innocent misrepresentation, that "Living Essentials' representations . . . were made in connection with the negotiation and formation of contracts between Midwest, Baja, Roman, One Stop Label and various other persons and entities."  (Am. Answer at 41, ¶ 42.) For a claim of negligent misrepresentation, however, privity of contract must exist between the party making the representation and the party that relied on the representation.  The Midwest Parties fail to allege that any contract was formed between them and Living Essentials.

Cir. 1996) ("Given [plaintiff's] representations to the district court that he was willing to abandon the claims against [defendant] and the failure to make pertinent arguments here, we deem the claims waived."). Indeed, in a prior submission, the Midwest Parties "agree[d] that McCormack and Baja's misrepresentations did not result [in] any contract between Counter-Plaintiffs and Living Essentials and, as such, Counter-Plaintiffs will voluntarily dismiss that claim." (*See* ECF No. 533, Midwest Parties' Letter Opposing Pre-Motion Conference dated 4/10/13, at 3.) No stipulation was ever filed.

Because the Midwest Parties have failed to set forth any facts establishing privity of contract between them and the Living Essentials Parties, their counterclaim against Living Essentials and third-party claim against McCormack alleging innocent misrepresentation are dismissed pursuant to Rule 12(b)(6).[7]

## IV. Silent Fraud against McCormack

---

[7] The court notes that the Midwest Parties' negligent misrepresentation claims fail for additional reasons. Under New York law, the Midwest Parties fail to plausibly allege that they reasonably relied on the Living Essentials Parties' misrepresentations, as discussed *supra*. Under Michigan law, the Midwest Parties have not made any allegations that the injury caused by the misrepresentations "inure[d] to the benefit of the party making the representation." *Nat'l City Bank*, 497 F. App'x at 471 (internal citation omitted). As the court found above, the Amended Answer does not meet Rule 9(b)'s pleading requirements in part for a failure to allege what the Living Essentials Parties gained as a result of the alleged fraud.

Silent fraud, otherwise known as fraudulent concealment under New York law, is "[a] fraud arising from the suppression of the truth." *Roberts*, 760 N.W.2d at 719. To meet Rule 9(b)'s heightened pleading standard with respect to silent fraud or fraudulent concealment, the plaintiff must allege with particularity "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Woods*, 807 F. Supp. 2d at 119 (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007)) (internal quotation marks omitted). In addition, with respect to a claim of silent fraud, the plaintiff must show "some type of representation . . . that was false or misleading and was *intended* to deceive." *Roberts*, 760 N.W.2d at 719. Here, the Midwest Parties have not alleged any facts pertaining to what omissions McCormack allegedly made, the context of any omissions and how they misled the Midwest Parties, and what McCormack obtained through the fraudulent omissions. (*See generally* Am. Answer at 49.) Moreover, as discussed *supra*, the Midwest Parties have failed to sufficiently allege fraudulent intent. Accordingly, the Midwest Parties' third-party claim alleging silent fraud against McCormack must be dismissed under Rule 9(b)'s pleading requirements.

In addition, "in order for the suppression of information to constitute a silent fraud there must be a legal or equitable duty of disclosure." *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 550 (Mich. 2000) (citing *U.S. Fid. & Guar. Co.*, 313 N.W.2d at 88)); *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998) ("Michigan courts have recognized that silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure."); *accord Mandarin Trading*, 944 N.E.2d at 1108 (citing *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (N.Y. App. Div. 2003)) (under New York law, a cause of action for fraudulent concealment requires, in addition to the elements of fraudulent representation, "an allegation that the defendant had a duty to disclose material information and that it failed to do so"); *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993) (citing *Leasing Serv. Corp. v. Broetje*, 545 F. Supp. 362, 366 (S.D.N.Y. 1982)) (same).

