

750 LEXINGTON AVENUE
NEW YORK, NY 10022
+1 212 308 4411 main  +1 212 308 4844 fax
edwardswildman.com

Anthony J. Viola

+1 212 912 2827
*fax* +1 888 325 9175
aviola@edwardswildman.com

April 3, 2014                     **VIA ECF**

Magistrate Judge Roanne L. Mann
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     Innovation Ventures, LLC  v. Ultimate One Distrib. Corp., 12 Civ. 5354 (KAM) (RLM)

Dear Judge Mann:

We represent defendant Quality King Distributors, Inc. ("QKD") and submit this letter motion to compel Plaintiffs to produce responses to, inter alia, QKD's first set of interrogatories and second set of document requests.  In compliance with Local Civil Rule 37.3(a), we have both exchanged correspondence and had a telephonic "meet and confer" with Plaintiffs' counsel.

**Information Regarding Kroll's Investigatory Expenses:**  Plaintiffs admittedly are seeking damages from QKD associated with expenses incurred by Kroll in connection with its investigation of the alleged counterfeit 5 Hour Energy®.  Thus, QKD has sought particularized discovery with respect to exactly what investigatory costs are attributable to it.  To this end, QKD has asked Plaintiff to:

- "[i]dentify any and all investigators . . . who . . . performed services involving or concerning QKD, including the name of such person, date of service, description of such service, amount of time expended for each discrete task on any given day, and the hourly rate of such individual" (Interrogatory No. 1);
- "[i]dentify every entry in the Kroll invoices [produced by Plaintiffs in this action] that relates to work performed by any Kroll employee, agent, or subcontractor with its investigation of QKD (Interrogatory No 2); and
- produce "[a]ll invoices and bills that form the basis for the "Investigator" or "INV" entries[1] on the Kroll bills for October 1, 2012 to January 31, 2013" (Doc. Request No. 1).

Plaintiffs have never denied that such information is relevant.  Nor can they, since they seek to recover these costs.  Thus, QKD is entitled to discovery regarding how much time Kroll spent investigating it (as opposed to other defendants) and thus, the portion of the investigatory costs for which it is potentially liable.

Nevertheless, Plaintiffs refuse to respond, citing the attorney work-product privilege doctrine.  Throughout this litigation, Plaintiffs have sought to have it both ways:  they have consistently

---

[1] These are entries on the Kroll invoices that, on their face, are not attributed to any individual, and Plaintiffs have repeatedly declined to produce anyone to testify, on personal knowledge, as to the basis for these entries.



Magistrate Judge Roanne L. Mann                                         April 3, 2014
Page 2

denied defendants discovery based on their claim that Kroll is not their agent, yet they have directed Kroll employees not to answer questions at their depositions on the purported basis that such information constitutes privileged work product. Plaintiffs' purported rationale for this convenient dichotomy is that Kroll was "retained as an agent of [Plaintiffs'] outside counsel," not Plaintiffs themselves.

However, QKD explained that Kroll is, as a matter of law, an agent of Plaintiffs: "[t]he relation of agency exists between the principal and authorized sub-agent. Persons employed by an agent to perform the work of principal are <u>employees of the principal</u> and not employees of the agent." <u>Herrington v. Verrilli</u>, 151 F. Supp. 2d 449, 463 (S.D.N.Y. 2001). While Plaintiffs flippantly dismissed these cases as not "alter[ing]" their analysis, they cite no substantive reason for why this is so. Thus, Kroll is Plaintiffs' agent – not their outside counsel's – and any work prepared by Kroll was done on behalf of Plaintiffs. Information related to such work cannot be shrouded with the cloak of privilege simply because it was ordered by Kroll's other agent, its outside counsel, especially where Plaintiffs claim the cost of performing that work as damages. Indeed, Plaintiffs produced Kroll's bills and intends to use them as evidence of its damages. Accordingly, even if some privilege applies (which it does not), Plaintiffs have thereby waived it and put these matters at issue.

**Information Regarding Plaintiffs' Expenses:** It has long been Plaintiffs' contention, contrary to all case law in this jurisdiction, that only its variable costs – and not its fixed overhead expenses – should be factored into a Lanham Act lost profits analysis. Since discovery began, QKD and other defendants have cited myriad cases that directly refute this baseless proposition. <u>See Harris v. Fairweather</u>, No. 11-cv-2152, 2012 WL 3956801, at *5 (S.D.N.Y. Sept. 10, 2012) ("[T]he accepted method of calculating lost profits is to deduct overhead expenses and costs to calculate net profits.") (quoting <u>Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.</u>, 630 F. Supp. 2d 255, 262-63 (E.D.N.Y. 2008)); <u>GTFM, Inc. v. Solid Clothing Inc.</u>, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2011) ("Lost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue"). On the strength of this prevailing case law, QKD asked for:

- "[d]ocuments sufficient to identify how many bottles of 5 Hour Energy were scrapped or otherwise destroyed, by, or at the direction of, Plaintiffs in 2012 for any reason, including that the product was spoiled, old or otherwise" (Doc. Request No. 7);
- "[d]ocuments sufficient to identify how much Plaintiffs spent on product liability insurance for 2012" (Doc. Request No. 8); and
- "[d]ocuments sufficient to identify how International IP Holdings LLC was compensated in 2012 by Innovation Ventures pursuant to any license agreements" (Doc. Request No. 9).

