```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,                          **MEMORANDUM AND ORDER**

              Plaintiffs,                  12-CV-5354 (KAM) (RLM)

      -against-

ULTIMATE ONE DISTRIBUTING CORP.,
et al.,

              Defendants.
----------------------------------
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,
                                           13-CV-6397 (KAM) (RLM)
              Plaintiffs,

      -against-
PITTSBURG WHOLESALE GROCERS, INC.,
et al.,
              Defendants.
---------------------------------X
```
**MATSUMOTO, United States District Judge**:

Plaintiffs Innovation Ventures, LLC; Living Essentials, LLC; and International Holdings, LLC (collectively, "Living Essentials") brought this consolidated action against dozens of businesses and individuals allegedly involved the manufacture, sale, and distribution of counterfeit 5-hour ENERGY. (*See generally* ECF No. 291, Seventh Amended Complaint filed 12/28/12.) Among the named defendants are Capital Sales Company, Ltd ("CSC"), Dan-Dee Company, Inc. ("Dan-Dee") and Dan-Dee's officers and co-owners, Kevin Attiq and Fadi Attiq. (*Id.*)

Pending before the court are cross-motions for partial summary judgment filed by CSC and Fadi Attiq. CSC moves for summary judgment on its cross-claims against Dan-Dee, Kevin Attiq, and Fadi Attiq (collectively, the "Dan-Dee Defendants") for breach of statutory warranties under the Uniform Commercial Code, unjust enrichment, intentional misrepresentation, negligence, and negligent misrepresentation. (*See* ECF No. 830, CSC's Memorandum of Law in Support of Summary Judgment ("CSC Mem.").) Fadi Attiq, in his individual capacity, moves for summary judgment on all of CSC's cross-claims. (*See* ECF No. 862, Fadi Attiq's Memorandum of Law in Support of Summary Judgment ("Attiq Mem.").) For the reasons set forth below, the parties' cross-motions are granted in part and denied in part.

## BACKGROUND

The background of this case is comprehensively described in the court's Memorandum and Order dated March 31, 2016. (*See* ECF No. 886, Mem. and Order.) The court sets forth below only those facts relevant to the present motion.

I. **Procedural History**

On October 25, 2012, Living Essentials commenced this action, captioned *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.* ("*Ultimate* Action") in this court. In its initial complaint, Living Essentials, the owners of 5-hour ENERGY, alleged that more than twenty defendants had sold

counterfeit 5-hour ENERGY in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, the Copyright Act of 1976, 17 U.S.C. § 106, New York state law and common law. (*See* U.A. No. 1, Compl. filed 10/25/12.)  The *Ultimate* Action grew to include sixty-nine defendants, including CSC.  (*See* U.A. No. 291, Seventh Am. Compl. filed 12/28/12.)

On October 26, 2012, Living Essentials filed the action captioned *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al.* ("*Pittsburg* Action"), in the United States District Court for the Northern District of California.  In its initial complaint in the *Pittsburg* Action, Living Essentials alleged substantially the same claims as in the *Ultimate* Action against sixteen defendants based in California, including the Dan-Dee Defendants.  (*See* P.A. No. 1, Compl. filed 10/26/12.)

A number of defendants in the *Ultimate* Action then impleaded Dan-Dee and its principals as third-party defendants in the *Ultimate* Action.  (*See* U.A. Nos. 390, 473, 535, 580.)  In turn, the Dan-Dee Defendants impleaded a number of defendants from the *Ultimate* Action as third-party defendants in the *Pittsburg* Action.  (*See* P.A. No. 162, Am. Third-Party Compl. filed 1/23/12.)

