```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,                          **MEMORANDUM AND ORDER**

                Plaintiffs,                12-CV-5354 (KAM) (RLM)

     -against-

ULTIMATE ONE DISTRIBUTING CORP.,
et al.,

                Defendants.
----------------------------------
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,

                Plaintiffs,


     -against-                             13-CV-6397 (KAM) (RLM)

PITTSBURG WHOLESALE GROCERS, INC.,
et al.,

                Defendants.
----------------------------------X
```

**MATSUMOTO, United States District Judge:**

Plaintiffs Innovation Ventures, LLC; Living Essentials, LLC; and International Holdings, LLC (collectively, "Living Essentials") brought this consolidated action against dozens of businesses and individuals allegedly involved the manufacture, sale, and distribution of counterfeit 5-hour ENERGY. (*See generally* ECF No. 291, Seventh Amended Complaint ("Seventh Am. Compl.") filed 12/28/12.) Among the named

defendants are Food Distributors International, Inc. ("FDI"), Purity Wholesale Grocers, Inc. ("Purity"), Dan-Dee Company, Inc. ("Dan-Dee"), and Tradeway International, Inc. d/b/a Baja Exporting ("Baja").[1]  (*Id.*)

Pending before the court are three motions for partial summary judgment on cross-claims that FDI and Purity (collectively, "Cross-Claimants") asserted in this action.  FDI moves for partial summary judgment on its breach of warranty cross-claims against Baja (ECF No. 847, FDI Memorandum in Support of Summary Judgment Against Baja ("FDI/Baja Mem.")) and its breach of warranty cross-claims against Dan-Dee (ECF No. 849, FDI Memorandum in Support of Summary Judgment Against Dan-Dee ("FDI/Dan-Dee Mem.")).  Purity moves for partial summary judgment on its breach of warranty cross-claims against Baja. (ECF No. 843, Purity Memorandum in Support of Summary Judgment Against Baja ("Purity Mem.").)  FDI and Purity are represented by the same counsel and present essentially identical arguments in support of partial summary judgment on their cross-claims. For the following reasons, their motions are granted in part and denied in part.

---

[1] Living Essentials has settled its claims against Baja and Dan-Dee.

**BACKGROUND**

The background of this case is comprehensively described in the court's Memorandum and Order dated March 31, 2016. (*See* ECF No. 886, Mem. and Order.) The court sets forth below only those facts relevant to the present motions.

I. **Procedural History**

On October 25, 2012, Living Essentials commenced this action, captioned *Innovation Ventures, et al. v. Ultimate One Distributing Corp., et al.* ("*Ultimate* Action") in this court. In its initial complaint, Living Essentials, the owner of 5-hour ENERGY, alleged that more than twenty defendants had sold counterfeit 5-hour ENERGY in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, the Copyright Act of 1976, 17 U.S.C. § 106, New York state law and common law. (*See* U.A. No. 1, Compl. filed 10/25/12.) The *Ultimate* Action grew to include sixty-nine defendants. (*See* U.A. No. 291, Seventh Am. Compl.)

On October 26, 2012, Living Essentials filed the action captioned *Innovation Ventures, et al. v. Pittsburg Wholesale Grocers Inc., et al.* ("*Pittsburg* Action"), in the United States District Court for the Northern District of California. In its initial complaint in the *Pittsburg* Action, Living Essentials alleged substantially the same claims as in the *Ultimate* Action against sixteen defendants based in

California, including the Dan-Dee Defendants. (*See* P.A. No. 1, Compl. filed 10/26/12.)

A number of defendants in the *Ultimate* Action then impleaded Dan-Dee and its principals as third-party defendants in the *Ultimate* Action. (*See* U.A. Nos. 390, 473, 580.) In turn, the Dan-Dee Defendants impleaded a number of defendants from the *Ultimate* Action as third-party defendants in the *Pittsburg* Action. (*See* P.A. No. 162, Am. Third-Party Compl. filed 1/23/12.)

