```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL          **MEMORANDUM AND ORDER**
IP HOLDINGS, LLC,

            Plaintiffs,                     12-CV-5354 (KAM) (RLM)

     -against-

ULTIMATE ONE DISTRIBUTING CORP.,
et al.,

            Defendants.
--------------------------------
INNOVATION VENTURES, LLC; LIVING
ESSENTIALS, LLC; and INTERNATIONAL
IP HOLDINGS, LLC,
                                            13-CV-6397 (KAM) (RLM)
            Plaintiffs,

     -against-

PITTSBURG WHOLESALE GROCERS, INC.,
et al.,
                 Defendants.
--------------------------------X
```

**MATSUMOTO, United States District Judge:**

Plaintiffs Innovation Ventures, LLC; Living

Essentials, LLC; and International Holdings, LLC (collectively,

"Living Essentials") brought this consolidated action against

dozens of businesses and individuals allegedly involved the

manufacture, sale, and distribution of counterfeit 5-hour

ENERGY.  (*See generally* ECF No. 291, Seventh Amended Complaint

filed 12/28/12.)  Among the named defendants are Quality King

Distributors, Inc. ("Quality King"),[1] Food Distributors International, Inc. ("FDI"), and FDI's owner and president, Scott Tilbrook (collectively, the "FDI Defendants").

Pending before the court are cross-motions for partial summary judgment filed by Quality King and the FDI Defendants. Quality King moves for summary judgment on it cross-claims against FDI for breach of contract, false designation of origin and false advertising under the Lanham Act, breach of statutory warranties under the Uniform Commercial Code, equitable indemnity, and common law unfair competition. (ECF No. 845, Quality King's Memorandum of Law in Support of Summary Judgment ("Quality King Mem.").)[2] The FDI Defendants move for summary judgment on Quality King's cross-claims for false designation of origin and false advertising under the Lanham Act, equitable indemnity, and common law unfair competition. (ECF No. 855-1, FDI and Scott Tilbrook's Memorandum of Law in Support of Summary Judgment ("FDI Mem.").) For the reasons set forth below, the parties' cross-motions are granted in part and denied in part.

## BACKGROUND

The background of this case is comprehensively described in the court's Memorandum and Order dated March 31,

---

[1] Living Essentials has settled its claims against Quality King.

[2] Quality King also moved for summary judgment against named defendants Universal Wholesale, Inc. and its principal, Joseph Sevany, but subsequently settled its claims against those defendants. (*See* ECF No. 882.)

2016.  (*See* ECF No. 886, Mem. and Order.)  The court sets forth

below only those facts relevant to the present motion.

## I.    Procedural History

On October 25, 2012, Living Essentials commenced this

action, captioned *Innovation Ventures, et al. v. Ultimate One*

*Distributing Corp., et al.* ("*Ultimate* Action") in this court.

In its initial complaint, Living Essentials, the owner of 5-hour

ENERGY, alleged that more than twenty defendants had sold

counterfeit 5-hour ENERGY in violation of the Lanham Act, 15

U.S.C. §§ 1114 and 1125, the Copyright Act of 1976, 17 U.S.C. §

106, New York state law and common law. (*See* U.A. No. 1, Compl.

filed 10/25/12.)  The *Ultimate* Action grew to include sixty-nine

defendants.  (*See* U.A. No. 291, Seventh Am. Compl. filed

12/28/12.)

On October 26, 2012, Living Essentials filed the

action captioned *Innovation Ventures, et al. v. Pittsburg*

*Wholesale Grocers Inc., et al.* ("*Pittsburg* Action"), in the

United States District Court for the Northern District of

California.  In its initial complaint in the *Pittsburg* Action,

Living Essentials alleged substantially the same claims as in

the *Ultimate* Action against sixteen defendants based in

California.  (*See* P.A. No. 1, Compl. filed 10/26/12.)

On February 8, 2013, Quality King filed its cross-

claims against FDI and Tilbrook in the *Ultimate* Action.  (U.A.

No. 367, Quality King's Cross-Claims ("Cross-Claims").) The FDI Defendants answered Quality King's Cross-Claims on February 26, 2013. (U.A. No. 408.) On November 15, 2013, the Northern District of California transferred the *Pittsburg* Action to this district. (P.A. No. 530, Order Granting Mot. to Change Venue dated 11/15/13.) On March 3, 2014, the court granted a joint request to consolidate the *Ultimate* Action and the *Pittsburg* Action. (U.A. No. 680.)