Generally, a legal duty to disclose material information arises from a fiduciary or other confidential relationship. *Fruitman v. Rubinstein*, No. 286916, 2010 WL 143478, at *1, 3 (Mich. Ct. App. Jan. 14, 2010) (summarizing fiduciary relationships recognized by Michigan Supreme Court and noting that plaintiff failed to make out silent fraud claim where no fiduciary relationship existed); *Remington Rand Corp. v.*

*Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir.
1995)) (noting that a duty to disclose under New York law
"ordinarily arises where the parties are in a fiduciary or other
relationship signifying a heightened level of trust"); *Brass*,
987 F.2d at 150-51 (2d Cir. 1993) (reciting types of fiduciary
relationships). Notably, a fiduciary relationship "is grounded
in a higher level of trust than normally present in the
marketplace between those involved in arm's length business
transactions." *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d
26, 31 (N.Y. 2005).

Here, the Midwest Parties have not alleged any facts
to establish that McCormack had a fiduciary or confidential
relationship with the Midwest Parties, and consequently, fail to
plausibly allege that McCormack had a legal duty to disclose
information to the Midwest Parties. Although the Midwest
Parties argue that the doctrine of partial disclosure is
applicable to the case at hand (Midwest Opp. at 8), the court
disagrees.

In the absence of a fiduciary relationship, a duty to
disclose may still arise if "(1) one party makes a partial or
ambiguous statement that requires additional disclosure to avoid
misleading the other party, or (2) one party possesses superior
knowledge, not readily available to the other, and knows that
the other is acting on the basis of mistaken knowledge."

*Remington Rand Corp.*, 68 F.3d at 1484 (internal quotation marks and citations omitted).  Significantly, "[i]n either case, a disclosure duty ripens *only* when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact."  *Id.* (emphasis added). Indeed, under Michigan law, partial disclosure can amount to fraud only if the partial disclosure is in response to a specific inquiry made by the injured party.  *W.B. McConkey*, 585 N.W.2d at 39 ("Our review of Michigan Supreme Court precedent . . . reveals that, in every case, the fraud by nondisclosure was based upon statements by the [defendant] that were made in response to a specific inquiry by the [plaintiff], which statements were in some way incomplete or misleading.").

Here, not only have the Midwest Parties failed to include any factual allegations showing that they made a specific inquiry that would have triggered McCormack's duty to disclose all material information, but they have not alleged any facts whatsoever to allow the court to infer that it became apparent to McCormack that they were operating under a mistaken perception of a material fact.  Accordingly, accepting as true the Midwest Parties' factual assertions, the court cannot conclude that the Midwest Parties plausibly allege that a duty to disclose material information ever arose between them and McCormack.  As such, the Midwest Parties' third-party claim

alleging silent fraud against McCormack must be dismissed under
Rule 9(b) and Rule 12(b)(6).

**V.    Contribution and Indemnification against McCormack**

          Finally, the Midwest Parties allege that McCormack is
liable for indemnification and contribution for any judgment
entered against them in the main counterfeiting action.[8]  (Am.
Answer at 49.)  An obligation to indemnify "arises from the
equitable principle that the wrongdoer ought to bear
responsibility for the loss."  *Luna v. Am. Airlines*, 769 F. Supp.
2d 231, 238 (S.D.N.Y. 2011) (citing *North Star Reinsurance Corp.
v. Cont'l Ins. Co.*, 624 N.E.2d 647, 651 (N.Y. 1993)); *Thornberry
v. Grand Truck Western R.R. Inc.*, 776 F. Supp. 2d 453, 457 (E.D.
Mich. 2011) ("[I]ndemnification is an equitable doctrine that
shifts the entire burden of judgment from one tortfeasor who has
been compelled to pay it, to another whose active negligence is
the primary cause of the harm." (internal quotation marks and
citation omitted)).  Under New York and Michigan common law,
indemnification compels one party to pay for the wrong of
another.  *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*,
769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011); *LNC Inv., Inc. v.
First Fid. Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1352 (S.D.N.Y.
1996) ("Unlike contribution, indemnification does not reallocate

---

[8] Because the Midwest Parties do not raise their indemnification and
contribution claims pursuant to any state statute (*see* Am. Answer at
49), the court will analyze the claims under state common law.

a portion of liability; rather it shifts liability from one party to another."); *accord Thornberry*, 776 F. Supp. 2d at 457 (explaining difference between indemnification and contribution under Michigan law).