All of these requests go directly to Plaintiffs' overhead costs[2] And Plaintiffs acknowledge that these costs are significant. Just by way of example, Plaintiffs' 30(b)(6) witness, Matthew

---

[2] Plaintiffs have objected to Document Request No. 9 on the basis that "there can be no doubt that collectively, [Plaintiffs have] statutory standing to enforce all of the . . . claims asserted in the instant suit." The purpose of this request was not to elicit information regarding standing.



Dolmage testified that Plaintiffs' costs for product liability insurance were not reflected in documents previously produced by Plaintiffs and purporting to show indicate "full costs," and that those costs could be as high as $1,000,000.  (See Dolmage Tr. at 290-92.)  Plaintiffs have refused to produce responsive documents, citing in support (1) a breach of contract case interpreting Pennsylvania state law, and (2) a Western District of North Carolina case interpreting the law of contract damages.  Neither case has any authoritative value here.  Lanham Act case law in the Second Circuit, which Plaintiffs have not even attempted to distinguish (indeed, it is not distinguishable) demands that QKD's document requests going to overhead expenses be answered.

**Information Regarding Alleged Damages to Plaintiffs' Brand and Good Will:**  In late November, 2013, Plaintiffs' counsel invited QKD to prepare a formal stipulation memorializing Plaintiffs' agreement not to seek from QKD in this litigation any damages in connection with injury to their brand or loss of good will.  QKD prepared such a stipulation in early December, 2013.  Plaintiffs did not get back to QKD until February 28, 2014 (nearly three months later), and when they did, they insisted on reserving their rights to introduce evidence of such damages at summary judgment and trial.  Yet, they still refuse to answer QKD's Interrogatory Nos. 15 and 16, which ask Plaintiffs to "[i]dentify in dollars all damages to Plaintiffs' brands caused by, or attributable to, QKD," and "[i]dentify in dollars all damages to Plaintiffs' good will caused by, or attributable to QKD," respectively.  If Plaintiffs are going to insist on introducing this evidence at summary judgment or trial – despite it being patently irrelevant in light of Plaintiffs' agreement not to seek such damages – QKD must be permitted to obtain that evidence.

**Documents Produced in the California Action:**  While not sought in a formal document request, QKD has asked Plaintiffs to produce to it all documents it previously produced in the now-consolidated Innovation Ventures, et al. v. Pittsburgh Wholesale Grocers, Inc., et al., 13-cv-6397 (the "California Action") (see Docket No. 680).  Plaintiffs have demurred, stating that it is unaware of "any obligations" that would require such production.  Regardless, courts routinely order such relief.  See, e.g., Many Amazing Ideas, Inc. v. Drybranch, Inc., 91-cv-4822, 1992 U.S. Dist. LEXIS 8745 (S.D.N.Y. June 23, 1992) (consolidating actions and ordering that "[e]ach party shall make available to any other party, upon request . . . any discovery materials . . . heretofore produced or received by that party in any case".  And that relief is necessary here.  The parties to the California Action are part of the same alleged scheme to manufacture and distribute counterfeit 5 Hour Energy®.  To allow Plaintiffs to withhold information they produced in that action would leave defendants in the New York action at a severe disadvantage, particularly where Plaintiffs have indicated that they plan to prove liability by showing how the alleged counterfeit product moved from one defendant to the next (some of which were in the California Action, and others of which are in the New York action).  Furthermore, Plaintiffs have not indicated that any prejudice would befall them if they were ordered to produce such documents.  Indeed, defendants suspect that Plaintiffs intend to use at least some of those documents to prove its claims in this case.

---

Rather, it is well-established that "each individual plaintiff would have to prove his or her own damages."  Charron v. Pinnacle Group NY LLC, 874 F. Supp. 2d 179, 199 (S.D.N.Y.).  Any payments made between one plaintiff entity and another could constitute overhead costs, which makes this request relevant to lost profits.



Magistrate Judge Roanne L. Mann                                    April 3, 2014
Page 4

Respectfully submitted,

Anthony J. Viola

cc: To All Counsel of Record (via e-mail)

AM 29947986.1