While the *Ultimate* and *Pittsburg* actions were pending, CSC filed suit against the Dan-Dee Defendants in Michigan state

3

court.  On April 9, 2013, the Dan-Dee Defendants removed that case to the United States District Court for the Eastern District of Michigan.  On May 17, 2013, CSC filed an amended complaint against the Dan-Dee Defendants in the Eastern District of Michigan, asserting six causes of action: (1) unjust enrichment; (2) breach of the implied warranty of merchantability pursuant to U.C.C. § 2-314; (3) breach of the implied warranty of fitness for a particular purpose pursuant to U.C.C. § 2-315; (4) intentional misrepresentation; (5) negligence; and (6) negligent misrepresentation.  (*See* Docket No. 2:13-cv-116, ECF No. 830-1, First Amended Complaint.)  Upon a motion filed by Dan-Dee, the Eastern District of Michigan transferred the CSC action to this district.  On July 31, 2013, this court consolidated CSC's action with the *Ultimate* Action.  (*See* Docket No. 13-cv-3542, Order to Consolidate Cases dated 7/31/13.)  The consolidation order specified that CSC's complaint against the Dan-Dee Defendants would be considered a third-party complaint in the *Ultimate* Action.  (*Id.*)

On November 15, 2013, the Northern District of California transferred the *Pittsburg* Action to this district. (P.A. No. 530, Order Granting Mot. to Change Venue dated 11/15/13.)  On March 3, 2014, the court granted a joint request from plaintiffs and the Dan-Dee defendants to consolidate the *Ultimate* Action and the *Pittsburg* Action.  (ECF No. 680.)

## II. Undisputed Material Facts

The following facts are taken from the parties' Local Civil Rule 56.1 statements and have not been specifically disputed with admissible evidence unless otherwise indicated. References to paragraphs of the parties' Rule 56.1 statements include materials cited therein and annexed thereto.

CSC is a Michigan-based wholesaler of consumer products. (ECF No. 830, CSC's Rule 56.1 Statement of Undisputed Material Facts ("CSC 56.1") ¶ 1.) Dan-Dee is a California-based wholesaler of grocery products and operates a "cash-and-carry" wholesale warehouse in Spring Valley, California. (ECF No. 869-1, Dan-Dee's Rule 56.1 Statement of Additional Undisputed Material Facts ("Dan-Dee Add'l 56.1") ¶ 1.) Fadi Attiq is the president and co-owner of Dan-Dee. (CSC 56.1 ¶ 5.) Kevin Attiq is a Dan-Dee co-owner and officer. (CSC 56.1 ¶ 6.)

Both CSC and Dan-Dee are merchants that bought and sold 5-hour ENERGY in 2012. (CSC ¶¶ 13-14; Dan-Dee Add'l 56.1 ¶¶ 45-46.) On September 11, 2012, CSC purchased 627 cases of 5-hour ENERGY from Dan-Dee. (CSC 56.1 ¶ 13.) On October 12, 2012, CSC purchased another 1,024 cases of 5-hour ENERGY from Dan-Dee. (*Id.*) CSC paid Dan-Dee a total of $468,342 for these purchases, and also incurred shipping fees. (CSC 56.1 ¶ 14.) The purchase amounts and prices are evidenced by contemporaneous invoices sent by Dan-Dee to CSC. (*See* ECF No. 830-6, Dan-Dee

5

Invoice dated 9/11/12; ECF No. 830-7, Dan-Dee Invoice dated 10/15/12.)

On November 8, 2012, CSC received notice that all 1,651 cases (356,616 bottles) of 5-hour ENERGY that it purchased from Dan-Dee were counterfeit. (CSC 56.1 ¶ 15.) After receiving notice, CSC turned over to Living Essentials all of the counterfeit 5-hour ENERGY in its possession. (CSC 56.1 ¶ 17.)[1] It is undisputed that Dan-Dee has not reimbursed CSC for any of the counterfeit 5-hour ENERGY that CSC purchased. (CSC 56.1 ¶ 18.)

## **DISCUSSION**

CSC moves for summary judgment on all six of its cross-claims against the Dan-Dee Defendants.[2] Fadi Attiq cross moves for summary judgment on all of CSC's cross-claims.