On November 15, 2013, the United States District Court for the Northern District of California transferred the *Pittsburg* Action to this district. (P.A. No. 530, Order Granting Mot. to Change Venue dated 11/15/13.) On March 3, 2014, the court granted a joint request from plaintiffs and Dan-Dee to consolidate the *Ultimate* Action and the *Pittsburg* Action. (ECF No. 680.)

On April 26, 2013, FDI filed its cross-claims against Dan-Dee and its co-owner, Kevin Attiq,[2] in the *Ultimate* Action. (ECF No. 535, FDI's Cross-Claims Against Dan-Dee Company and Kevin Attiq ("FDI/Dan-Dee Cross-Claim").) Dan-Dee and Kevin Attiq answered FDI's cross-claims on May 3, 2013. (ECF No. 556.)

---

[2] FDI has not moved for summary judgment on its claims against Kevin Attiq. (*See* FDI/Baja Mem. at 3 (stating "[Kevin] Attiq's personal liability is a trial issue").)

FDI also filed cross-claims against Baja on April 26, 2013. (ECF No. 536, FDI Cross-Claims Against Baja ("FDI/Baja Cross-Claim").) Baja answered FDI's cross-claims on October 23, 2014. (ECF No. 792.)

On January 30, 2013, Purity answered Living Essentials' Seventh Amended Complaint in the *Ultimate* Action and asserted cross-claims against Baja. (ECF No. 350, Purity's Answer to Seventh Amended Complaint and Cross-Claims ("Purity/Baja Cross-Claims").) Baja answered Purity's cross-claims on December 18, 2013. (ECF No. 649.)

FDI and Purity assert the same six grounds for recovery in their respective cross-claims: (1) breach of contract; (2) breach of the implied warranty of merchantability (U.C.C. § 2-314); (3) breach of the implied warranty of fitness for a particular purpose (U.C.C. § 2-315); (4) breach of warranty of title and against infringement (U.C.C. § 2-312(3)); (5) common law indemnification; and (6) "fraud and deceit." (FDI/Dan-Dee Cross-Claim at 3-4; FDI/Baja Cross-Claim at 3-4; Purity/Baja Cross-Claim at 13-14.) FDI and Purity have moved for partial summary judgment on their cross-claims for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of warranty of title and against infringement.

5

## II. Undisputed Material Facts

The following facts are taken from the parties' Local Civil Rule 56.1 statements and have not been specifically disputed with admissible evidence unless otherwise indicated. References to paragraphs of the parties' Rule 56.1 statements include materials cited therein and annexed thereto.

### A. FDI

FDI is a Florida corporation that buys, sells, trades, markets, and otherwise deals in grocery items and consumer products. (ECF No. 847-2, FDI's Rule 56.1 Statement of Undisputed Material Facts as to Baja ("FDI/Baja 56.1") ¶¶ 2-3; ECF No. 849-2, FDI's Rule 56.1 Statement of Undisputed Material Facts as to Dan-Dee ("FDI/Dan-Dee 56.1") ¶¶ 2-3.) Between September 2012 and October 2012, FDI purchased from Baja at least 1,928 cases[3] of what Baja sold as 5-hour ENERGY, for a total price of $540,552. (FDI/Baja 56.1 ¶ 7; ECF No. 870-4, Baja's Response to FDI's Rule 56.1 Statement of Undisputed Material Facts ("Baja 56.1") ¶ 7.) FDI's purchase orders, and invoices sent from Baja to FDI, evidence these transactions. (*See* ECF No. 847-4, Declaration of Martin Saperstein dated 10/24/14, at Ex. G.) Prior to and during its sales to FDI, Baja

---

[3] FDI asserts that Baja sold FDI 1,938 cases of counterfeit 5-hour ENERGY, while Baja admits that it sold 1,928 cases. (FDI/Baja 56.1 ¶ 7; Baja 56.1 ¶ 7.)

6

was a merchant that regularly dealt in 5-hour ENERGY products. (FDI/Baja 56.1 ¶ 12.) It is undisputed that all of the cases FDI purchased from Baja between September 2012 and October 2012 contained counterfeit bottles of 5-hour ENERGY. (FDI/Baja 56.1 ¶ 11.) FDI later re-sold all of the counterfeit 5-hour ENERGY bottles it purchased from Baja to another defendant in this action, Quality King Distributors, Inc ("Quality King"). (FDI/Baja 56.1 ¶ 8.)