## II. Undisputed Material Facts

The following facts are taken from the parties' Local Civil Rule 56.1 statements and have not been specifically disputed with admissible evidence unless otherwise indicated. References to paragraphs of the parties' Rule 56.1 statements include materials cited therein and annexed thereto.

Quality King is a New York-based wholesaler of health, beauty, and grocery products. (ECF No. 846, Quality King's Rule 56.1 Statement of Undisputed Material Facts ("Quality King 56.1") ¶ 1; ECF No. 855-2, FDI Defendants Rule 56.1 Statement of Undisputed Material Facts ("FDI 56.1") at ¶¶ 1-2.) FDI is a Florida-based wholesaler of grocery products. (FDI 56.1 ¶ 4.) Scott Tilbrook is FDI's sole owner and president. (FDI 56.1 ¶ 5.)

Both Quality King and FDI were wholesalers of 5-hour ENERGY in 2012. Between August 6, 2012 and November 1, 2012,

4

Quality King purchased from FDI approximately 878,688 bottles of what FDI sold as 5-hour ENERGY, for a total price of over $1,000,000.  (Quality King 56.1 ¶ 4.)  FDI does not dispute that all of these bottles were counterfeit.  (*See* ECF No. 864-2, Living Essentials' Rule 56.1 Statement of Undisputed Facts ("LE 56.1") ¶¶ 155-56; Quality King 56.1 ¶ 15.)  Of the 878,688 counterfeit 5-hour ENERGY bottles that Quality King purchased from FDI, Quality King resold approximately 270,864 bottles to downstream retail customers.  (Quality King 56.1 ¶ 13.)  The 607,824 counterfeit bottles that Quality King did not resell were quarantined and transferred to the custody of Living Essentials during the pendency of this action.  (Quality King 56.1 ¶ 5.)  It is undisputed that Quality King paid FDI $799,266.80 for the counterfeit bottles that were unsold and quarantined.  (*Id.*)

All of Quality King's purchases from FDI between August 6, 2012 and November 1, 2012 were made pursuant to Quality King's standard form purchase order.  (Quality King 56.1 ¶ 16.)  The terms of the purchase orders ("Purchase Orders") include representations by FDI that "any and all merchandise that is the subject of this purchase order (1) was obtained by Supplier [FDI] without fraud, misrepresentation or violation of any statute, regulation, or administrative court order, (2) can lawfully be distributed in the United States in its present form

and packaging, and (3) is not the subject of any legal or contractual restriction on its resale by Supplier [FDI] to [Quality King]." (*Id.*)

In addition, on or about February 17, 2009, FDI entered into a vendor agreement with Quality King (the "Vendor Agreement") whereby FDI warranted and represented that FDI's products were genuine and not counterfeit. (Quality King 56.1 ¶ 17.) Pursuant to the Vendor Agreement, FDI agreed to indemnify Quality King for costs, expenses, losses, and attorneys' fees for any lawsuits arising out of FDI's breach of the Vendor Agreement. (Quality King 56.1 ¶ 17; ECF No. 844-3, Declaration of Andre Cizmarik dated 10/31/2014, Ex. C.)

Quality King asserts eight cross-claims against the FDI Defendants: (1) breach of contract; (2) false designation of origin under the Lanham Act; (3) false advertising under the Lanham Act; (4) breach of the warranty of non-infringement (U.C.C. § 2-312) and breach of the implied warranty of merchantability (U.C.C. § 2-314); (5) equitable (i.e., common law) indemnity; (6) equitable contribution; (7) declaratory judgment; and (8) common law unfair competition. (See Quality King's Cross-Claims at ¶¶ 24-51.) In its opposition to the FDI Defendants' summary judgment motion, Quality King states it is no longer pursuing its cross-claims against FDI and Tilbrook for contribution and a declaratory judgment. (ECF No. 858, Quality

King's Opposition to FDI Defendants' Motion for Summary Judgment

("Quality King Opp.") at 1 n.1.) Nor is Quality King pursuing

its cross-claims against Scott Tilbrook, individually, for breach

of contract and breach of U.C.C. statutory warranties. (*Id.*)

Accordingly, Quality King's claims against FDI and Tilbrook for

contribution and a declaratory judgment, and against Tilbrook for

breach of contract and breach of U.C.C. statutory warranties, are

dismissed.