Notably, under both New York and Michigan common law, an obligation of indemnification cannot be imposed where the third-party defendant is not at fault. *Perkins Eastman Architects*, 769 F. Supp. 2d at 330 (under New York law, "a third party action for indemnity does not lie against one who has not violated a duty owed to plaintiff in the primary action"); *Luna*, 769 F. Supp. 2d at 238 (noting that the "essential requirement" for indemnification implied under the New York common law is that there is "fault on the part of the indemnitor"); *Thornberry*, 776 F. Supp. 2d at 457 (under Michigan law, "the indemnitor or contributor must be liable to the injured party under the applicable substantive law"). Here, the court has dismissed the Midwest Parties' claims against McCormack under Rule 9(b) and Rule 12(b)(6), and thus, there is "no determination – whether by verdict, judgment or settlement – of fault by [the] purported indemnitor." *Luna*, 769 F. Supp. 2d at 239. Therefore, the Midwest Parties are unable to sufficiently allege that McCormack engaged in any wrongdoing or is at fault in any way for Living Essentials' injuries arising from the alleged counterfeiting of 5-hour ENERGY.

Furthermore, even if McCormack were at fault, indemnification is not available where the party seeking indemnification was "partially at fault" or "responsible in any degree" for harming the plaintiff in the main action. *Amusement Ind.*, 693 F. Supp. 2d at 326 (internal quotation marks omitted); *Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F. Supp. 1294, 1301 (E.D. Mich. 1994) ("[O]nly a party who can plead and prove freedom from active fault is entitled to be indemnified under a common law . . . theory"). In assessing whether a party seeking common law indemnity is "itself free from active negligence" or fault, the court reviews the "underlying complaint against that party as well as the complaint which seeks indemnity. And, as a general rule, the courts have held that where the underlying complaint alleges that the party who now seeks indemnity is liable by virtue of its own active negligence," that party does not have a common law right to be indemnified. *Fishbach-Natkin*, 854 F. Supp. at 1301 (internal citations omitted). Here, the underlying complaint against the Midwest Parties filed by Living Essentials alleges that the Midwest Parties are liable by virtue of their own actions. Moreover, as decided *supra*, the Midwest Parties have not adequately pleaded that McCormack committed any wrongdoing to absolve them of any liability. Therefore, the indemnification third-party claim against McCormack must be dismissed.

With respect to contribution, "the crucial element in allowing a claim for contribution to proceed is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Amusement Ind.*, 693 F. Supp. 2d at 324 (internal quotation marks and citations omitted); *accord In re Greektown Holdings, LLC*, 475 B.R. 563, 576 (E.D. Mich. 2012), *vacated in part on other grounds*, 728 F.3d 567 (6th Cir. 2013) ("[I]t is important to note that the concept of contribution only enters the discussion in the context of joint tortfeasors."); *Thornberry*, 776 F. Supp. 2d at 457 (the purported "contributor must be liable to the injured party under the applicable substantive law."). As already held, because the Midwest Parties have failed to sufficiently allege any wrongdoing committed by McCormack, he cannot be held liable for Living Essentials' alleged damages. Accordingly, the third-party contribution claim against McCormack must also be dismissed.

Finally, as a separate matter, the Living Essentials Parties are correct in noting "that the viability of the Midwest Defendants' indemnification and contribution claims turns on *federal* law, not *state* law – at least insofar as they seek recompense for damages awarded under the Lanham Act and Copyright Act." (ECF No. 611, Living Essentials and McCormack's Combined Reply dated 8/12/13 ("LE's Reply") at 8.) In their

Seventh Amended Complaint, the Living Essentials plaintiffs
bring six claims pursuant to the Lanham Act and the Copyright
Act, as well as three state law claims under New York statutory
law and common law. (*See generally* Seventh Am. Compl.)  With
respect to the claims brought pursuant to the Lanham Act and
Copyright Act, if the Midwest Parties are found liable, they are
barred from seeking contribution and indemnification.