---

[1] The number of counterfeit 5-hour ENERGY bottles Living Essentials recovered from CSC has not been established. Dan-Dee's expert estimates that Living Essentials recovered 281,812 out of 356,616 bottles. (*See* ECF No. 872-3, Declaration of Robert A. Taylor dated 1/5/15 at ¶ 7.) According to Dan-Dee, "approximately 74,804 bottles of the Accused Product [that CSC] purchased from Dan-Dee are unaccounted for and were, presumably, sold to [CSC's] downstream customers." (ECF No. 869-1, Dan-Dee's Response to CSC's Rule 56.1 Statement of Undisputed Material Facts ("Dan-Dee 56.1") ¶ 17.)

[2] In its reply brief in support of summary judgment, CSC argues the Dan-Dee Defendants "are further liable to Capital Sales Company pursuant to U.C.C. § 2-312(3)," which provides a warranty of non-infringement. (*See* ECF No. 831, CSC's Reply in Support of Summary Judgment, at 5.) The court will not consider this claim because it was not alleged in CSC's First Amended Complaint. *See Allah v. Poole*, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) ("It is well established, however, that a memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint.").

6

**I.  Summary Judgment Standard**

"Summary judgment is appropriate where there is no genuine dispute as to any material fact and the record as a whole indicates that no rational factfinder could find in favor of the non-moving party."  *Graves v. Finch Pruyn & Co.,* 353 F. App'x 558, 560 (2d Cir. 2009) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004)).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) (quotation marks omitted).  "A fact is material when it might affect the outcome of the suit under governing law."  *Id.* (internal quotation marks omitted).  Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried."  *Ying Jing Gan*

7

*v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Anderson,* 477 U.S. at 248. The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan*, 996 F.2d at 532–33 (citations omitted).

The standard is the same when cross motions for summary judgment are made. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *3 (E.D.N.Y. Mar. 24, 2014). The court must examine each party's motion independently, and "in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121 (citation omitted).

II. **Choice of Law**

In a diversity case, a district court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). But where, as here, a case is transferred from a court in one state to a court in another state, the choice of law rules of the transferor court will apply. *Van Dusen v. Barrack*, 376 U.S. 612

8

(1964). The United States District Court for the Eastern District of Michigan transferred CSC's action to this court pursuant to 28 U.S.C. § 1404(a). Michigan choice-of-law rules therefore govern CSC's third-party claims. Michigan courts determine choice-of-law as follows:

> [A Michigan court] will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Serv., Ltd.,* 562 N.W.2d 466, 471 (Mich. 1997) (citations omitted).[3] "If the court determines that the foreign state has an interest in applying its own law, the court must consider what those interests are and balance them against Michigan's own interests, taking into account other factors such as the need for certainty and predictability and

---

[3] The *Sutherland* choice-of-law analysis applies to tort claims. CSC has alleged a mixture of contract-based and tort-based claims against Dan-Dee. With respect to CSC's contract-based warranty claims, there is not a material difference among California, Michigan, and New York laws because all three states have adopted the Uniform Commercial Code. The court "need not embark on a choice-of-law analysis in the absence of an actual conflict between the applicable rules of . . . the relevant jurisdictions." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 325 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). For the sake of uniformity, the court will apply the law applicable to CSC's tort claims to its contract claims.

9

the prevention of forum shopping." *Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998) (citing *Aetna Cas. & Surety Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1110 (E.D. Mich. 1995)). "Michigan will allow its law to yield to another law when there is a 'rational reason' to do so, including if the foreign state's interests substantially outweigh Michigan's interest in the litigation." *Id.* (citing *Isley v. Capuchin Province*, 878 F. Supp. 1021, 1023 (E.D. Mich. 1995)).

New York and California are the only two foreign jurisdictions that potentially have an interest in having their law applied to CSC's cross-claims. CSC contends New York law should apply because Dan-Dee moved to transfer this action from the Eastern District of Michigan to this district and therefore "asked for" New York law. (CSC Mem. at 9.) Alternatively, CSC argues Michigan law should apply because CSC is a Michigan company and "the transactions giving rise to the CSC claims substantially took place in Michigan." (*Id.*) The Dan-Dee Defendants seek the application of California law because Dan-Dee is a California company and "CSC knew it was purchasing the Accused Product from California." (Dan-Dee Opp. at 11.) Dan-Dee also argues it would be prejudiced by application of New York or Michigan law because those states recognize a cause of action for unjust enrichment (i.e., CSC's first claim in its

10

First Amended Complaint) while California does not. (*Id.* at 12.)