Dan-Dee is a California-based merchant that regularly dealt in 5-hour ENERGY products. (FDI/Dan-Dee 56.1 ¶ 12.) Between July 2012 and October 2012, FDI purchased from Dan-Dee 2,298 cases of what Dan-Dee sold as 5-hour ENERGY, for a total price of $633,330. (ECF No. 849-2, FDI's Rule 56.1 Statement of Undisputed Material Facts as to Dan-Dee ("FDI/Dan-Dee 56.1") ¶ 7.) Purchase orders sent from FDI to Dan-Dee confirm these purchases. (ECF No. 849-4, Declaration of Martin Saperstein dated 10/24/14, Ex. F.) All of the cases FDI purchased from Dan-Dee between July 2012 and October 2012 contained counterfeit bottles of 5-hour ENERGY. (FDI/Dan-Dee 56.1 ¶ 11.) FDI later re-sold 2,130 of these cases to Quality King. (FDI/Dan-Dee 56.1 ¶ 8.)

B. **Purity**

Purity is an Illinois corporation with a principal place of business in Boca Raton, Florida that buys, sells,

7

trades, markets, and otherwise deals in grocery items and consumer products. (ECF No. 843-2, Purity's Rule 56.1 Statement of Undisputed Material Facts ("Purity 56.1") ¶ 1.) Between August 2012 and September 2012, Purity purchased from Baja 1,262 cases of what Baja sold as 5-hour ENERGY, for a total price of $354,740. (Purity 56.1 ¶ 7.) Purchase orders sent from Purity to Baja confirm these purchases. (*See* ECF No. 843-2, Declaration of Martin Saperstein dated 10/24/14, Ex. E.) It is undisputed that all 1,262 cases of 5-hour ENERGY that Purity purchased from Baja between August 2012 and September 2012 were counterfeit. (Purity 56.1 ¶ 11.) FDI re-sold all of these cases of counterfeit 5-hour ENERGY to another defendant in this action, Core-Mark International, Inc. (Purity 56.1 ¶ 8.)

## DISCUSSION

### I. Summary Judgment Standard

"Summary judgment is appropriate where there is no genuine dispute as to any material fact and the record as a whole indicates that no rational factfinder could find in favor of the non-moving party." *Graves v. Finch Pruyn & Co.,* 353 F. App'x 558, 560 (2d Cir. 2009) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) (quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." *Id.* (internal quotation marks omitted). Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993) (citation omitted). "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Anderson,* 477 U.S. at 248. The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan*, 996 F.2d at 532-33 (citations and quotation marks omitted).

9

## II. Choice of Law

The parties primarily cite New York law in their memoranda and do not identify a relevant conflict among the laws of California, Florida, and New York. The court has independently reviewed Cross-Claimants' breach of warranty claims under California, New York, and Florida law and finds there is not a material conflict because all three states have adopted the Uniform Commercial Code. The court "need not embark on a choice-of-law analysis in the absence of an actual conflict between the applicable rules of . . . the relevant jurisdictions." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 325 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Given the parties' reliance on New York law, the court will apply New York law to the pending motions. *See Amusement Ind., Inc. v. Stern*, 693 F.Supp.2d 319, 324 (S.D.N.Y. 2010) ("Because the parties relied on New York law in their memoranda of law, however, they have implicitly consented to having New York law apply.")

## III. Warranty of Non-Infringement

Cross-Claimants argue they are entitled to summary judgment on their cross-claims for breach of the warranty of non-infringement. Section 2-312 of the New York Uniform Commercial Code provides, in relevant part:

10

> Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like, but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

N.Y. U.C.C. § 2-312(3). The Official Comment to § 2-312(3) states: "When goods are part of the seller's normal stock and sold in the normal course of business, it is his duty to see that no claim of infringement of a patent or trademark by a third party will mar the buyer's title." *Id*. cmt. 3. Cross-Claimants contend that, by selling counterfeit 5-hour ENERGY subject to claims of trademark infringement by Living Essentials, Baja and Dan-Dee breached the U.C.C. warranty of non-infringement.