## DISCUSSION

**I.    Summary Judgment**

"Summary judgment is appropriate where there is no

genuine dispute as to any material fact and the record as a

whole indicates that no rational factfinder could find in favor

of the non-moving party." *Graves v. Finch Pruyn & Co.,* 353 F.

App'x 558, 560 (2d Cir. 2009) (citing *Rodal v. Anesthesia Grp.

of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004)). "In

ruling on a summary judgment motion, the district court must

resolve all ambiguities, and credit all factual inferences that

could rationally be drawn, in favor of the party opposing

summary judgment and determine whether there is a genuine

dispute as to a material fact, raising an issue for trial."

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.

2007) (quotation marks omitted). "A fact is material when it

might affect the outcome of the suit under governing law." *Id.*

(internal quotation marks omitted).  Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993) (citation omitted).  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment." *Anderson,* 477 U.S. at 248. The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan*, 996 F.2d at 532–33 (citations omitted).

The standard is the same when cross motions for summary judgment are made.  *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *3 (E.D.N.Y. Mar. 24, 2014).  The court must examine each party's motion independently, and "in each case all reasonable inferences must

be drawn against the party whose motion is under consideration."
*Morales*, 249 F.3d at 121 (citation omitted).

## II.  Breach of Contract

To establish a breach of contract under New York law,[3] a plaintiff must show: (1) the formation of a contract between the plaintiff and defendant; (2) performance by the plaintiff; (3) failure by the defendant to perform; (4) resulting damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

There is no dispute that Quality King has established these elements.  The Purchase Orders and the Vendor Agreement are valid, enforceable contracts between Quality King and FDI. Quality King performed under the contracts by paying FDI for what FDI represented was authentic 5-hour ENERGY.  FDI breached the Purchase Orders and the Vendor Agreement by selling Quality King counterfeit 5-hour ENERGY.

As to damages, FDI concedes that "it is liable to [Quality King] for the price [Quality King] paid, should the Court determine that the goods were counterfeit."  (ECF No. 850, FDI Defendants' Opposition to Quality King's Motion for Summary Judgment, at 23.)  FDI does not dispute that the 5-hour ENERGY bottles FDI sold to Quality King were counterfeit.  (LE 56.1 ¶¶

---

[3] Quality King and FDI do not dispute that New York law applies and primarily cite New York law in their cross-motions for summary judgment.

155-56.)  Accordingly, Quality King is entitled to damages for FDI's breach of contract in the amount of $799,266.80, which represents the unreimbursed amount that Quality King paid FDI for counterfeit 5-Hour ENERGY bottles that were unsold and quarantined.  Quality King acknowledges that, on the current record, factual disputes preclude determination of any additional damages to which it may be entitled pursuant to the Purchase Orders and/or Vendor Agreements.  (*See* ECF No. 853, Quality King's Reply in Support of Summary Judgment ("Quality King Reply") at 10.)

## III. U.C.C. Statutory Warranties

Quality King also moves for summary judgment against FDI on its cross-claims for breach of the warranty of non-infringement (U.C.C. § 2-312(3)) and breach of the implied warranty of merchantability (U.C.C. § 2-314).  FDI does not oppose Quality King's motion for summary judgment on these breach of warranty claims.[4]

### A.    Warranty of Non-infringement (U.C.C. § 2-312)

Section 2-312 of the New York Uniform Commercial Code provides, in relevant part:

> Unless otherwise agreed, a seller who is a
> merchant regularly dealing in goods of the kind

---

[4] Because Quality King only seeks a determination regarding FDI's liability for breach of statutory warranties, the court need not reach the issue of whether the breach of warranty remedies available to Quality King are duplicative of the remedies available for contractual indemnification pursuant to the Vendor Agreement.

> warrants that the goods shall be delivered free
> of the rightful claim of any third person by way
> of infringement or the like, but a buyer who
> furnishes specifications to the seller must hold
> the seller harmless against any such claim which
> arises out of compliance with the specifications.

N.Y. U.C.C. § 2-312(3). The Official Comment to § 2-312(3) states: "When goods are part of the seller's normal stock and sold in the normal course of business, it is his duty to see that no claim of infringement of a patent or trademark by a third party will mar the buyer's title." *Id*. cmt. 3.