"Whether a defendant who incurs liability under a
federal statute may pursue either contribution or
indemnification is a question of federal law." *Zino Davidoff SA
v. Selective Distrib. Int'l Inc.*, No. 07 Civ. 10326, 2013 WL
1245974, at *4 (S.D.N.Y. Mar. 8, 2013).  The Second Circuit has
clearly held that contribution and indemnification are
unavailable for any loss incurred in paying a claim under the
Lanham Act, because these remedies are neither provided for
under the Lanham Act's extensive remedial provisions nor has
federal common law been implied to allow such remedies.  *Id.* at
*5; *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10,
16 (2d Cir. 1988) (holding contribution unavailable under the
Lanham Act).  The right of contribution and indemnification are
similarly barred in the context of the Copyright Act.  *Lehman
Bros., Inc. v. Wu*, 294 F. Supp. 2d 504, 505 (S.D.N.Y. 2003)
(noting that "the judicial extension of federal common law to
create a right of contribution seems peculiarly inappropriate in

the context of federal copyright law, where Congress has otherwise legislated with great particularity as to liability, damages, remedies, and the like"); *Elektra Entm't Grp. Inc. v. Santangelo*, No. 06 Civ. 11520, 2008 WL 461536, at *2 (S.D.N.Y. Feb. 15, 2008) (holding that no right to indemnification or contribution exists under either the Copyright Act or federal common law and dismissing third-party claims of indemnification and/or contribution for copyright infringement).

Accordingly, there are ample grounds upon which the Midwest Parties' third-party claims of indemnification and contribution against McCormack must be dismissed.

## VI.  Request for Leave to Amend

As noted before, and worth reiterating now, the court denies the Midwest Parties' request, raised in their opposition, for leave to amend their answer a second time.  Where the problem with the Midwest Parties' causes of action is "substantive," and "better pleading will not cure it," the court sees no reason to permit the Midwest Parties a second opportunity to adequately plead facts.  *Cuoco*, 222 F.3d at 112. Indeed, where the pleadings are not "simply 'inadequately or inartfully pleaded,' but rather contain[] substantive problems such that an amended pleading would be futile," dismissal with prejudice is appropriate.  *Lastra*, 2012 WL 12876, at *9; *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d

Cir. 1998).  Although the Midwest Parties argue that "[b]y
comparison, Living Essentials have amended their complaint seven
times" (Midwest Opp. at 7), the court notes that the Living
Essentials plaintiffs have amended their complaint to add
defendants due to the evolving nature of their investigation
into the relationship between defendants.  Here, the Midwest
Parties have had in their possession whatever facts are
necessary to sufficiently allege their counterclaims and third-
party claims since at least the commencement of this action
against them.  In addition, the Midwest Parties fail to show how
their additional factual allegations regarding the circumstances
of their telephone call can possibly cure the substantive
deficiencies in their counterclaims and third-party claims.[9]
Finally, the Midwest Parties have already had an opportunity to
amend their answer once before, with notice from the Living
Essentials Parties that their pleading lacked particularity
under Rule 9(b) (*see* No. 422, LE's Ltr. Requesting Pre-Motion
Conference dated 2/28/13), and the Midwest Parties still
neglected to substantiate their claims with sufficient factual
allegations.  Accordingly, the court denies the Midwest Parties'
request for leave to amend their pleading.

## CONCLUSION

---

[9]    The Midwest Parties only offer to add details regarding the time
frame in which the call occurred and where the respective parties were
located during the call.  (Midwest Opp. at 7.)

For the foregoing reasons, the Living Essentials Parties' motions to dismiss are granted in their entirety, and the Midwest Parties' counterclaims against Living Essentials and third-party claims against McCormack are dismissed with prejudice. The Midwest Parties' request for leave to amend their pleading an additional time is denied. Accordingly, the Clerk of Court is respectfully directed to dismiss McCormack from this action.

**SO  ORDERED.**

Dated:     Brooklyn, New York
           March 28, 2014

                                          _____/s/_____
                                          KIYO A. MATSUMOTO
                                          United States District Judge