As an initial matter, New York does not have a strong interest in having New York law applied because neither CSC nor Dan-Dee is based in New York and the alleged injury did not occur in New York. Dan-Dee's motion to transfer this action from the Eastern District of Michigan to this court was a procedural maneuver that is not relevant to the "interests" analysis under Michigan choice-of-law rules.

California does have an interest in the application of California law because Dan-Dee is a California company and its principals, Fadi and Kevin Attiq, reside there. However, Dan-Dee's interest in California law does not "substantially outweigh" Michigan's clear interest in applying its own law to this matter. CSC is based in Michigan. Perhaps most significantly, the underlying events giving rise to CSC's action (CSC's purchases of counterfeit 5-hour ENERGY) and CSC's alleged injuries, occurred in Michigan. Dan-Dee's contention that it would be "greatly prejudiced" by Michigan law because Michigan recognizes a cause of action for unjust enrichment is unavailing. CSC would be equally prejudiced by the unavailability of a cause of action for unjust enrichment under California law. The "interests" analysis weighs in favor of applying Michigan law to CSC's cross-claims.

11

**III. Personal Liability**

CSC seeks to hold Kevin and Fadi Attiq personally liable, arguing that Fadi and Kevin Attiq were the "moving, active, conscious forces behind [Dan-Dee's] infringement." (CSC Mem. at 9-10.) As the Dan-Dee Defendants point out, however, the "moving, active, conscious force" standard for personal liability applies to Lanham Act infringement claims. (Dan-Dee Opp. at 13-14.) CSC's motion, by contrast, seeks to hold Fadi and Kevin personally liable for claims based on state law. The "moving, active, conscious force" standard is therefore inapplicable to CSC's claims against Kevin and Fadi Attiq. CSC's summary judgment motion offers no other legal or factual basis in support of their motion to hold Kevin and Fadi Attiq personally liable on CSC's state law claims. Accordingly, CSC's motion for summary judgment on its state law claims against Kevin and Fadi Attiq is denied. The court will proceed to consider CSC's motion for summary judgment as it relates to Dan-Dee Company.

**IV. U.C.C. Statutory Warranties**

CSC seeks summary judgment against Dan-Dee on its cross-claims under the Uniform Commercial Code for breach of the implied warranty of merchantability (U.C.C. § 2-314) and breach of the implied warranty of fitness for a particular purpose

12

(U.C.C. § 2-315). Dan-Dee does not oppose CSC's motion for summary judgment on these breach of warranty claims.[4]

### A. Implied Warranty of Merchantability

Under Michigan law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MCL § 440.2314(1). A merchant is defined as "a person that deals in goods of the kinds or otherwise by the person's occupation holds itself out as having knowledge or skill particular to the practices or goods involved in the transaction." MCL § 440.2104. The implied warranty of merchantability provides that "[g]oods to be merchantable must be as least . . . fit for the ordinary purposes for which such goods are used." MCL § 440.2314(2)(c).

Here, CSC has established that: (1) CSC and Dan-Dee are merchants that regularly dealt in 5-hour ENERGY; (2) CSC purchased 356,616 bottles of what Dan-Dee sold as 5-hour ENERGY; (3) invoices sent from Dan-Dee to CSC reflect the material terms of CSC's purchases; and (4) all 356,616 bottles of 5-hour ENERGY that CSC purchased were counterfeit. Consequently, the counterfeit 5-hour ENERGY bottles Dan-Dee sold to CSC were unfit

---

[4] Although Dan-Dee raises a general objection that all of CSC's claims are not ripe for summary judgment (Dan-Dee Opp. at 9), Dan-Dee does not specifically oppose CSC's breach of warranty claims.