To establish a breach of the warranty of non-infringement under § 2-312(3), "the plaintiff buyer must show that the seller: (1) was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of any third party upon delivery; (3) the buyer did not furnish specifications to the seller; and (4) the parties did not form another agreement" that relieved the seller of the warranty. *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 777 F. Supp. 2d 454, 461 (E.D.N.Y. 2011), *vacated on other grounds*, 720 F.3d 71 (2d Cir. 2013); *see also*

*Inc. v. Sony Elecs., Inc.,* 637 F. Supp. 2d 683, 693 (N.D. Ca. 2009) (setting forth the same elements to establish breach of warranty of non-infringement); *84 Lumber Co. v. MRK Technologies, Ltd.,* 145 F.Supp.2d 675, 678-79 (W.D. Pa. 2001) (mentioning the first three elements as required under § 2-312(3)).

Here, there is no dispute that FDI has established all four elements as to both Baja and Dan-Dee: (1) Baja and Dan-Dee are merchants that regularly dealt in 5-hour ENERGY (*see* FDI/Baja 56.1 ¶ 12; FDI/Dan-Dee 56.1 ¶ 12); (2) FDI was subject to rightful a claim of trademark infringement by Living Essentials for selling counterfeit 5-hour ENERGY purchased from Baja and Dan-Dee (*see* ECF No. 886, Mem. and Order dated 3/31/16); (3) FDI did not furnish specifications for 5-hour ENERGY to Baja or Dan-Dee; and (4) FDI did not form a separate contractual agreement with Baja or Dan-Dee that modified or waived the warranty. In the absence of any genuine issue of material fact, FDI is entitled to summary judgment on its claims against Baja and Dan-Dee for breach of the statutory warranty of non-infringement.

Similarly, Purity has established that Baja breached the warranty of non-infringement: (1) Baja regularly dealt in 5-hour ENERGY before it sold to Purity (*see* Purity 56.1 ¶ 12); (2) Purity was subject to a rightful claim of trademark

12

infringement by Living Essentials for selling counterfeit 5-hour ENERGY purchased from Baja (*see* ECF No. 886, Mem. and Order dated 3/31/16); (3) Purity did not furnish specifications for 5-hour ENERGY to Baja; and (4) Purity did not form a separate agreement with Baja.  Accordingly, Purity is also entitled to summary judgment on its claim for breach of the warranty of non-infringement against Baja.

In opposing summary judgment, neither Baja nor Dan-Dee meaningfully addresses Cross-Claimants' arguments regarding their liability for breach of the U.C.C.'s warranty of non-infringement.  Instead, Baja and Dan-Dee contend that Cross-Claimants are partially at fault for purchasing counterfeit 5-hour ENERGY, and thus are not entitled to recompense.  (*See* Baja Opp. at 13-14; Dan-Dee Opp. at 11-13.)  However, the cases Baja and Dan-Dee cite regarding equitable bars to a plaintiff's recovery of damages are irrelevant because they concern common law indemnification or contribution. *See, e.g., Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 357-58 (E.D.N.Y. 2010) (discussing common law indemnification for negligence claim); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 325 (S.D.N.Y. 2010) (discussing common law indemnification in action alleging fraud against real estate investors); *Anderson v. Greyhound Lines, Inc.*, No. 06-cv-13371, 2011 WL 3480945, at *4 (S.D.N.Y. Aug. 3, 2011) (discussing "common law or implied

indemnification" for negligence); *Tokio Marine and Fire Ins. Co., Ltd. v. Grodin*, No. 05-cv-9153, 2006 WL 3054321, at *3 (S.D.N.Y. Oct. 27, 2006) (personal injury case involving common law indemnification). Here, Cross-Claimants have established Baja's and Dan-Dee's breaches of warranty pursuant to state statutory law (i.e, the Uniform Commercial Code, as adopted by New York), not common law indemnity.[4]