To establish breach of the warranty of non-infringement under § 2-312, "the plaintiff-buyer must show that the seller: (1) was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of any third party upon delivery; (3) the buyer did not furnish specifications to the seller; and (4) the parties did not form another agreement" that relieved the seller of the warranty. *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 777 F. Supp. 2d 454, 461 (E.D.N.Y. 2011), *vacated on other grounds*, 720 F.3d 71 (2d Cir. 2013); s*ee also Phoenix Solutions, Inc. v. Sony Elecs., Inc.,* 637 F.Supp.2d 683, 693 (N.D. Ca. 2009) (setting forth identical elements to establish breach of warranty of non-infringement); *84 Lumber Co. v. MRK Technologies, Ltd.,* 145 F.Supp.2d 675, 678-79 (W.D. Pa. 2001) (mentioning the first three elements as required under § 2-312(3)).

There is no dispute that Quality King has established all four elements: (1) Quality King and FDI are merchants that regularly dealt in 5-hour ENERGY (Quality King 56.1 ¶¶ 2, 12); (2) Quality King was subject to a rightful claim of trademark infringement by Living Essentials for selling counterfeit 5-hour ENERGY purchased from FDI; (3) Quality King did not furnish specifications for 5-hour ENERGY to FDI; and (4) neither the Purchase Orders nor Vendor Agreement eliminated the U.C.C. warranty against infringement.  In the absence of any genuine issue of material fact, or any opposition from FDI on this claim, Quality King is entitled to summary judgment on its claim for breach of the warranty of non-infringement.

### B. Implied Warranty of Merchantability (U.C.C. § 2-314)

The implied warranty of merchantability in Section 2-314 of the New York Uniform Commercial Code provides "a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection."  *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789 (N.Y. App. Div. 1997)).  Under New York law, "this guarantee is implied in a contract for . . . sale if the seller is a merchant."  N.Y. U.C.C. § 2-314(1).  "A merchant breaches the UCC implied

warranty of merchantability if it sells goods that are not 'fit for the ordinary purposes for which such goods are used.'" *Caronia*, 715 F.3d at 433. (quoting N.Y. U.C.C. § 2-314(2)(c)).

It is undisputed that the 5-hour ENERGY bottles that FDI sold to Quality King were counterfeit and therefore unfit for their intended purpose. Accordingly, the court grants Quality King's motion for summary judgment on its unopposed claim against FDI for breach of the implied warranty of merchantability.

## IV. Common Law Indemnification

"The principle of common law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party." *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 834 F. Supp. 2d 141, 161 (E.D.N.Y. 2011) (quoting *Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc.,* 847 N.Y.S.2d 151 (N.Y. App. Div. 2007)).

This claim presents an initial question of whether Quality King seeks reimbursement for losses it incurred to resolve Living Essentials' Lanham Act claims. Common law indemnification is unavailable for losses attributable to Lanham Act claims because, as the court noted in a prior decision in this action, indemnification "is neither provided for under the Lanham Act's extensive remedial provisions nor has federal

common law been implied to allow such remedies." (ECF No. 711, Mem. and Order dated 3/28/2014.) Quality King has settled Living Essentials' claims against it. Although Quality King contends "it is not seeking to be made whole for any loss it incurred in paying a claim to [Living Essentials] under the Lanham Act" (Quality King Mem. at 24 n.9), Quality King does not explain the origin of the losses for which it does seek common law indemnification from FDI.

Even if Quality King were not seeking reimbursement for amounts paid to resolve Living Essentials' Lanham Act claims, it is well established that "a party who has itself participated to some degree in the wrongdoing cannot receive the benefit of the [common law indemnity] doctrine." *Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 992 F. Supp. 657, 660 (S.D.N.Y. 1998) (quoting *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.,* 492 N.Y.S.2d 371, 375 (N.Y. App. Div. 1985)). Stated another way, "[c]ommon law indemnification is warranted where a defendant's role in causing the plaintiff's injury is solely passive, and thus its liability is purely vicarious." *Protostorm*, 834 F. Supp. 2d at 161 (quoting *Bedessee Imports*, 847 N.Y.S.2d at 151). Here, Quality King admits that it resold at least 270,864 of the counterfeit 5-hour ENERGY bottles it purchased from FDI. (Quality King 56.1 ¶ 13.) That admission suffices to establish that Quality King

"participated to some degree" in the wrongdoing by selling

counterfeit 5-hour ENERGY. *Cf. Durabla Mfg.*, 992 F. Supp. at

660 (rejecting plaintiff's argument that its settlement of an

underlying strict liability claim was "passive" liability that

did not preclude indemnification and finding "there is nothing

passive about the role of a distributor of a defective or

hazardous product, and any analogy between strict liability and

instances in which liability is fixed on another without regard

to any volitional act is clearly flawed.") (internal quotations

omitted). Quality King is thus not entitled to common law

indemnification, and FDI is granted summary judgment on this

claim.