13

for their ordinary purpose.  In the absence of any genuine issue of material fact, or any opposition from Dan-Dee, CSC is entitled to summary judgment on its claim for breach of the implied warranty of merchantability.[5]

**B.    Implied Warranty of Fitness for a Particular Purpose**

Section 440.2315 of the Michigan Uniform Commercial Code provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

MCL § 440.2315.  The Official Comment to § 440.2315 states that "[a] particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."  *Id.* cmt. 2.  Here, CSC has not established that it purchased 5-hour ENERGY from Dan-Dee

---

[5] On the current record, factual disputes regarding the number of counterfeit bottles CSC may have resold preclude a determination of determination of damages.  (*See* Footnote 1, supra.)

14

for a specific use "peculiar to the nature of [its] business."

The record evidence shows that CSC is a commercial wholesaler that purchased 5-hour ENERGY for the purpose of reselling it. Where, as here, "[t]here is nothing in plaintiff's complaint or in the [record] that would suggest that plaintiff intended to use the [product] for something other than the ordinary purpose for which such [products] were used," an implied warranty of fitness claim cannot succeed. *Maeder Bros. Quality Wood Pellets, Inc. v. Hammond Drives & Equip., Inc.*, No. 320362, 2015 WL 1650814, at *6 (Mich. Ct. App. Apr. 14, 2015) (affirming trial court's grant of summary judgment to seller on buyer's claim for breach of the implied warranty of fitness where "the buyer was using the goods for the ordinary purpose for which they were intended"). Accordingly, the court denies CSC's motion for summary judgment against Dan-Dee on its claim for breach of the implied warranty of fitness for a particular purpose.

**V.  Unjust Enrichment**

CSC seeks summary judgment on its claim for unjust enrichment based on Dan-Dee's refusal to reimburse CSC for counterfeit 5-hour ENERGY that CSC was unable to resell. Generally, a plaintiff may establish unjust

15

enrichment by proving: "(1) the defendant received a benefit from the plaintiff, and (2) an inequity will result because of the defendant's retention of the benefit." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993). However, "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 179 (6th Cir. 1996) (applying Michigan law). In this case, it is undisputed that the parties' course of dealing and detailed invoices established contracts for the sale of 5-hour ENERGY. Dan-Dee is liable for breach of the implied warranty of merchantability. In light the U.C.C. remedies available to CSC for that breach of warranty, there is no basis to find unjust enrichment. CSC's summary judgment motion on this claim is denied.

**VI. CSC's Tort Claims**

CSC's remaining claims are based in tort: negligence, negligent misrepresentation, and intentional misrepresentation. These claims, which essentially allege that Dan-Dee failed to comply with the parties' contractual agreement, are precluded by the economic loss doctrine.

16

The economic loss doctrine provides that "[w]here a plaintiff seeks to recover only for economic injuries caused by a defective product purchased for commercial purposes, contract principles, as supplied by the U.C.C., provide the exclusive remedy for such a claim." *Convergent Grp. Corp. v. Cty. of Kent*, 266 F. Supp. 2d 647, 659 (W.D. Mich. 2003) (applying Michigan law and dismissing fraud claim "because it simply alleges economic injury based upon [seller's] failure to comply with its contractual obligations"). The Michigan Supreme Court "adopted the economic loss doctrine specifically in the context of contracts for the sales of goods." *Id.* at 660.

Summary judgment is denied as to CSC's tort claims because those claims are entirely based on Dan-Dee's contractual obligations. Fadi Attiq's cross-motion for summary judgment on CSC's foregoing tort claims is granted.

**CONCLUSION**

For the foregoing reasons, CSC's motion for summary judgment against Dan-Dee is granted as to its claim for breach of the implied warranty of merchantability. CSC's motion is otherwise denied. Fadi Attiq's motion for summary judgment is granted as to CSC's claims for negligence, negligent misrepresentation, and intentional misrepresentation.

**SO ORDERED.**

Dated:  March 31, 2016
        Brooklyn, New York

                                          _____/s/_____
                                          **KIYO A. MATSUMOTO**
                                          United States District Judge