Cross-Claimants do not seek summary judgment regarding damages at this time. (*See,* ECF No. 849-15, FDI's Reply to Dan-Dee's Opposition to Summary Judgment ("The judgment sought is for liability, not damages.").) When damages are ripe for determination, the U.C.C. will control the scope of Cross-Claimants' recovery. "NY-UCC Sections 2-714 and 2-715 govern a buyer's remedies for a seller's breach of warranty, such as the warranty of non-infringement in Section 2-312(3)." *EZ Tag Corp. v. Casio Am., Inc.,* 861 F. Supp. 2d 181, 183 (S.D.N.Y. 2012); *see also Too Marker Products, Inc. v. Creation Supply, Inc.*, No. 3:12-CV-735, 2014 WL 3818675, at *5 (D. Or. Aug. 4, 2014) ("courts construing the U.C.C. have found §§ 2-714 and 2-715 of

---

[4] In a prior decision in this action, the court noted that "[t]he Second Circuit has clearly held that contribution and [common law] indemnification are unavailable for any loss incurred in paying a claim under the Lanham Act, because these remedies are neither provided for under the Lanham Act's extensive remedial provisions nor has federal common law been implied to allow such remedies." (*See* ECF No. 711, Memorandum and Order dated 3/28/14.)

the U.C.C. govern the remedies for an aggrieved party seeking recovery for breach of warranty").

The damages contemplated by UCC § 2-714 for breaches relating to accepted goods "are referred to as direct or general damages." *KSW Mechanical Servs. v. Johnson Controls, Inc.*, 992 F. Supp. 2d 135, 145 (E.D.N.Y. 2014). "Direct damages are typically expectation damages, measured by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract." *Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151-52 (N.Y. App. Div. 2012). Section 2-715 of the U.C.C. provides that consequential damages for a seller's breach of warranty may be recovered for "injury to person or property proximately resulting from any breach." N.Y. U.C.C. Law § 2-715(2)(b).

Baja and Dan-Dee argue that Cross-Claimants are not entitled to reimbursement of attorneys' fees and costs incurred litigating the underlying infringement action brought by Living Essentials. Although the court need not reach the issue of damages to decide the present motions, it notes that "the weight of authority in this Circuit counsels against the inclusion of attorney's fees and litigation expenses as damages for breach of warranty under Sections 2-714 and 2-715 in the absence of bad faith or contractual authorization." *EZ Tag Corp.*, 861 F. Supp.

15

2d at 183. Living Essentials has not alleged that Cross-Claimants infringed the 5-hour ENERGY trademarks in bad faith; nor is there evidence of a contract between Cross-Claimants and Baja or Dan-Dee obligating a seller to reimburse a buyer's defense costs incurred to defend an infringement suit.

## IV. Implied Warranties of Merchantability and Fitness for a Particular Purpose

Cross-Claimants also seek summary judgment with respect to their claims for breach of the implied warranty of merchantability (U.C.C. § 2-314) and breach of the implied warranty of fitness for a particular purpose (U.C.C. § 2-315). They contend, in a conclusory sentence at the end of their motions, that these U.C.C. provisions "provide additional grounds for indemnification." (FDI Mem. at 12.) However, Cross-Claimants have neither identified the elements of these claims nor demonstrated that they have been satisfied. As the parties moving for summary judgment, FDI and Purity have the initial burden to present factual and legal grounds for summary judgment on these claims and to identify those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c). Because they have not done so, Cross-Claimants' motions for summary judgment are denied as to their claims for breach of the implied warranty of

merchantability and breach of the implied warranty of fitness for a particular purpose.

## CONCLUSION

For the foregoing reasons, FDI's motions for partial summary judgment are granted on its breach of warranty of non-infringement claims against Baja and Dan-Dee, and otherwise denied. Purity's motion for partial summary judgment is granted on its breach of warranty of non-infringement claim against Baja, and otherwise denied.

**SO ORDERED.**

Dated: March 31, 2016
       Brooklyn, New York

                                             _____/s/_____
                                             **KIYO A. MATSUMOTO**
                                             United States District Judge