**V.    Lanham Act Claims**

Quality King seeks summary judgment on two causes of

action arising under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a):  false designation of origin pursuant to §

1125(a)(1)(A), and false advertising pursuant to §

1125(a)(1)(B).  The court will consider each claim in turn.

**A.    False Designation of Origin**

Section 43(a)(1) of the Lanham Act provides, in

relevant part:

> Any person who, on or in connection with any
> goods or services or any container for goods,
> uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false
> designation of origin, false or misleading

> description of fact, or false or misleading
> representation of fact which . . . is likely to
> cause confusion, or to cause mistake, or to
> deceive as to the affiliation, connection, or
> association of such person with another person,
> or as to the origin, sponsorship or approval of
> his or her goods, services or commercial
> activities by another person . . .

shall be liable in a civil action.  15 U.S.C. § 1125(a)(1).

"[I]t is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.,* 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) (citing *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).  A plaintiff must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent."  *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (internal quotation marks and citations omitted).[5]

---

[5] Quality King contends it need not "own the mark at issue" to establish a claim for false designation of origin.  (Quality King Mem. at 18-19.)  But even the case it cites in setting forth the elements of a false designation of origin claim, *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. 08-cv-68, 2010 WL 2133937, at *4 (E.D.N.Y. May 27, 2010), states that "[a] plaintiff can prevail on a claim for either trademark infringement or false designation of origin if it can show that *the plaintiff owns a valid*

Because Quality King does not own (or have any
property interest in) a trademark at issue in this action, it
cannot satisfy the first element of its false designation of
origin claim. *Cf. Greenwich Taxi, Inc. v. Uber Tech., Inc.*, 123
F. Supp. 3d 327, 338 (D. Conn. 2015) (dismissing federal false
designation of origin claim where plaintiffs failed to allege
their "associat[ion] with any recognizable marks or
associat[ion] with valid marks entitled to protection"); *Zino
Davidoff SA v. Selective Distrib. Int'l, Inc.*, No. 07-cv-10326,
2013 WL 1234816, at *7 (S.D.N.Y. Mar. 27, 2013) ("simply
purchasing a product for resale does not give rise to an
interest in that product's trademark sufficient to state a claim
for unfair competition"); *Silverstar Enters., Inc. v. Aday*, 537
F. Supp. 236, 241 (S.D.N.Y. 1982) (dismissing Lanham Act
trademark infringement claim where plaintiff sought to enforce
its own contractual rights rather than registrant's trademark
rights). The court therefore grants the FDI Defendants summary
judgment on Quality King's false designation of origin claim.

**B.    False Advertising**

The Lanham Act prohibits false or misleading
descriptions or representations of fact "in commercial
advertising or promotion" concerning "the nature,

---

*trademark*, and that the defendant's use of that trademark is likely to cause
confusion regarding the source of the product" (emphasis added).

characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The Supreme Court recently explained that a plaintiff asserting a false advertising claim "must plead (and ultimately prove) an injury to commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). This is necessary to establish standing, which is "an element of the [false advertising] cause of action under the statute." *Id.* at 1391 n.6.

Quality King argues it has established standing because two of its customers, Steerforth Trading, Inc. ("Steerforth") and CVS Pharmacy, Inc. ("CVS"), ceased purchasing products from Quality King "[a]s a result of [Quality King's] sale of alleged counterfeit 5-hour ENERGY." (Quality King Mem. at 11.) According to Quality King, losing these customers has caused substantial injury to its "commercial interest in sales or business reputation."

The FDI Defendants dispute these losses. They note that Quality King's alleged lost sales to CVS and Steerforth are supported solely by an affidavit from its vice-president, Louis Assentato, without documentary evidence showing that CVS or Steerforth terminated contracts with Quality King, or that CVS or Steerforth did so as a result of buying counterfeit 5-hour

ENERGY from Quality King.  The FDI Defendants also submitted

uncontradicted evidence that Steerforth filed for bankruptcy in

2013,[6] which raises a fact issue of whether Steerforth ceased

purchasing products from Quality King due to its bankruptcy.

On the current record, material factual disputes

preclude a finding that Quality King suffered injury to its

"commercial interest in sales or business reputation" due to

counterfeit 5-hour ENERGY sales resulting from false

advertising.  Quality King also has not established that any

such injury it suffered was proximately caused by *FDI's*

misrepresentations regarding the provenance of 5-hour ENERGY,

rather than Quality King's independent decision to resell

counterfeit 5-hour ENERGY to CVS and Steerforth.  As the Supreme

Court cautioned in *Lexmark*, "a business misled by a supplier

into purchasing an inferior product is, like consumers

generally, not under the [Lanham] Act's aegis."  134 S. Ct. at

1390.

Furthermore, even assuming that Quality King has

standing to proceed under § 1125(a)(1)(B), it cannot prove the

requisite elements of false advertising.  In addition to

standing, a plaintiff alleging false advertising under the

---

[6] *See* ECF No. 851, Declaration of Martin Saperstein dated 12/18/2014, Ex. H
(attaching Steerforth's Chapter 7 Involuntary Petition filed in the United
States Bankruptcy Court for the Eastern District of New York on November 25,
2013).

Lanham Act must establish: "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or likely will damage the plaintiff." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013)).

To qualify as "commercial advertising or promotion," the defendant's representations must be commercial speech, "made for the purpose of influencing customers to buy defendant's goods or services" and "disseminated sufficiently to the relevant purchasing public." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 56 (2d Cir. 2002). The "touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." *Id.* at 57.

Quality King argues that the packaging and labeling on counterfeit 5-hour ENERGY sold by FDI constitutes "commercial advertising and promotion" that gives rise to its false advertising claim. (Quality King Reply at 6.) However, there is no evidence that the FDI Defendants created or labeled

bottles of counterfeit 5-hour ENERGY.  Nor is there any evidence
that FDI engaged in a widespread, organized campaign to mislead
the public regarding 5-hour ENERGY.  Based on the record before
the court, FDI's participation was limited to purchasing
counterfeit 5-hour ENERGY from two wholesalers and reselling
that product to another wholesaler, Quality King.

In *Yves Saint Laurent Parfums, S.A. v. Costco
Wholesaler Corp.*, No. 07-cv-3214, 2010 WL 2593671 (S.D.N.Y. June
24, 2010), the court considered a false advertising claim
brought by Quality King under similar circumstances.  Quality
King was sued for reselling counterfeit perfume and brought a
federal false advertising cross-claim against the wholesaler
that sold Quality King the counterfeit product.  *Id.* at *1.  In
dismissing Quality King's false advertising claim at the
pleading stage, the *Yves Saint Laurent* court found there were
not "any facts alleged which, if true, would establish that the
allegedly false statements constituted commercial advertising or
promotion."  *Id.* at *8.  The same deficiency exists here.  FDI's
limited offering and sale of 5-hour ENERGY to other wholesalers
did not rise to a widespread, organized, and public "commercial
advertising" campaign under Section 1125(a)(1)(B) of the Lanham
Act.  Accordingly, Quality King's motion for summary judgment on
its false advertising claim is denied and the FDI Defendants'
cross-motion for summary judgment on this claim is granted.

## VI.  Unfair Competition

The "essence" of a claim for unfair competition under New York law is the "bad faith misappropriation of the labors and expenditures of another" in a manner "likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-45 (2d Cir. 1995) (internal citations omitted). To establish common law unfair competition, "the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent." *Katiroll Co., Inc. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 370 (S.D.N.Y. 2014); *see also Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith."). Because Quality King fails to state a Lanham Act claim, its unfair competition claim against FDI is not viable. The FDI Defendants are thus granted summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Quality King's motion for partial summary judgment is granted in part and denied in part. The FDI Defendants' cross-motion for partial summary judgment is granted in part and denied in part. Quality King is awarded $799,266.80 on its breach of contract claim against Food Distributors International.


**SO ORDERED.**

Dated:  March 31, 2016
        Brooklyn, New York

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge